UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRIS PRICE,

                                    Plaintiff,

                                                        9:13-CV-00563
v.
                                                        (GTS/TWD)
J. OROPALLO, et al.,

                                    Defendants.
_____

APPEARANCES:                            OF COUNSEL:

CHRIS PRICE
Plaintiff *pro se*
10-A-0058
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. ERIC T. SCHNEIDERMAN               ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

*Pro se* Plaintiff Chris Price, an inmate currently confined in the Auburn Correctional

Facility, has commenced this action pursuant to 42 U.S.C. § 1983 alleging Defendants failed to

protect him in violation of his Eighth Amendment rights by placing a member of a rival gang in

his cell.  (Dkt. No. 1.)  Plaintiff has sued Corrections Sergeant Jon Oropallo ("Oropallo"); Phillip

Battiste ("Battiste"), New York State Department of Corrections and Community Supervision

("DOCCS") Director of Security Staff; and Norman R. Bezio ("Bezio"), DOCCS Director of Special Housing/Inmate Disciplinary Program *Id*. at 1.

Defendants filed an Answer to Plaintiff's Complaint (Dkt. No. 12) and have now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 25.) Plaintiff has not opposed the motion or sought additional time within which to do so. For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be granted.

## I. BACKGROUND

While Plaintiff was confined at the Upstate Correctional Facility ("Upstate"), his membership in the Crips gang was known to prison officials. (Dkt. No. 1 at ¶ 7.) Plaintiff expressed concerns for his safety to officials at Upstate, at least in part because according to Plaintiff, Defendant Oropallo had previously forced him to fight with members of the Bloods, a rival gang. *Id*. at 6. In a Declaration submitted in support of Defendants' motion for summary judgment, Oropallo denies ever having forced Plaintiff to fight with another inmate. (Dkt. No. 25-4 at ¶ 4.)

The evidence shows that Oropallo did issue a misbehavior report on Plaintiff on December 8, 2011, after observing Plaintiff and his cell mate Williams fighting. (Dkt. No. 25-4 at ¶ 8 and p. 23.)[1] The fight investigation form reveals that Plaintiff did not want protection and neither he nor Williams wanted to press charges in connection with the fight. *Id*. at p. 24.

---

[1] Page numbers cited herein are those assigned by the Case Management/Electronic Case File (CM/ECF) system.

Donald Uhler ("Uhler"), Deputy Superintendent of Security at Upstate, reviewed Plaintiff's security file and found no request by him for protective custody. (Dkt. No. 25-3 at ¶ 10.)

Plaintiff claims that as a result of being forced to fight members of the Bloods gang, he filed a grievance and began speaking with officials at Upstate regarding his safety in the fall of 2011. (Dkt. No. 1 at ¶ 6.) Plaintiff's file from Upstate contains a December 12, 2011, "To Whom it May Concern" letter in which Plaintiff disclosed that he had been forced to fight on December 8, 2011, and had been threatened with a scalpel by members of the Bloods. (Dkt. No. 25-3 at ¶ 4 and p. 6.) In his December 12, 2011, letter Plaintiff indicated that he was writing to create a paper trail regarding safety issues he had raised with corrections officers and sergeants. (Dkt. No. 25-3 at p. 6.) Plaintiff wrote:

> I used to be a well known crip gang member. The bloods still label me as being a crip gang member. So to back myself up, I'm [writing] to all people that I think should be notified of my situation of safety. On the 8th of this month for this particular reasons I stated above, I was [threatened] and forced to fight. I fear for my life while I'm here [incarcerated]. I just wanna do the time that I have and hopeful[ly] get a reversal on my appeals. Are there any ways that, I can be bunked up with someone who isn't labeled a bloods gang member, because I was threatened with a scalpel. I notified the proper personnel and I wasn't taken serious[ly] until I started kicking the cell door I was in, I was taken out to be forced to fight in another cell. I fear I'm a get hurt or I'm a hurt someone. Can you help me? Thank you for your time and [patience].

*Id*.

According to Uhler, Lt. Lumbard ("Lumbard") investigated the letter on December 21, 2011. *Id.* at ¶ 5. Lumbard reported that Plaintiff told him that he was a member of the Crips gang and had been having trouble with members of the Bloods gang. *Id*. at p. 5. When asked

about being threatened with a scalpel, Plaintiff refused to provide any information. *Id.* Plaintiff did tell Lumbard that he was getting along well with his current cell mate, and that they had no issues. *Id*. Lumbard indicated that the cell block staff had been notified about the situation and advised to leave Plaintiff with his cell mate and, if possible, to move the cell mate with him when he was moved upstairs. *Id*.

Plaintiff was dissatisfied with the resolution of his grievance and claims to have written to Defendants Battiste and Bezio about his safety concerns. *Id*. Plaintiff was subsequently told by Upstate officials that the safety issues of which he had complained would be handled, and he would not have to worry about being placed in the same cell with known members of the Bloods. *Id*. Nonetheless, on August 9, 2012, inmate Adams, a member of the Bloods, was brought in to bunk with Plaintiff. (Dkt. No. 1 at ¶ 6.) Plaintiff and Adams got into what both described as a gang related fight in the cell within minutes after the officer placing Adams in the cell left, and Plaintiff sustained a non-displaced fracture of his nose and a laceration on his nose which required stitches. *Id.*; Dkt. Nos. 25-3 at 12; 25-4 at 8-9; 26 at 8-12.

Prior to Adams being placed in the cell with Plaintiff, Oropallo had no personal knowledge or information that would have led him to believe that Adams was gang related or would pose a threat to Plaintiff. (Dkt. No. 25-4 at ¶ 7.) Adams had never told Oropallo he was in a gang, and nothing about the December 8, 2011, fight between Plaintiff and Williams led Oropallo to believe Adams would be a threat to Plaintiff. *Id*. at ¶ 10. Furthermore, the assignment of inmates for double cell housing was not within the scope of Oropallo's authority. *Id.* at ¶ 9.

DOCCS maintains an "enemies" list for inmates based upon information provided by the inmate and from his disciplinary record. *Id*. at ¶ 6. Uhler has explained in his Declaration that DOCCS does not recognize street gangs, and inmates frequently do not disclose gang affiliations to prison officials, although if there is information of gang affiliation, a notation might appear on the inmate's personal characteristics screen, his security file, or be made by a counselor during intake. *Id*. at ¶ 7. Uhler reviewed the DOCCS files on Adams and found no notations indicating that he was gang affiliated. *Id*. at ¶ 8; *see also* Adams' Personal Characteristics Form and Inmate Security Classification Form, neither of which identifies him as a member of the Bloods gang. *Id*. at pp. 9-10.

A misbehavior report was filed against Plaintiff as a result of the August 9, 2012, fight. (Dkt. No. 25-4 at 8.) Plaintiff was found guilty of violent conduct and assault and was given four months in the Special Housing Unit, loss of packages, commissary, ear phones, recreation, and good time, with two months suspended as an incentive for Plaintiff to improve his behavior. *Id*. at 5-6.

## II.    APPLICABLE LEGAL STANDARDS

### A.    General Legal Standards for Summary Judgment Motions

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact

exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted). A plaintiff's verified complaint is to be treated as an affidavit.[2] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . .") (citations omitted).

In determining whether a genuine issue of material fact exists, the court must resolve all

---

[2] Plaintiff's Complaint (Dkt. No. 1) was properly verified under 28 U.S.C. § 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (use of the language "under penalty of perjury" substantially complies with 28 U.S.C. § 1746).

ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).[3]

**B.** **Summary Judgment When a *Pro Se* Plaintiff Fails to Oppose the Motion**

Plaintiff has not opposed Defendants' summary judgment motion. N.D.N.Y. L.R. 56.2 requires the moving party to notify a *pro se* litigant of the consequences of failing to respond to the summary judgment motion.[4] Where a party has been given satisfactory notice of the consequences of failing to respond to a motion for summary judgment, the nonmovant's failure to respond to the movant's statement of material facts will result in the facts set forth in the statement being accepted as true to the extent they are supported by the evidence in the record.[5]

---

[3] Copies of unpublished decisions cited herein will be provided to Plaintiff in accordance with *Lebron v. Sanders*, 557 F.3d 76, 79 (2009) (*per curiam*).

[4] A Notice of the Consequences of Failing to Respond to a Summary Judgment Motion was served with Defendants' motion papers in this case. (Dkt. No. 25 at 3.)

[5] *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement. It must be satisfied that the citation to

*See* L.R. 7.1(a)(3) ("<u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>.") (emphasis in original).

A *pro se* plaintiff's failure to oppose a summary judgment motion does not mean that the defendant's motion is to be granted automatically. An unopposed summary judgment motion may properly be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (internal quotes and citations omitted).

A district court has no duty to perform an independent review of the record to find proof of a factual dispute where the nonmovant fails to respond to a summary judgment motion. *See Amnesty America. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2000). This is so even where a plaintiff is appearing *pro se* because even *pro se* plaintiffs must obey the Court's procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Although not obligated to do so, the Court has elected to conduct a review of the entire record in this case. *See Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000) (a court may, in its discretion, "choose to conduct an assiduous review of the record" even when a party has failed to file a statement of material facts). Because Plaintiff's Complaint is verified, the Court will treat it as an affidavit in opposition to Defendants' motion. *See Colon,* 58 F.3d at 872.

---

evidence in the record supports the assertion.") (citation omitted).

# III.    ANALYSIS

## A.    Administrative Exhaustion

Defendants argue that they are entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies with regard to Defendants' alleged failure to protect him from a Bloods gang member in violation of his Eighth Amendment rights.  (Dkt. No. 25-6 at 5-6.)

### 1.    Exhaustion Under The Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e).  The PLRA requires "proper exhaustion" of prison administrative remedies, which includes compliance with agency deadlines and procedural rules.  *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "[P]roper exhaustion . . . means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)."  *Id.*  Exhaustion is mandatory, and an inmate cannot satisfy the PLRA's exhaustion requirement by filing an untimely or administratively defective grievance or appeal.  *Id*. at 84-85.

The DOCCS Inmate Grievance Procedure ("IGP") has three stages which prison inmates must complete.  *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5; *see also Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009).  First a grievance complaint must be submitted to the Inmate Grievance Resolution Committee ("IGRC") for an initial determination within twenty-one

calendar days of the alleged occurrence. *Id*. at § 701.5(a). Next, if the IGRC decision is adverse to the inmate, he has seven calendar days to appeal to the prison superintendent. *Id*. at § 701.5(c). If dissatisfied with the superintendent's decision, the inmate has another seven calendar days to appeal the superintendent's decision to the Central Office Review Committee ("CORC"). *Id*. at § 701.5(d).

An inmate must follow through on all three steps to complete the exhaustion process. *See Morrison v. Stefaniak,* 523 F. App'x 51 (2d Cir. 2013) (summary order) (upholding dismissal of complaint because plaintiff failed to appeal IGRC's decision); *Belile v. Griffin*, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *3-4, 7, 2013 U.S. Dist. LEXIS 47137, at *10, 22-23 (N.D.N.Y. Feb. 12, 2013) (plaintiff failed to exhaust his administrative remedies because he had not followed through on all of the steps, *i.e.*, he did not appeal to the superintendent of the facility or appeal any unfavorable decision of the superintendent to CORC).

Because failure to exhaust is an affirmative defense, defendants bear the burden of showing that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *4, 2010 U.S. Dist. LEXIS 32014, at *16 (N.D.N.Y. Mar. 31, 2010). If a defendant meets that burden, however, a plaintiff's failure to exhaust does not end the review. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)]." *Murray,* 2010 WL 1235591, at *4. *Hemphill*

sets forth a three-part inquiry for district courts.[6]  First, courts must determine if administrative

remedies were in fact available to plaintiff.  In *Hemphill*, the Second Circuit  stated that "[t]he

test for deciding whether the ordinary grievance procedures were available must be an objective

one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them

available." *Hemphill*, 380 F.3d at 688.

Second, courts must determine if the defendants are estopped from presenting non-

exhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting

his administrative remedies by conduct such as "'beating him, threatening him, denying him

grievance forms and writing implements, and transferring him to another correctional facility.'"

*Hemphill*, 380 F.3d at 688 (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)).

Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense

based upon the actions or inaction of other individuals.  *Murray*, 2010 WL 1235591, at *5 &

n.26 (collecting cases); *McCloud v. Tureglio*, No. 07-CV-0650, 2008 WL 1772305, at *12, 2008

U.S. Dist. LEXIS 124388, at *44 (N.D.N.Y. Apr. 15, 2008) (Lowe, M.J.) ("None of those

---

[6]  Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81
(2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's]
exhaustion requirement by filing an untimely or otherwise procedurally defective administrative
grievance or appeal." *Id*. at 83-84.  The Supreme Court resolved the question in the negative,
explaining that PLRA requires "proper exhaustion" – "using all steps that the agency holds out,
and doing so properly (so that the agency addressed the issues on the merits)."  *Id*.  at 90 (citation
omitted).  Although the Second Circuit has acknowledged that there is some question as to
whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the
Court has as yet found it unnecessary to decide the issue and appears to still be considering all
three *Hemphill* inquiries in exhaustion cases*. See, e.g., Amador v. Andrews*, 655 F.3d 89, 102-03
(2d Cir. 2011) (finding it unnecessary to decide whether *Hemphill* is still good law because
plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an
affirmative defense) (internal quotation marks omitted).

documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").  Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the defendants may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified.  *Hemphill*, 380 F.3d at 686.

2.    Exhaustion Analysis

In his Complaint, Plaintiff has alleged that he asked to file a grievance with regard to the placement of a known Bloods gang member in his cell.  (Dkt. No. 1 at ¶ 4.)  According to Plaintiff, he was told by the grievance officer that the issue was not grievable and, as a result, never received a response to his grievance.  *Id.*  Jeffrey Hale ("Hale"), Assistant Director for the DOCCS IGP, has stated in his Declaration that the IGP is the appropriate vehicle for inmates to use to address issues regarding the person with whom they are housed and complaints against staff.  (Dkt. No. 25-5 at ¶ 3.)  Defendants have not, however, submitted evidence disputing Plaintiff's claim that he was told his complaint was not grievable.

Instead, Defendants have focused on a grievance filed by Plaintiff with regard to the medical care he received for the injuries he sustained in the fight with Adams and have relied upon Plaintiff's failure to appeal from the denial of that grievance as evidence of failure to exhaust the claim asserted in this lawsuit.  (Dkt. Nos. 25-3 at ¶ 9 and pp. 11-13; 25-6 at 6.)  In Grievance No. UST-50552, Plaintiff referenced the fight in his cell but only in the context of the fight as the cause of his broken nose.  *Id*. at p. 11.  Plaintiff's complaint was that it took five days for the medical staff at Upstate to send him out for x-rays.  *Id*.  The investigative report on the grievance references only the medical care given Plaintiff, and the grievance was denied solely

on the grounds that there was no urgent need for an x-ray. *Id*. at p. 13. In short, the grievance has no direct relevance to Plaintiff's exhaustion of the failure to protect claim asserted in this lawsuit.

The relevant exhaustion issue on this motion is whether the allegation in Plaintiff's Complaint regarding his unsuccessful attempt to grieve the failure to protect issue is sufficient by itself to raise an issue of fact under any of the *Hemphill* considerations. A number of district courts in the Second Circuit have found either that the IGP is unavailable to an inmate who has been told by a prison official that his complaint was not grievable, or that the misinformation constitutes a special circumstance excusing exhaustion under *Hemphill*.[7]  *See, e.g., Partee v. Goord,*, No. 06-15528, 2007 WL 2164529 (SAS), at *4, 2007 U.S. Dist. LEXIS, at *14 (S.D.N.Y. July 25, 2007) (excusing exhaustion requirement because plaintiff was told in reply to his grievance that his claim was outside the purview of the IGRC, and he reasonably understood this to mean his dispute was not grievable); *Lewis v. Cunningham*, No. 05-9243 (GBD), 2007 WL 2412258, at *2, 2007 U.S. Dist. LEXIS 62346, at *5 (S.D.N.Y. Aug. 23, 2007) (finding special circumstances justifying failure to exhaust remedies because a supervisor told plaintiff that filing a grievance was not the proper way to address a complaint, and to instead write a letter to the Chief Medical Officer at the Department of Health, which he did); *Jeffers v. Goord*, No. 9:99-CV-0335 (FJS/GHL), 2005 WL 928628, at *6, 2005 U.S. Dist. LEXIS 39309, at *16-17

---

[7]  Courts have noted that there is significant overlap in the three *Hemphill* considerations. *See, e.g., Barksdale v. Frenya*, No. 9:10-CV-00831 (MAD/DEP), 2012 WL 4107805, at *6 n.11, 2012 U.S. Dist. LEXIS 134738, at *21 n.11 (N.D.N.Y. Sept. 19, 2012) ("In practicality these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap."). A failure to exhaust as a result of being given false information on whether a complaint was grievable by a non-defendant could arguably fit within either the first or third consideration.

(N.D.N.Y. Apr. 4, 2005) ("[p]rison official may prevent a prisoner from utilizing a remedy by incorrectly representing to the prisoner that his complaint is not grievable, or that it is grievable only through another avenue.").

Defendants' failure to submit evidence refuting or explaining Plaintiff's claim that he was told his complaint was not grievable leaves material issues of fact regarding the applicability of one or more of the *Hemphill* considerations. Therefore, the Court recommends that Defendants' request for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies be denied without prejudice.

### B. Battiste and Bezio

The Eighth Amendment to the United States Constitution "requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). Prison officials are liable under the Eighth Amendment for harm incurred by an inmate if they act with deliberate indifference to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) ("[A] state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983."); *see also Hendricks v. Coughlin,* 942 F. 2d 109, 113 (2d Cir. 1991) ("[A]n inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect [the inmate] from the violent actions of other inmates may state a viable § 1983 cause of action."); *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir. 1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment"); *Wassmann v. County of Ulster*, 528 F. App'x 105, 106 (2d Cir. 2013) ("Officers at correctional

facilities have a duty to protect inmates from violence at the hands of other inmates.") (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

To prevail on a failure to protect claim, an inmate must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials exhibited deliberate indifference. *Farmer*, 511 U.S. at 837. In order to establish deliberate indifference where a prison official has failed to protect an inmate from violence by another inmate, a plaintiff must prove that the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety. *Hayes*, 84 F.3d at 620. Even assuming that the allegations in Plaintiff's Complaint are sufficient to satisfy, or at least raise a question of fact on the issue of substantial risk of harm, the summary judgment record is devoid of evidence that Battiste and Bezio exhibited deliberate indifference to Plaintiff's safety in placing Adams in his cell.

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of

command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim")
(citing *Ayers,* 780 F.2d at 210). Therefore, "a plaintiff must . . . allege a tangible connection
between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263
(2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state
a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged
constitutional violation, (2) the defendant, after being informed of the violation through a report
or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which
unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4)
the defendant was grossly negligent in supervising subordinates who committed the wrongful
acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to
act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.[8]

Plaintiff claims that he wrote to Defendants Battiste and Bezio with respect to his safety
concerns with regard to sharing a cell with a Bloods gang member after he was dissatisfied with
the response of Upstate officials to his complaints in the fall or winter of 2011. (Dkt. No. 1 at
¶ 6.) According to Plaintiff after he sent the letters to Battiste and Bezio he was told by Upstate
officials that his safety issue had been addressed. *Id.*

Battiste and Bezio did not submit evidence regarding whether they received letters from
Plaintiff and, if so, took any action in response. Instead, they rely upon an attorney's declaration

---

[8]    The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) has arguably
nullified some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d
531, 543-44 (S.D.N.Y. 2009) (collecting cases). However, the Second Circuit has yet to issue a
decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of this
motion that *Colon* remains good law.

stating upon information and belief that a search was made of records in the DOCCS Central Office and no correspondence to or from Plaintiff was found.  (Dkt. No. 25-2 at ¶ 3.)  The source of counsel's information and belief appears to be the July 25, 2013, unsworn letter from a DOCCS senior attorney annexed as an exhibit.  *Id.* at p. 4.

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *see also Salahuddin*, 467 F.3d at 272-73 (movant bears the initial burden of showing through the production of admissible evidence that he is entitled to judgment as a matter of law).  An attorney's affidavit that is not based upon personal knowledge and relies upon an attached letter not sworn as required by Rule 56(e) is not admissible evidence and not properly considered on a summary judgment motion.[9]  *See Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986); *see also Sepanski v. Jani-King, Inc.*, No. 10-CV-518S, 2013 WL 4455412, at *2-3, *8, 2013 U.S. Dist. LEXIS 116437, at *8 (W.D.N.Y. Aug. 16, 2013) (holding that three unsworn letters submitted by plaintiff could not be considered in connection with a motion for summary judgment).

A movant's burden of demonstrating the absence of a question of material fact remains the same where the motion is unopposed.  *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373

---

[9]  Statements in Defendants' Statement Pursuant to Rule 7.1(a)(3) are deemed admitted on an unopposed summary judgment motion only to the extent they are supported by admissible evidence.  *See Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("court may not rely solely upon statement of undisputed facts in determining whether movant has met this burden of showing the absence of a genuine issue for trial; court must be satisfied that the citation to evidence in the record supports the assertion).  Paragraph 13 of Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 25-1), stating that "[t]here is no evidence to demonstrate that Defendants Bezio or Battiste received correspondence from Plaintiff," relies upon an attorney's declaration that is not based upon personal knowledge and an unsworn letter, neither of which constitutes admissible evidence.  *See Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir. 1986).

F.3d 241, 244 (2d Cir. 2004) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.") (citation and internal quotation marks omitted).  Defendants have not satisfied their burden of production with respect to Plaintiff's claim that he wrote to Battiste and Bezio regarding his concerns about Bloods.

Nonetheless, because Plaintiff has not alleged facts in his Complaint showing that Battiste or Bezio had knowledge of, or personal involvement in, Adams being placed in a cell with him, or that they were aware of Adams' Bloods affiliation, he has failed to state an Eighth Amendment claim against the two supervisory officials for failure to protect him from the injuries he sustained in the fight with Adams.  *See McKinnon*, 568 F.2d at 934 (personal involvement in constitutional deprivation is a prerequisite to an award of damages under § 1983); *Hayes*, 84 F.3d at 620 (defendant official must actually have known of and disregarded an excessive risk of harm to the plaintiff's safety to establish deliberate indifference).

Therefore, the Court recommends that Battiste and Bezio be granted summary judgment dismissing the Complaint as against them.

### C.    Oropallo

Even assuming, *arguendo*, that the allegations in Plaintiff's Complaint are sufficient to satisfy, or at least raise a question of fact, on the issue of substantial risk of harm, the evidence in the summary judgment record establishes that Defendant Oropallo did not know of and disregard an excessive risk of harm to Plaintiff's safety in connection with Adams being placed in Plaintiff's cell.  *See Hayes*, 84 F.3d at 620.  The prison files on inmate Adams contained no notations indicating that he was gang related.  (Dkt. No. 25-3 at ¶ 8.)  The DOCCS "enemies" list

did not identify Plaintiff and Adams as enemies. *Id.* at ¶ 6. Moreover, Plaintiff's security file contained no requirements for protective custody. *Id.* at ¶ 10.

According to Oropallo, prior to the altercation between Plaintiff and Adams, he had no personal knowledge or information that would have led him to believe that Adams was gang affiliated or would pose a threat to Plaintiff. (Dkt. No. 25-4 at ¶ 7.) Adams had not told Oropallo he was in a gang before being placed in Plaintiff's cell. *Id.* at ¶ 10. Moreover, the assignment of inmates in double cell housing was not within Oropallo's authority. *Id*. at ¶ 9.

Since Plaintiff has failed to submit opposition to Defendants' motion, the Court can look only to his verified Complaint for evidence demonstrating that a genuine issue of material fact exists as to whether Oropallo knew of and disregarded an excessive risk of harm to the plaintiff's safety. *Id*. Mere allegations in Plaintiff's Complaint, especially conclusory allegations or conjecture and speculation, are insufficient to create a genuine issue of fact. *See Matsushita*, 475 U.S. at 585-86; *Kerzer*, 156 F.3d at 400.

None of the allegations in Plaintiff's verified Complaint contradicts Defendants' evidence that prison records did not identify Adams as a member of the Bloods gang, that Oropallo had no knowledge that Adams was a member of the Bloods gang at the time he was placed in Plaintiff's cell, and that Oropallo had no authority with regard to the assignment of inmates in double cells. Therefore, Plaintiff has failed to raise a question of fact as to whether Oropallo was deliberately indifferent to his safety, a necessary element of proof on an Eighth Amendment claim for cruel and inhuman punishment based upon a failure to protect. *See Farmer*, 511 U.S. at 837. Therefore, the Court recommends that Oropallo's motion for summary judgment be granted.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 25) be **GRANTED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure 72, 6(a).

Dated: June 18, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Elijah BARKSDALE, Plaintiff,
v.
R.T. FRENYA, et al., Defendants.

Civ. Action No. 9:10–CV–00831 (MAD/DEP).
Sept. 19, 2012.

Elijah Barksdale, New York, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of New York, David Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Elijah Barksdale, a former New York prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action against the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS") as well as the superintendent and two corrections officers stationed at the prison in which he was confined at the relevant times, pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. In his complaint, Barksdale contends that defendants violated his Eighth and Fourteenth Amendment rights by failing to protect him from an attack by another inmate, denying him the right to call a witness at a disciplinary hearing arising out of the incident, affirming the findings from the hearing, and subjecting him to cruel and unusual punishment by confining him in a special housing unit ("SHU") for a period of 120 days. As relief, plaintiff seeks damages in the amount of $100 per day spent in the SHU and punitive damages of $10,000, awardable against each defendant.

Currently pending before the court is a motion for summary judgment brought by the defendants, seeking dismissal of plaintiff's claims. In support of their motion, defendants assert that 1) Commissioner Fischer is entitled to dismissal of plaintiff's claims against him based upon a lack of personal involvement; 2) Barksdale's claims are subject to dismissal based upon his failure to exhaust his administrative remedies; and 3) plaintiff cannot sustain a due process violation related to his disciplinary hearing because he cannot establish a protected liberty interest in remaining free from the challenged SHU confinement. For the reasons set forth below, I recommend that defendants' motion, which the plaintiff has not opposed, be granted in part, but otherwise denied.

I. *BACKGROUND*[FN1]

> FN1. In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

Plaintiff, though no longer incarcerated, was formerly a prison inmate confined under the supervision of the DOCCS; at the times relevant to his claims in this action, plaintiff was designated to the Clinton Correctional Facility ("Clinton"), located in Dannamora, New York. *See generally* Complaint (Dkt. No. 1).

On September 8, 2009, plaintiff was involved in a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

physical altercation with another inmate. Complaint (Dkt. No. 1) § 6. While plaintiff was delivering meals to SHU inmates, Corrections Officer ("CO") Frenya was conducting showers for SHU inmates. *Id.* As a fellow inmate named Aiken "exited the shower and was returning to his cell", he turned around and attacked plaintiff. *Id.* A direct order was given for the two inmates to cease fighting, but was ignored. *Id.* When the altercation ended, a weapon was discovered in the area. *Id.*

As a result of the incident, plaintiff was issued a misbehavior report accusing him of multiple prison rule infractions, including possession of a weapon, refusing a direct order, and fighting. Complaint (Dkt. No. 1) § 6. An assistant, J. Kelsh, was assigned to help plaintiff prepare a defense for the charges against him. *Id.* Kelsh interviewed two potential witnesses on plaintiff's behalf—inmate Aiken and CO Frenya. During those interviews both agreed to testify at a disciplinary hearing scheduled to address the charges, and Aiken indicated that he would confirm that Barksdale did not possess, display or use a weapon during the incident. *Id.*

**\*2** A Tier III disciplinary hearing was held on September 14, 2009 before Corrections Hearing Officer ("CHO") Curtis Drown in connection with the charges against the plaintiff.[FN2] *Id.* Although CO Frenya was made available as a witness on plaintiff's behalf, inmate Aiken was not produced. *Id.* Plaintiff did not receive "any written notice or oral statements" stating the reason that inmate Aiken was not presented to testify. Complaint (Dkt. No. 1) § 6. At the close of the hearing, defendant Drown found plaintiff guilty of assaulting an inmate, fighting, weapon possession, and refusing to obey a direct order. Complaint (Dkt. No. 1) Exh. A. As a result, a penalty which included 120–days of disciplinary SHU confinement was imposed by the hearing officer. *Id.*

> **FN2.** The DOCCS conducts three types of inmate disciplinary hearings. *See* 7

N.Y.C.R.R. § 270.3. Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. Tier III hearings concern the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

Plaintiff appealed defendant Drown's decision to Clinton Superintendent Dale Artus, resulting in a decision by Deputy Superintendent LaValley affirming the Tier III hearing determination on the Superintendent's behalf. Complaint (Dkt. No. 1) § 6 and Exh. E. On September 28, 2009, plaintiff appealed LaValley's affirmation to Commissioner Brian Fischer. Complaint (Dkt. No. 1) § 6 and Exh. E. In response, plaintiff received a letter from Norman Bezio, the DOCCS Director of Special Housing and Inmate Disciplinary Program, affirming the hearing on behalf of the Commissioner Fischer.[FN3] *Id.* at Exh. G.

> **FN3.** A subsequent request for relief from that determination resulted in the issuance of a the letter from Director Bezio rejecting plaintiff's call for reconsideration. *See* Complaint (Dkt. No. 1) Exh. H.

On November 10, 2009, plaintiff commenced a proceeding under Article 78 of the New York Civil Practice Law and Rules in the New York State Supreme Court, challenging the Tier III disciplinary hearing determination. Complaint (Dkt. No. 1) Exh. I. In that proceeding the state court found in plaintiff's favor and reversed the disposition of the detention hearing, finding that Barksdale's constitutional rights were violated by the failure of the hearing officer to make any attempt to obtain inmate Aiken's testimony at the hearing. *Id.* at Exh. J.

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on July 8, 2010, and was thereafter granted leave to proceed *in forma pauperis.* Dkt. Nos. 1, 4. Plaintiff's complaint names CO Frenya, CHO Drown, Superintendent Artus, and Commissioner Fischer as defendants and, broadly construed, asserts three causes of action. *See generally* Complaint (Dkt. No. 1) §§ 3, 7. First, plaintiff claims that defendant Frenya failed to protect him by not following proper protocol for conducting showers for SHU inmates. *See id.* Second, plaintiff asserts that his Fourteenth Amendment Due Process rights were violated by defendant Drown, by virtue of his failure to call a requested witness during plaintiff's disciplinary hearing, and that defendants Artus and Fischer are liable for the resulting procedural due process violation by virtue of their having affirmed the disciplinary determination despite claims of due process violations. *Id.* Third, plaintiff claims that, in violation of the Eighth Amendment, he was subjected to cruel and unusual punishment when he was sentenced to 120 days of SHU confinement. Complaint (Dkt. No. 1) § 6.

**\*3** On December 2, 2011, defendants moved for summary judgment dismissing plaintiff's complaint for lack of personal involvement on the part of defendant Fischer, failure to exhaust administrative remedies, and lack of a protected liberty interest in remaining free from the challenged confinement.[FN4] Dkt. No. 44. Plaintiff has not responded to the motion, despite having requested and secured an extension of time for doing so.

> FN4. In their motion defendants do not address plaintiff's cruel and unusual punishment claim.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York

Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

"metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620–21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

**\*4** When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B.** *Plaintiff's Failure to Oppose Defendants' Motion*

Before turning to the merits of plaintiff's claims, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose defendants' summary judgment motion. That failure is not without potential consequences.

The court's rules require that a motion seeking the entry of summary judgment must be accompanied by a statement of material facts with respect to which, the moving party contends, there exists no genuine issue. *See* N.D.N.Y.L.R. 7.1(a)(3). The purpose underlying this rule, which is typical of many local court rules governing summary judgment motion practice, is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment. *Anderson v. Dolgencorp of N. Y.,* Nos. 1:09–cv–360, 1:09–cv–363, 2011 WL 1770301, at *1 n. 2 (N.D.N.Y. May 9, 2011) (Sharpe, J.).[FN5] In order to fulfill this salutary purpose, it is essential for the court to have the benefit of both the moving party's statement and an opposition statement addressing the facts set forth in the initial statement.

> **FN5.** Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

In this instance, the defendants have complied with Local Rule 7.1(a)(3), providing a statement setting forth fourteen facts as to which, they contend, there is no genuine triable issue. Plaintiff has failed to respond to that statement. By its express terms, the governing rule provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y.L.R. 7.1(a)(3). Based upon his failure to respond, I recommend that the court invoke this rule and deem the facts set forth in defendants' Local Rule 7.1(a)(3) to have been admitted by Barksdale.[FN6] *See Elgamil v. Syracuse Univ.,* No. 99–cv–611, 2011 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, J.) (listing cases); *see also Monehan v. New York City Dep't of Cor. RR.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing a district court's discretion to adopt local rules similar to 7.1(a)(3)).

> **FN6.** Defendants' notice of motion in this case was accompanied by a document entitled "notification of the Consequences of Failing to Respond to a Summary Judgment Motion," as required by this court's local rules in cases involving *pro se* litigants. *See* N.D.N.Y.L.R. 56.2.

**C** *Personal Involvement*

In their motion, defendants assert that plaintiff's due process claim against defendant Fischer should be dismissed based on his lack of personal involvement in the conduct giving rise to plaintiff's constitutional claims. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*5** Defendants assert that Commissioner Fischer is only named as a defendant because of his supervisory position, and therefore cannot be held liable for the violations alleged. It is true that defendant Fischer, as Commissioner of the DOCCS, cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Responsibility on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom., Ashcroft v. Iqbal,* 556 U.S. 662,129 S.Ct. 1937 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.[FN7]

> FN7. The Second Circuit has yet to address the impact of the Supreme Court's decision in *Iqbal* upon the categories of supervisory liability under *Colon.* Lower courts have struggled with this issue, and specifically

whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See Sash v. United States,* 674 F.Supp.2d at 531, 542–44 (S.D.N.Y.2009); *see also Stewart v. Howard,* No. 9:09–CV–0069 (GLS/GHL), 2010 WL 3907227, at \*12 n. 10 (N.D.N.Y. Apr. 26, 2010) ("The Supreme Court's decision in [*Iqbal* ] arguably casts in doubt the continued viability of some of the categories set forth in *Colon."* ) (citations omitted), *report and recommendation adopted,* 2010 WL 3907137 (Sept. 30, 2010). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.,* No. 07 Civ. 1801(SAS), 2009 WL1835939, at \*6 (S.D.N .Y. June 26, 2009), *aff'd,* 387 Fed. App'x 55 (2d Cir.2010), others disagree and conclude that whether any of the five categories apply in any particular case depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g., D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 346–47 (S.D.N.Y.2010), *aff'd,* 2012 WL 498854 (2d Cir. Feb. 16, 2012); *Qasem v. Toro,* 737 F.Supp.2d 147, 151–52 (S.D.N.Y.2010).

In his deposition plaintiff testified that the "sole reason" he sued Commissioner Fischer was because Fischer affirmed the disciplinary hearing determination at issue. Rule 7.1(a)(3) Statement (Dkt. No. 44–7) ¶ 8. Within this circuit there is a severe division among the district courts as to whether mere review by a DOCCS official of an appeal from a disciplinary hearing, which an inmate claims to have been infected by due process violations, can lead to personal liability on the part of that individual. *See Thomas v. Calero,* 824 F.Supp.2d 488, 508–09 (S.D.N.Y.2011) ("a number of courts in this Circuit have concluded that merely affirming the hearing officer's determination is

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

not a sufficient basis to impose liability under the second *Colon* factor.... On the other hand, other courts have found that affirming a hearing officer's determination on appeal is sufficient to establish personal involvement under the second *Colon* factor."). However, "the Second Circuit has, on at least one occasion, allowed a due-process claim to proceed against an upper-level prison official based on the allegation that the official 'affirmed [plaintiff's disciplinary] conviction on administrative appeal.' " *Thomas,* 824 F.Supp.2d at 507 (alteration in original) (quoting *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986)).

In *Rodriguez v. Selsky,* I followed those cases holding that a supervisory official's affirmance "of a constitutionally defective disciplinary determination at a time when the inmate is still serving his or her disciplinary sentence, and the violation can therefore be abated, falls within the *Colon* factors articulated in the Second Circuit for informing the supervisory liability analysis." No. 9:07–CV–0432, 2011 WL 1086001, at *6 (N.D.N.Y. Jan. 25, 2011) (Peebles, M.J.), *report and recommendation adopted,* 2011 WL 830639 (N.D.N.Y. Mar. 3, 2011) (Kahn, J.) (citing *Colon,* 58 F.3d at 873); *see also Thomas,* 824 F.Supp.2d at 509 ("Director Bezio's actions fall squarely within the second *Colon* factor-after he learned, via an appeal, of an alleged violation of plaintiff's rights, he not only failed to remedy the wrong, but allowed it to continue."); *but see Tafari v. McCarthy,* 714 F.Supp.2d 317, 383 (N.D.N.Y.2010) ("the affirming of a disciplinary conviction does not constitute personal involvement in a constitutional violation"). In my view, those cases concluding that a plaintiff's allegations that a supervisory defendant reviewed and upheld an alleged constitutionally suspect disciplinary determination are enough to show his or her personal involvement in the alleged violation appear to be both better reasoned and more consonant with the Second Circuit's position regarding personal involvement. *See Black v. Coughlin,* 76 F.3d 72, 75 (2d Cir.1996) (criticizing a district court's denial of leave to amend to add Donald Selsky as a defendant in

a due process setting and appearing to assume that Selsky's role in reviewing and affirming a disciplinary determination is sufficient to establish his personal involvement).

**\*6** In this case the question of which line of supervisory personal liability cases should be followed is not outcome-determinative. The record reflects that plaintiff's appeal of his disciplinary sentence to the Commissioner's office was reviewed by Norman Bezio. There is no evidence of defendant Fischer's involvement in the review of that disciplinary determination. In the absence of such evidence, defendant Fischer is entitled to dismissal of plaintiff's claims against him.

D. *Exhaustion of Remedies*

Defendants next assert that plaintiff's claim against defendant Frenya is procedurally barred based upon his failure to exhaust administrative remedies. The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan. 31, 2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002) (citation omitted).

If the court finds that an inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ). [FN8]

> **FN8.** While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F.3d at 43 (quoting *Johnson v. Testman,* 380 F.3d 691, 697–98 (2d Cir.2004) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.[FN9] *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed catechism, a court must first determine whether adminsitrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether through their own actions in preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense.[FN10] *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must

examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[FN11] *Macias,* 495 F.3d at 41; *Hemphill,* 380 F .3d at 686.

> **FN9.** Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford,* has been a matter of some speculation. *See, e.g., Newman v. Duncan,* NO. 04–CV–395, 2007 WL 2847304, at *2 n. 4 (N.D.N.Y. Sept. 26, 2007) (McAvoy, S.J. and Homer, M.J.).

> **FN10.** Defendants have preserved the defense of non-exhaustion by raising it in their answer. *See* Answer (Dkt.18) ¶ 13 ("Plaintiff failed to exhaust administrative remedies.").

> **FN11.** In practicality these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove,* 2007 WL 389003, at *8 n. 14); *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

**\*7** Plaintiff does not contest the availability of a mechanism for seeking internal administrative relief with respect to complaints regarding prison conditions at Clinton. New York prison inmates are subject to an Inmate Grievance program ("IGP") established by the DOCCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112–13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[FN12] 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

determination regarding the grievance. *Id.* at §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* at § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citing, *inter alia, Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

> FN12. The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances." 7 N.Y.C.R.R. § 701 .6(g)(1)(i)(a)-(b).

### 1. *Failure to Protect Claim*

The record now before the court firmly establishes that plaintiff failed to file any grievances regarding his failure to protect claim against defendant Frenya. Bellamy Aff. (Dkt. No. 44–4); *see also* Complaint (Dkt. No. 1) § 4. In his inmate civil rights complaint, which is given under penalty of perjury, Barksdale states that he did not present facts relating to his complaint through the grievance program, nor did he complain to prison authorities about the facts alleged, noting as a reason the fact that the incident in issue allegedly occurred at Clinton, and that he was incarcerated in the Upstate Correctional Facility at the time the complaint was filed. *See* Complaint (Dkt. No. 1) § 4. While it is true that in his subsequent deposition in this action plaintiff claims to have filed several grievances that were "intercepted" and "ripped", and vaguely describes grievances related to the assault, misconduct, and disciplinary hearing, the plaintiff's complaint and accompanying submissions show the filing of three grievances alleging misconduct on the

part of hearing officer Drown, with no response received to any of the three, but no grievances relating to his claim that defendant Frenya failed to protect him. *See* Complaint (Dkt. No. 1) Exh. D. Based upon the foregoing, and in particular the admission in plaintiff's complaint concerning the lack of any grievances, I recommend a finding that no genuine issue of material fact exists concerning exhaustion with regard to plaintiff's failure to protect the cause of action against defendant Frenya, and that it be dismissed on this procedural ground. *Baker v. Krieger,* 287 F.Supp.2d 207, 209 (W.D.N.Y.2003); *Hernandez v. Nash,* No. 9:00CV1564FJSGLS, 2003 WL 22143709, at * 4 (N.D.N.Y. Sep. 10, 2003).

### 2. *Due Process Claim*

**\*8** Plaintiff's due process claims stand on different footing. As an exception to the requirement of exhaustion through resort to the IGP, "under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding."[FN13] *Murray v. Palmer,* No. 9:03–CV–1010, 2010 WL 1235591, at *3 (Mar. 31, 2010) (Suddaby, D.J.) (emphasis omitted) (citing *Giano,* 380 F.3d at 678–79; *Johnson,* 380 F.3d at 697). An appeal from a disciplinary hearing that presents the precise procedural infirmities raised in the section 1983 action, for example, may be sufficient to exhaust administrative remedies. *LaBounty v. Johnson,* 253 F.Supp.2d 496, 502 n. 5 (W.D.N.Y.2003) (citing and quoting *Flanagan v. Maly,* 99 Civ. 12336, 2002 WL 122921, *2 (S.D.N.Y. Jan. 29, 2002)). In *Flanagan,* for example, the court declined to dismiss the plaintiff's due process claim for failure to exhaust, reasoning that

> FN13. Notably, " 'an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable.' " *Murray,* 2010 WL 1235591, at * 3 (quoting 7 N.Y.C.R.R. § 701.(3)(e)(2)).

[t]o require Flanagan to file an administrative

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

grievance in these circumstances would be absurd, and Congress cannot have intended such a requirement. When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal. Pursuit of the appellate process that the state provides fulfills all the purposes of the exhaustion requirement of § 1997a(e), by giving the state an opportunity to correct any errors and avoiding premature federal litigation. Once the alleged deprivation of rights has been approved at the highest level of the state correctional department to which an appeal is authorized, resort to additional internal grievance mechanisms would be pointless.

  *Flanagan,* 2002 WL 122921, at * 2.

  The Second Circuit has explicitly upheld the reasoning of the court in *Flanagan* on at least two separate occasions. In *Ortiz v. McBride,* the Second Circuit "expressly agreed with the parties that Ortiz exhausted his administrative remedies with respect to his due process claim by successfully appealing the hearing which resulted in his confinement." *Davis v. Barrett,* 576 F.3d 129,132–33 (2d Cir.2009) (citing *Ortiz v. McBride,* 380 F.3d 649, 653 (2d Cir.2004)). In *Davis v. Barrett,* the Court held that the inmate-plaintiff's "successful appeal of his administrative hearing constitutes exhaustion under the PLRA for purposes of rendering his due process claim ripe for adjudication in federal court." *Davis,* 576 F.3d at 132. Citing to its previous decision in *Ortiz,* the court indicated "that a prisoner may exhaust his administrative remedies for segregated confinement by appealing the adverse hearing determination." *Id.* (citing *Ortiz,* 380 F.3d at 653–54).

  In my view, the plaintiff should enjoy the benefit of this exception based upon his pursuit of a challenge to the disciplinary determination, ultimately resulting in the determination being overturned by the state

court after plaintiff served his 120 days of disciplinary confinement. Complaint (Dkt. No. 1) § 6. Accordingly, I recommend that the motion to dismiss plaintiff's due process claim for failure to exhaust administrative remedies be denied.

E. *Merits of Plaintiff's Due Process Claim*

  **\*9** Plaintiff claims his Due Process rights were violated because a requested witness was not called to testify at his disciplinary hearing, and as a result he was sentenced to 120 days of disciplinary SHU confinement. To successfully state a claim under 42 U.S.C. § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v.. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). In their motion, defendants assert that plaintiff's disciplinary confinement was of insufficient duration to qualify as a liberty interest deprivation of constitutional significance.

  In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995), the United States Supreme Court determined that to establish the deprivation of a liberty interest, a prison inmate must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation order imposed and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483–84, 115 S.Ct. at 2300; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. Atypicality in a *Sandin* inquiry is normally a question of law.[FN14] *Colon v. Howard,* 215 F.3d 227, 230–31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999). When determining whether a plaintiff possesses a liberty interest, the court must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement. *See Sealey,* 197 F.3d at 586; *Arce v. Walker,* 139 F.3d 329, 335–36 (2d

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 48–49 (2d Cir.1997). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary.[FN15] *Hynes,* 143 F.3d at 658; *Arce,* 139 F.3d at 336.

> **FN14.** In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit the question to a jury for resolution. *Colon,* 215 F.3d at 230–31; *Sealey,* 197 F.3d at 585.

> **FN15.** While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin.* *Colon,* 215 F.3d at 231.

Although the Second Circuit has "not established a bright-line rule as to how lengthy a SHU confinement will be considered atypical and significant", *Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000), that court has held that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required."[FN16] *Palmer v. Richards,* 364 F.3d 60, 64–65 (2d Cir.2004) (quoting *Colon,* 215 F.3d at 232). "In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer,* 364 F.3d at 65–66.

> **FN16.** In *Colon v. Howard,* a Second Circuit panel split markedly on whether or not adoption of a 180–day "bright line" test for examining SHU confinement would be appropriate and helpful in resolving these types

of cases. *See* 215 F.3d at 232–34 (Newman, C.J.), 235–37 (Walker, C.J. and Sack, C.J., concurring in part).

**\*10** In *Palmer,* the Second Circuit agreed with the district court that despite the plaintiff's relatively short confinement—77 days—in the absence of evidence concerning the conditions of the confinement, summary judgment was inappropriate. *Palmer,* 364 F.3d at 66 (agreeing that " 'Palmer should have the opportunity to demonstrate that the conditions of his confinement vis-a-vis both the conditions in administrative confinement and in the general prison population were sufficiently harsh' to violate a liberty interest despite the 'comparative shortness' of his confinement." (quoting *Palmer v. Goss,* No. 02 Civ. 5804, 2003 WL 22327110 at *6 (S.D.N.Y. Oct. 10, 2003)). In *Ortiz v. McBride,* the Second Circuit also found that a 90–day SHU sentence was sufficiently "atypical and significant" to withstand dismissal where the plaintiff alleged that conditions differed from "normal SHU confinement". 380 F.3d at 655 (plaintiff alleged he was "kept in SHU for twenty-four hours a day, was not permitted an hour of daily exercise, and was prevented from showering 'for weeks at a time' ").

Very recently, in a decision from the Southern District of New York in a case involving confinement in SHU for 291 days, a motion to dismiss was denied, the court concluding that

> plaintiff has not alleged that the conditions of his confinement differed from normal SHU circumstances. Plaintiff simply alleges that he was sentenced to twenty-two months in SHU, and actually confined in SHU for 291 days. Looking to *Palmer* and considering plaintiff's status as a *pro se* litigant, we conclude that plaintiff's confinement in SHU for 291 days is sufficient for pleading purposes, to implicate a liberty interest.... The length of time of plaintiff's SHU confinement and the lack of information concerning the conditions of plaintiff's confinement leave open sufficient possibility that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)
**(Cite as: 2012 WL 4107805 (N.D.N.Y.))**

plaintiff had a valid liberty interest.

*Thomas,* 824 F.Supp. at 500–01.

As can be seen, there is considerable uncertainty within this circuit as to whether a period of disciplinary SHU confinement for a period of 120 days is sufficiently atypical and significant to demonstrate the loss of a constitutionally protected liberty interest. In this instance, however, the matter comes before the court on a motion for summary judgment. To support their summary judgment motion it was incumbent upon the defendants to prove the lack of any issues of material fact. In light of the Second Circuit's cautionary notes, including in *Palmer,* calling for the development of a detailed factual record concerning the conditions of an inmate's confinement during the relevant period in cases such as this and defendants' failure to show that it was not a sufficiently atypical and significant departure from the ordinary incidents of general prison life, I recommend a finding that defendants have not sustained their burden of demonstrating entitlement to summary judgment on this claim. *Palmer,* 364 F.3d at 67–68.

IV. *SUMMARY AND RECOMMENDATION*

**\*11** In seeking dismissal of plaintiff's claims defendants' motion raises several issues, both procedural and substantive in nature. Turning first to the question of personal involvement, I recommend a finding that defendant Fischer cannot potentially be found liable for any alleged due process violation, based upon his lack of involvement in the relevant conduct, and that defendants' motion to dismiss plaintiff's claims against him on this basis therefore be granted. Turning to the question of exhaustion of remedies, I conclude that the uncontradicted record in the case reflects that plaintiff failed to exhaust available administrative remedies with respect to his failure to protect claim against defendant Frenya before commencing this action, and therefore recommend dismissal of that claim on this procedural basis. Finally, addressing plaintiff's procedural due process claim, I recommend a finding that

because defendants have failed to successfully shoulder their initial burden of demonstrating the lack of any genuine issues of fact surrounding whether plaintiff was deprived of a cognizable liberty interest by virtue of his 120–day SHU confinement, their motion for summary judgment dismissing this cause of action should be denied.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 44) be GRANTED, in part, and that all claims in this action against defendants Frenya and Fischer be DISMISSED, but that defendants' motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2012.
Barksdale v. Frenya
Not Reported in F.Supp.2d, 2012 WL 4107805 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Joseph J. BELILE, Plaintiff,
v.
C.O. GRIFFIN, et al., Defendants.

Civ. Action No. 9:11–CV–0092 (TJM/DEP).
Feb. 12, 2013.

Joseph J. Belile, Attica, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of New York, James Seaman, Esq., Assistant Attorney General, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*
DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Joseph J. Belile, a New York State prison inmate, has commenced this action against several corrections employees stationed at the facility in which he was housed at the relevant times, including its superintendent, pursuant to 42 U.S.C. § 1983, complaining of multiple violations of his civil rights. In his amended complaint, plaintiff alleges that, as a result of being denied his request for placement into protective custody, he was attacked by a fellow inmate. Belile also alleges that some of the named-defendants encouraged other inmates to attack him, and that he was assaulted by other named-defendants on two separate occasions.

Currently pending before the court in connection with this action is a motion by the defendants for the entry of summary judgment dismissing plaintiff's amended complaint. Defendants base their motion on (1) plaintiff's alleged failure to exhaust his administrative remedies before commencing suit, (2) their contention that plaintiff's claims fail on the merits, and (3) in the alternative, their claim of entitlement to qualified immunity. For the reasons set forth below, I recommend that plaintiff's amended complaint be dismissed for failure to exhaust available administrative remedies.

I. *BACKGROUND*[FN1]

> FN1. Although plaintiff opposed defendants' motion for summary judgment, he did not file an opposition to defendants' Local Rule 7.1 statement of material facts that complies with Local Rule 7.1(a) (3). Specifically, defendants filed an eleven-page statement of material facts that contains eighty-two paragraphs and complies with the citation requirements of Local Rule 7.1(a)(3). Defs.' L.R. 7.1 Statement (Dkt. No. 55, Attach.18). In response, plaintiff filed a two-page statement of material facts that contains only five paragraphs, neither admits nor denies any of the paragraphs contained in defendants' statement of material facts, and fails to cite to any record evidence. Dkt. No. 57 at 6–7. Plaintiff was warned of the consequences of failing to properly respond to defendants' statement of material facts. Dkt. No. 56, Attach. 1. The court therefore accepts defendants' facts to the extent that they are supported by accurate citations to the record. *See* N.D .N.Y. L.R. 7.1(a)(3) (*"The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."* (emphasis in original)); *see also, e.g., El-gamil v. Syracuse Univ.,* No. 99–CV–0611, 2000 WL 1264122, at \*1 (N.D.N.Y. Aug. 22,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

2010) (McCurn, J.) (listing cases and deeming all of the facts asserted in the defendant's statement of material facts as admitted where the plaintiff did not specifically admit or deny any of the assertions and "failed to contain a single citation to the record").

Plaintiff Joseph Belile is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Am. Compl. (Dkt. No. 37) at 1. Although now confined elsewhere, at the times relevant to this action, plaintiff was held in keeplock confinement at the Great Meadow Correctional Facility ("Great Meadow"), a maximum security prison located in Comstock, New York.FN2 Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 18; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 1. Upon his arrival at Great Meadow, plaintiff was assigned to a cell located on the fourth tier of the B-block, a housing unit comprised of four floors of cells, all of which are oriented in the same direction and face an open area. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 18.

> FN2. "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989), *accord, Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998); *Tinsley v. Greene,* No. 95–CV–1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., adopting report and recommendation by Homer, M.J.) (citing *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin,* 26

F.Supp.2d 615, 628 (S.D.N.Y.1998). Although, as a keeplocked inmate, plaintiff was entitled to leave his cell for one hour each day for the purpose of exercise, *Lee,* F.Supp.2d at 628, he did not avail himself of that opportunity. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 51–52.

On or about April 23 or 24, 2009, while in his cell on B-block, Belile overheard two inmates yelling that he would be killed if he came out of his cell. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 19–20. Although plaintiff was not able to identify any of the inmates involved because of the orientation of the cells in B-block, he believes that the threats came from one floor below his cell. *Id.* at 19, 85–86. The next day, plaintiff wrote letters to defendant Charles F. Kelly, Jr., the Deputy Superintendent of Security at Great Meadow, and the B-block sergeant, requesting that he be placed in protective custody ("PC"). *Id.* at 16, 19; Am. Compl. (Dkt. No. 37) at 9; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 8; Kelly Decl. Exh. A (Dkt. No. 55, Attach.10). That same day, defendant Kelly assigned defendant Donald Maguire, a corrections sergeant at the facility, to investigate the matter. Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 9.

**\*2** After receiving the assignment to review plaintiff's PC request and obtaining relevant background information, defendant Maguire interviewed Belile on the evening of April 27, 2009. Maguire Decl. (Dkt. No. 55, Attach.12) at ¶¶ 5, 8. During that interview, plaintiff was unable to provide specific information to support his belief that he was in danger, or to identify any inmate at Great Meadow that might want to harm him.FN3 *Id.* at ¶¶ 9–10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 23–25. Finding no basis to conclude that plaintiff faced a credible threat to his safety, defendant Maguire denied plaintiff's request for PC, had him returned to his keeplock cell, and prepared a report to defendant Kelly concerning the results of his investigation. Maguire Decl. (Dkt. No. 55, Attach.12) at 2; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 10; Kelly

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

Decl. Exh. B (Dkt. No. 55, Attach.11); Plaintiff's Dep. Tr. (Dkt. No. 55, Attach.2) at 26, 29.

> FN3. Although Belile named two inmates, defendant Maguire determined that neither was presently confined at Great Meadow. Maguire Decl. (Dkt. No. 55, Attach.12) at ¶ 9.

Upon completion of the interview by defendant Maguire, plaintiff was escorted back to his B-block cell by a corrections officer identified by him as defendant Griffin, a corrections officer at Great Meadow. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 29. When plaintiff arrived at the foot of the stairs leading to his fourth-floor cell, he dropped the bags that he was carrying "to catch [his] breath." Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 31. At that moment, defendant Griffin asked plaintiff what he was convicted of that resulted in his incarceration, and, when plaintiff answered him, defendant Griffin kicked plaintiff in the left thigh area and told him to move up the stairs. *Id.* at 31. Plaintiff felt what he describes as a sharp pain for a few moments after being kicked by the corrections officer, but the pain subsided by later that night, and he never sought medical treatment for the injury. *Id.* at 33.

On or about April 27, 2009, the day after plaintiff's interview with defendant Maguire, defendant Murphy, a corrections officer assigned to supervise B-block inmates' transit to the Great Meadow mess hall for breakfast, stated to his accompanying officer, defendant John Doe # 1, when reaching plaintiff's cell for escort, "Belile B–4–29 is a rapo and he tried to sign into PC last night." Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 33–34; Am. Compl. (Dkt. No. 37) at 10. Plaintiff claims that, while defendant Murphy pretended to direct that statement to defendant John Doe # 1 standing next to him, he actually said it loud enough so that other inmates could hear him as well. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 34–35. Later on April 28, 2009, after the evening meal, an unknown

inmate screamed out "29 Cell tried to sign into PC. He's a rat. We'll get him when he comes out." *Id.* at 21–22.

On May 1, 2009, while plaintiff was watching television, another inmate splashed a hot liquid into his cell, causing him to suffer burns that required medical treatment. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 44–47. After receiving treatment for his injuries, plaintiff was escorted to PC, which is located on the D-block of Great Meadow. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 53–55.

**\*3** Following his arrival in PC, plaintiff received four bags of personal property from defendants Dimick and Brockley, two other corrections officers at the facility, both of whom were known to plaintiff from an earlier period in 2006 when plaintiff was confined in a Behavioral Health Unit program at Great Meadow. Am. Compl. (Dkt. No. 37) at 10–11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 56–59. After delivering plaintiff's property, defendants Dimick and Brockley kicked plaintiff in the genitals and punched him in the head. Am. Compl. (Dkt. No. 37) at 11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 61. The officers then threw the four property bags at plaintiff and left his cell. Am. Compl. (Dkt. No. 37) at 11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 62. Plaintiff did not seek medical treatment for the injuries resulting from the actions of defendants Dimick and Brockley. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 62.

Within a couple of days of arriving in PC, plaintiff wrote a grievance and placed it in the meal slot of his cell gate to be picked up by a corrections officer. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 64, 66. The grievance was, in fact, picked up, but plaintiff does not know precisely who retrieved it. *Id.* at 66, 67. On or about May 20, 2009, after plaintiff did not receive a response to his first grievance, he wrote a second grievance, which again was picked up from his meal slot by an unknown individual. *Id.* at 66, 67. Plaintiff

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

did not receive a response to the second grievance. *Id.* at 66. Other mail that plaintiff placed in his meal slot to be sent out while he was in PC did reach its destination. *Id.* at 69–70. There is no DOCCS record of plaintiff filing these two grievances, nor is there a record that plaintiff appealed any grievance relating to the matters now in issue to the relevant appellate entity within DOCCS. Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 8; Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on January 26, 2011. Complaint (Dkt. No. 1). Following a period of pretrial discovery, during which plaintiff attempted to identify the defendants previously sued only as "Doe" defendants, he filed an amended complaint on November 8, 2011. Am. Compl. (Dkt. No. 37). Plaintiff's amended complaint names, as defendants, Great Meadow Superintendent Bezio; [FN4] Great Meadow Deputy Superintendent of Security Kelly; Corrections Sergeant Maguire; and Corrections Officers Griffin, Murphy, Dimick, Brockley, and defendant "John Doe # 1." *Id.* at 2–3. Construed with the utmost liberality, plaintiff's amended complaint asserts a due process claim under the Fourteenth Amendment, and excessive force, failure to protect, and deliberate indifference claims under the Eighth Amendment, all pursuant to 42 U .S.C. § 1983. *Id.* at 12–13.

> FN4. While Norman Bezio is named by Belile as a defendant, and is identified as the superintendent at the facility in issue, during his deposition, Belile acknowledged that Bezio was not in fact the superintendent at any time relevant to the events giving rise to this action. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 90.

On May 31, 2012, following the completion of discovery, defendants filed a motion for summary judgment seeking dismissal of plaintiff's amended complaint based on several grounds, generally arguing

that plaintiff failed to exhaust his administrative remedies, that plaintiff's amended complaint fails on the merits, and, alternatively, that all defendants are entitled to qualified immunity. Defs.' Memo. of Law (Dkt. No. 55, Attach.19) at 4–17. On June 7, 2012, plaintiff filed his opposition to that motion, Plf.'s Resp. (Dkt. No. 56), and defendants subsequently filed their reply on June 14, 2012, Defs.' Reply (Dkt. No. 58).

**\*4** Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local 72.3(c). *See* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F .3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. *Failure to Exhaust*

Defendants argue that plaintiff is precluded from pursuing his claims in this action as a result of his failure to exhaust available administrative remedies before filing suit. Defs.' Memo. of Law (Dkt. No. 55, Attach.19) at 4–5. In support, defendants offer declarations from Jeffrey Hale, Assistant Director of the DOCCS Inmate Grievance Program ("IGP"), and Jason Hoagland, Acting IGP Supervisor at Great Meadow. Dkt. No. 55, Attachs. 14, 15. Hale avers that, based upon a search of available DOCCS records, plaintiff did not, in accordance with the available grievance procedures in place at Great Meadow while plaintiff confined there, pursue an appeal to the DOCCS Central Office Review Committee ("CORC") related to the denial of plaintiff's request to be placed in PC. Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9. Similarly, Hoagland avers that a search of the grievance records at Great Meadow does not reveal any grievance filed by plaintiff "at any time." Hoa-

gland Decl. (Dkt. No. 55, Attach.15) at ¶ 8. In response, plaintiff argues that "there is not any available administrative remedie[s] when an assault and harm have already occurred," and that the exhaustion requirement only applies to " 'prison conditions' under the P.L.R.A.," which plaintiff is not challenging. Plf. Resp. (Dkt. No. 57) at ¶ 2.

### 1. *Legal Principles Governing Exhaustion*

**\*5** The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is ... mandatory. Prisoners must now exhaust all 'available' remedies[.]" (internal citations omitted)); *Hargrove v. Riley,* No. 04–CV–4587, 2007 WL 389003, at \*5 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). [FN5] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). [FN6]

> FN5. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

> FN6. In this case, the Supreme Court's decision in *Porter* effectively forecloses plaintiff's argument that claims of the past-use of excessive force are not subject to the ex-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

haustion requirement. *Porter,* 534 U.S. at 532.

In the event the defendant establishes that the inmate-plaintiff failed "to fully complete[ ] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal. *Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [FN7] *Woodford,* 548 U.S. at 95; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ).

> FN7. While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " in order to satisfy the PLRA, an inmate-plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies by complying with the grievance procedures in place at the relevant correctional facility. *Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (quoting *Johnson v. Testman,* 380 F.3d 691, 697–98 (2d Cir.2004) (emphasis omitted)).

In accordance with the PLRA, the DOCCS has made the IGP available to inmates, which is comprised of a three-step procedure that inmates must use when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). The IGP procedure is accurately described in Hale's declaration, Dkt. No. 55, Attach. 14, and embodied in 7 N.Y.C.R.R. § 701. Under the IGP, an inmate must first file a complaint with the facility's IGP clerk within twenty-one days of the alleged oc-

currence. 7 N.Y.C.R.R. § 701.5(a)(1). If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. *Id.* A representative of the facility's inmate grievance resolution committee ("IGRC") has up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. *Id.* at § 701.5(c). The superintendent must issue a written decision within a certain number of days of receipt of the grievant's appeal.[FN8] *Id.* at § 701.5(c)(i), (ii).

> FN8. Depending on the type of matter complained of by the grievant, the superintendent has either seven or twenty days after receipt of the grievant's appeal to issue a decision. *Id.* at § 701.5(c) (i), (ii).

**\*6** The third and final step of the IGP involves an appeal to the CORC, which must be taken within seven days after receipt of the superintendent's written decision. *Id.* at § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. *Id.* at § 701.5(d)(2)(i).

Accordingly, at each step of the IGP process, a decision must be entered within a specified time period. Significantly, "[a]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process." *Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010) (Hurd, J. adopting report and recommendation by Lowe, M.J.) (citing, *inter alia,* 7 N.Y.C.R .R. § 701.6(g)(2)).

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

Generally speaking, if a plaintiff fails to follow each of the required three steps of the above-described procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *See Ruggerio v. County of Orange,* 467 F.3d 170, 176 (2d Cir.2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted)).

2. *Application of Legal Principles*

Initially, the court notes that plaintiff alleges that he only filed two grievances on or about May 2, 2009, and May 20, 2009, both of which, when liberally construed, complain that, as a result of denials by defendants Maguire and Kelly of his request to be placed in PC, he was assaulted by another inmate. Am. Compl. (Dkt. No. 37) at 5–6. The grievances also complain that defendants Murphy and Doe improperly disclosed to other inmates that plaintiff was convicted of rape in the third degree, and allege that defendants Dimick and Brockley assaulted plaintiff immediately after arriving in PC. *Id.* Because these two grievances do not include any complaints about defendant Griffin's assault on plaintiff when he escorted plaintiff back from defendant Maguire's office, and because there is no record evidence that plaintiff ever filed a grievance as it relates to this allegation, I find that plaintiff failed to exhaust his available administrative remedies regarding any excessive force claim against defendant Griffin, in violation of the Eighth Amendment. However, because each of the other named-defendants are implicated in plaintiff's grievances, the court proceeds to discuss whether plaintiff exhausted available administrative remedies as it relates to the claims asserted against the remaining named-defendants.

After carefully reviewing the record evidence, I find that there is a dispute of fact as to whether plaintiff actually filed a grievance with the IGP clerk that relates to any of the allegations giving rise to this action.[FN9] Specifically, plaintiff's amended complaint alleges that, while he filed two grievances, both were intercepted by correctional officers at Great Meadow. Am. Compl. (Dkt. No. 37) at 3. Similarly, at his deposition, plaintiff testified that he placed two written grievances in his meal slot to be filed by corrections officers. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 66–67. According to plaintiff, after a corrections officer retrieves a grievance from an inmate, the grievance is supposed to be forwarded to the appropriate officials. Am. Compl. (Dkt. No. 37) at 3. However, Hoagland, the Acting IGP Supervisor at Great Meadow, avers that a search of the grievance records at Great Meadow does not reveal any grievance filed by plaintiff "at any time." Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 8. Moreover, Hale, the DOCCS IGP Assistant Director, states that a search of the relevant DOCCS records shows that plaintiff did not file an appeal to CORC arising from any incident while at Great Meadow. Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9. These conflicting pieces of evidence demonstrate that there is a dispute of fact as to whether plaintiff initiated the IGP process at Great Meadow by filing a grievance relating to the allegations giving rise to this action.

> FN9. As will be discussed more completely below, however, because Belile failed to pursue the alleged grievance to completion, this fact is not material in that it does not preclude the entry of summary judgment against him on this issue.

\*7 Whether or not plaintiff did attempt to lodge grievances in accordance with the IGP, however, is immaterial because there is no dispute that he failed to "properly exhaust" his administrative remedies by complying with the IGP's requirement that he appeal any denial to the superintendent of the facility, and then appeal any unfavorable decision from the superintendent to CORC. *Woodford,* 548 U.S. at 95; *Ruggerio,* 467 F.3d at 176. Plaintiff does not argue, nor does he offer any proof in his amended complaint,

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

at his deposition, or in opposition to defendants' motion for summary judgment, that he pursued his grievances to completion. For this reason, I find that no reasonable factfinder could conclude that plaintiff exhausted available administrative remedies as it relates to any of the allegations giving rise to this action. *See Goodson v. Silver,* No. 09–CV–0494, 2012 WL 4449937, at *4 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.) ("[I]f a prisoner has failed to follow each of the required ... steps for the ... grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies.").

Despite finding that plaintiff did not file and pursue to completion a grievance regarding the claims he now raises in this action, the exhaustion inquiry is not ended. In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.[FN10] *Macias,* 495 F.3d at 41; *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the Second Circuit's test, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such remedies were available to the plaintiff, the court must next examine "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust defense." *Hemphill,* 380 F.3d at 686, *accord, Macias,* 495 F.3d at 41. Finally, in the event the proffered defense survives these first two levels of scrutiny, the court must examine whether special circumstances "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[FN11] *Id.*

FN10. Whether the Second Circuit's test in

*Hemphill* survives following the Supreme Court's decision in *Woodford* has been a matter of some speculation. *See, e.g., Newman v. Duncan,* No. 04–CV–0395, 2007 WL 2847304, at *2 n. 4 (N.D.N.Y. Sept. 26, 2007) (McAvoy, J., adopting report and recommendation by Homer, M.J.).

FN11. Though distinct in theory, in practice, the application of the three prongs of the prescribed test admit of overlap. *Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004); *see also Hargrove v.. Riley,* No. CV–04–4587, 2007 WL 389003, at *8 n. 14 (E.D.N.Y. Jan. 31, 2007) ("Case law does not clearly distinguish between situations in which defendants' behavior renders administrative remedies 'unavailable' to the plaintiff and cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. As such, there will be some overlap in the analyses.").

a. *Availability of Remedy*

As was discussed above, in New York, the DOCCS has implemented the three-step IGP in accordance with the requirements under the PLRA. 7 N.Y.C.R.R. § 701.5. Despite an inmate's entitlement in most instances to file and pursue a grievance in accordance with the IGP, there are circumstances in which the grievance procedure nonetheless is deemed unavailable to an inmateplaintiff. *Hemphill,* 380 F.3d at 686. For example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove,* 2007 WL 389003, at *8 (internal citation omitted); *see also Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (holding that, where a prisoner's favorable decision is not properly implemented, and the time to appeal the decision has expired, the prisoner's available admin-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

istrative remedies had been exhausted).

**\*8** Here, plaintiff does not argue that he was "unaware of the grievance procedures or did not understand it." *Hargrove,* 2007 WL 389003, at \*8. *See* Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 72 ("Q: So you're familiar with the Inmate Grievance Program; right? A: Yes."). Rather, he alleges that the grievance procedure was unavailable to him because corrections officers intercepted and discarded the two grievances that he left in his meal slot shortly after arriving in PC. Am. Compl. (Dkt. No. 37) at 3–4; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 64–68. Plaintiff admitted at his deposition, however, that he is only speculating when he alleges that the officers who picked up his mail discarded those grievances. *Id.* at 70–71. Similarly, plaintiff admitted that he does not know who retrieved his grievances, which means he does not know whether any of the named-defendants were responsible for, or aware of, the alleged interception of his grievances. *Id.* at 68. Plaintiff also acknowledged that other mail that he sent from PC did reach the intended addressees. *Id.* at 69–70.

Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the IGP. *See Butler v. Martin,* No. 07–CV–0521, 2010 WL 980421, at \*5 (N.D.N.Y. Mar. 15, 2010) (Scullin, J.) (finding that the plaintiff was not excused from failing to avail himself of the administrative procedures where he alleged that his grievances were discarded but did not offer any evidence "that a particular officer discarded the[m]"); *Winston v. Woodward,* No. 05–CV–3385, 2008 WL 2263191, at \*10 (S.D.N.Y. May 30, 2008) ("In light of Plaintiff's failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered ... mail tampering, ... the Court finds, even taking the evidence in the light most favorable to Plaintiff, that

he has not put forth sufficient evidence to sustain his burden [.]"); *Veloz v. New York,* 339 F.Supp.2d 505, 514 (S.D.N.Y.2004) ("Even assuming [the plaintiff] did submit grievances, he offers no evidence that any particular officer thwarted his attempts to file[.]"); *Nunez v. Goord,* 172 F.Supp.2d 417, 429 (S.D.N.Y.2001) (finding the plaintiff's allegation that his failure to file grievances was due to " 'the practice of certain officers' " to destroy them "stand[s] alone and unsupported").

In any event, there is no dispute that, even assuming that any of the defendants did, in fact, intercept and discard plaintiff's grievances, there were other avenues available to plaintiff for pursuing his grievances. For example, in his declaration, Hoagland notes that, at least weekly, either the IGP supervisor or the sergeant assigned to the grievance office at Great Meadow makes rounds through the entire facility, including in D-block, where PC inmates are confined, to address grievance-related questions or issues. Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 5. During those rounds inmates may hand grievances directly to the person making the rounds.[FN12] *Id.* at ¶ 6. Accordingly, even assuming that plaintiff's grievances were intercepted, there was an available, alternative avenue for submitting those grievances directly to the IGP supervisor.

> FN12. Again, because plaintiff has not disputed defendants' Local Rule 7.1 statement of material facts, which is, in part, supported by Hoagland's declaration, the court assumes the truth of the statements made in Hoagland's declaration.

**\*9** Finally, under the IGP, even if plaintiff's grievances were intercepted and not filed with the IGP clerk, "he had the ability—and the duty to—file an appeal regarding the non-processing of th[ose] grievance[s]." *Sidney,* 2012 WL 1380392, at \*5 (collecting cases and finding that the plaintiff failed to exhaust available administrative remedies where he

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

argued that a second grievance was " 'pilfered by theivery hands' "); *Butler,* 2010 WL 980421, at *6 ("Plaintiff was obligated to appeal to the next administrative level once it became clear to him that a response to his grievances was not forthcoming." (citing, *inter alia,* 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."))); *Veloz,* 339 F.Supp.2d at 516 ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

For all of these reasons, I conclude that the grievance process was available to plaintiff.

b. *Estoppel*

The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (internal citations omitted). Exhaustion of remedies is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Block,* 549 U.S. 199, 216 (2007). Here, defendants have properly preserved the exhaustion defense by asserting it as an affirmative defense in their answers. Answer (Dkt. No. 39) at ¶ 15; Answer (Dkt. No. 45) at ¶ 15. Turning to estoppel, I find no basis in the record to support a finding that defendants should be precluded from relying upon the defense. "Estoppel will be found where an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or

impossible." *Winston,* 2008 WL 2263191, at *9 (internal quotation marks omitted) (collecting cases). "[A] plaintiff's failure to exhaust all administrative remedies may be excused on the grounds of estoppel where the plaintiff was misled, threatened, or otherwise deterred from fulfilling the requisite procedures." *Id.* (citing, *inter alia, Hemphill,* 380 F.3d at 688–89).

As was discussed above, although plaintiff argues that the two grievances he left in his meal slot were discarded by corrections officers, for all of the same reasons that this argument fails when analyzing whether administrative remedies were "available" to plaintiff, it similarly falls short in establishing that defendants should be estopped from asserting the exhaustion defense. *See Giano,* 380 F.3d at 677 n. 6 ("We note that the case law on the PLRA's exhaustion requirement does not always distinguish clearly between (a) cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense, [and] (b) situations in which administrative remedies are not 'available' to the plaintiff[.]"); *see also Hargrove,* 2007 WL 389003, at *8 n. 14. The court would only add that, because plaintiff does not allege, or provide any evidence that, a named-defendant acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense, he has failed to establish a dispute of material fact as to whether any of defendants are estopped from asserting the exhaustion defense. *See Atkins v. Menard,* No. 11–CV–9366, 2012 WL 4026840, at *3 (N .D.N.Y. Sept. 12, 2012) (Suddaby, J.) ("Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.").

c. *Special Circumstances*

**\*10** The third, catchall factor to be considered under the Second Circuit's exhaustion test focuses upon whether special circumstances exist to justify excusing a plaintiff's failure to exhaust available administrative remedies, notwithstanding the fact that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

the administrative remedies were available, and the defendants are not estopped from asserting the defense. *Hemphill,* 380 F.3d at 689; *Giano,* 380 F.3d at 676–77. Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials, and leads the plaintiff to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77, *accord, Hargrove,* 2007 WL 389003, at *10.

Here, there is no allegation that special circumstances exist to excuse plaintiff's failure to exhaust available administrative remedies, nor does plaintiff offer any evidence of potentially applicable special circumstances. As a result, I find that plaintiff is not excused from his failure to exhaust administrative remedies before commencing this action, and I recommend that his amended complaint be dismissed on this procedural basis alone.[FN13]

> FN13. In recommending dismissal of plaintiff's amended complaint in its entirety, I include the defendant identified as "John Doe # 1" who has neither been identified nor appeared in the action. Because that defendant is not specifically alleged to have been, nor is there record evidence to establish that he was, involved in the interception and discarding of plaintiff's grievances, I find he would not be estopped from asserting the exhaustion defense and thus, like the named-defendants, would be entitled to dismissal on the basis of plaintiff's failure to exhaust. Alternatively, I recommend dismissal of all claims against defendant Doe, *sua sponte,* based upon plaintiff's failure to properly identify and serve him, as required under both Federal Rules of Civil Procedure and this court's local rules, despite the fact that this case has been pending for more than two years, and based on plaintiff's failure,

prior to the close of discovery, to ascertain the identity of that individual. Fed.R.Civ.P. 41(b),(m); *see also Butler,* 2010 WL 980421, at *6–7.

IV. *SUMMARY AND RECOMMENDATION*

It is undisputed that, prior to commencing this action, plaintiff failed to exhaust his administrative remedies by pursuing to completion any grievance related to the events giving rise to this action. In light of this failure, and finding no basis to conclude that plaintiff's compliance with the IGP should be excused, I recommend dismissal of plaintiff's amended complaint in its entirety on this basis alone, without addressing either the merits of his claims, or the qualified immunity argument advanced by defendants in support of their motion for summary judgment. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 55) be GRANTED, and that plaintiff's amended complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2013.
Belile v. Griffin
Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)
**(Cite as: 1999 WL 983876 (S.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Craig COLE, Plaintiff,
v.
Christopher P. ARTUZ, Superintendent, Green Haven
Correctional Facility, R. Pflueger, A. Glemmon, Sgt.
Stevens, Lt. Haubert, Capt. W.M. Watford, Capt. T.
Healey, and John Doe # 1–5, all as individuals, De-
fendants.

No. 93 Civ. 5981(WHP) JCF.
Oct. 28, 1999.

Mr. Craig Cole, Bare Hill Correctional Facility,
Malone, New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of
the Attorney General of the State of New York, New
York, New York, for Defendant.

*MEMORANDUM & ORDER*
PAULEY, J.

**\*1** The remaining defendant in this action, Cor-
rection Officer Richard Pflueger, having moved for an
order, pursuant to Fed.R.Civ.P. 56, granting him
summary judgment and dismissing the amended
complaint, and United States Magistrate Judge James
C. Francis IV having issued a report and recommen-
dation, dated August 20, 1999, recommending that the
motion be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff
does "not contest the dismissal of this action", it is

ORDERED that the attached report and recom-
mendation of United States Magistrate Judge James C.

Francis IV, dated August 20, 1999, is adopted in its
entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*
FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green
Haven Correctional Facility, brings this action pur-
suant to 42 U.S.C. § 1983. Mr. Cole alleges that the
defendant Richard Pflueger, a corrections officer,
violated his First Amendment rights by refusing to
allow him to attend religious services. The defendant
now moves for summary judgment pursuant to Rule
56 of the Federal Rules of Civil Procedure. For the
reasons set forth below, I recommend that the de-
fendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at
the Green Haven Correctional Facility. (First
Amended Complaint ("Am.Compl.") ¶ 3). From June
21, 1993 to July 15, 1993, the plaintiff was in keeplock
because of an altercation with prison guards.
(Am.Compl.¶¶ 17–25). An inmate in keeplock is
confined to his cell for twenty-three hours a day with
one hour for recreation. (Affidavit of Anthony An-
nucci dated Dec. 1, 1994 ¶ 5). Pursuant to DOCS
policy, inmates in keeplock must apply for written
permission to attend regularly scheduled religious
services. (Reply Affidavit of George Schneider in
Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.")

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)
**(Cite as: 1999 WL 983876 (S.D.N.Y.))**

¶ 3). Permission is granted unless prison officials determine that the inmate's presence at the service would create a threat to the safety of employees or other inmates. (Schneider Aff. ¶ 3). The standard procedure at Green Haven is for the captain's office to review all requests by inmates in keeplock to attend religious services. (Schneider Aff. ¶ 3). Written approval is provided to the inmate if authorization is granted. (Affidavit of Richard Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The inmate must then present the appropriate form to the gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Or-

der dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)
**(Cite as: 1999 WL 983876 (S.D.N.Y.))**

must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International,*

*Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se'*s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

**B.** *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)
**(Cite as: 1999 WL 983876 (S.D.N.Y.))**

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated.[FN1]

> FN1. In light of this finding, there is no need to consider the defendant's qualified immunity argument.

*Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

S.D.N.Y.,1999.
Cole v. Artuz
Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Kenneth Carl GROVES, Sr., Plaintiff,
v.
Brett DAVIS, Secure Care Treatment Aid; David W.
Sill, Secure Care Treatment Aid; Thomas Nicolette,
RN, Ward Nurse; Charmaine Bill, Treatment Team
Leader; Jill E. Carver, Social Worker, Primary Ther-
apist; Edwin Debroize, Psychologist Assist; Jeff
Nowicki, Chief of Mental Health Treatment Serv.;
Terri Maxymillian, Ph.D., Dir. of Mental Health
Serv.; Sgt. Sweet, Security Services, CNYPC; Mi-
chael Hogan, Comm'r, Dep't of Mental Health, De-
fendants.

No. 9:11–CV–1317 (GTS/RFT).
Feb. 28, 2012.

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

### MEMORANDUM DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

*1 Currently before the Court, in this *pro se* civil
rights action filed by Kenneth Carl Groves, Sr.
("Plaintiff"), against numerous employees of New
York State or the Central New York Psychiatric
Center ("Defendants"), are Plaintiff's motion to pro-
ceed *in forma pauperis,* his motion for a temporary
restraining order and preliminary injunction, and his
motion for appointment of counsel. (Dkt.Nos.2, 3, 4.)
[FN1] For the reasons set forth below, Plaintiff's motion
to proceed *in forma pauperis* is granted; his motion for
a preliminary injunction is denied; his motion for
appointment of counsel is denied; Plaintiff's claims of
deliberate indifference to his mental health needs

against Defendants Bill, Carver and DeBroize are *sua
sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are
*sua sponte* dismissed without prejudice and with leave
to amend in this action in accordance with
Fed.R.Civ.P. 15; Sgt. Sweet is *sua sponte* dismissed
without prejudice as a Defendant in this action; the
Clerk is directed to issue summonses, and the U.S.
Marshal is directed to effect service of process on
Defendants Davis, Sill, and Nicolette.

> FN1. This is the fourth civil rights action
> filed by Plaintiff in this District. Generally,
> two of these actions arose out of Plaintiff's
> refusal to consent to a strip search and the
> subsequent actions taken against Plaintiff
> as a result of his refusal. *See Groves v. New
> York,* 09–CV–0406, Decision and Order
> (N.D.N.Y. filed May 11, 2009) (Hurd, J.)
> (*sua sponte* dismissing complaint pursuant to
> 28 U.S.C. § 1915[e][2][B] ); *Groves v. The
> State of New York,* 9:09–CV–0412, Decision
> and Order (N.D.N.Y. filed Mar. 26, 2010)
> (Sharpe, J.) (granting defendants' motion to
> dismiss the complaint pursuant to
> Fed.R.Civ.P. 12[b][6] ). The third action al-
> leged numerous violations of Plaintiff's con-
> stitutional rights during the period July 23,
> 2009, and August 26, 2009, and was dis-
> missed without prejudice upon Plaintiff's
> request in October, 2010. *See Groves v.
> Maxymillian,* 9:09–CV–1002, Decision and
> Order (N.D.N.Y. filed Oct. 8, 2010)
> (Suddaby, J.). As a result, it does not appear
> that the current action is barred because of res
> judicata, collateral estoppel, and/or the rule
> against duplicative litigation.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

**I. RELEVANT BACKGROUND**

On November 7, 2011, Plaintiff commenced this action *pro se* by filing a civil rights Complaint, together with a motion to proceed *in forma pauperis.* (Dkt. Nos.1, 2.) [FN2] Liberally construed, Plaintiff's Complaint alleges that the following constitutional violations against him occurred during his confinement at Central New York Psychiatric Center ("CNYPC"): (1) Defendants Davis and Sill used excessive force against him under the Eighth and/or Fourteenth Amendments; (2) Defendant Nicolette knew of and failed to take action to protect Plaintiff from the assault under the Eighth and/or Fourteenth Amendments; (3) Defendants Bill, Carver, and De-Broize were deliberately indifferent to his mental health needs under the Eighth and/or Fourteenth Amendments; and (4) Defendants Bill, Carver, De-Broize, Nowicki, Maxymillian, Bosco, and Hogan failed to "adequately train the staff under their supervision" and to take appropriate action in response to the incident. (*See generally* Dkt. No. 1.) For a more detailed description of Plaintiff's claims, and the factual allegations giving rise to those claims, the reader is referred to Part III.B of this Decision and Order.

> FN2. At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

**II. MOTION TO PROCEED *IN FORMA PAU-PERIS***

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis.* (Dkt. No. 2.)

**III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT**

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any

time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[FN3]

> FN3. The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

**A. Governing Legal Standard**

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. FN4 Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. FN5 Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].FN6

FN4. *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN5. *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN6. It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under

Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold con-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

victed criminals in unsafe conditions, it must be un-constitutional [under the Due Process Clause] to con-fine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* *457 U.S. at 315–16.* As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memoran-dum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009). [FN7]

> FN7. *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a cus-todial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an uncon-victed detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "de-liberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial de-tainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**

**\*4** Plaintiff alleges that on August 8, 2011, De-fendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally as-saulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (inter-nal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plain-tiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an op-portunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize**

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).).[FN8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703.[FN9]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

FN8. Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

FN9. Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading.FN10 Rather, this claim is hereby dismissed with prejudice.

FN10. The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN11]

FN11. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997).[FN12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011).[FN13]

FN12. *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

FN13. *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its*

*entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

**IV. MOTION FOR INJUNCTIVE RELIEF**

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defend-

ants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

[T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[FN14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

FN14. For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private

sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

**\*10 ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is ***GRANTED;***[FN15] and it is further

> FN15. Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is ***DENIED*** **without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and De-Broize are *sua sponte* ***DISMISSED*** **with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* ***DISMISSED*** **without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* ***DISMISSED*** **without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)
**(Cite as: 2012 WL 651919 (N.D.N.Y.))**

**writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

N.D.N.Y.,2012.
Groves v. Davis
Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Jeffrey JEFFERS, Plaintiff,
v.
Glenn S. GOORD, et al., Defendants.

No. 9:99 CV 0335 FJS/GHL.
April 4, 2005.

Golding & Associates, New York, New York, for
Plaintiff, Kevin S. Golding, of counsel.

Hon. Eliot L. Spitzer, Attorney General of the State of
New York, Syracuse, New York, for the Defendants,
of counsel.

Maria Moran, Assistant Attorney General, of counsel.

*REPORT-RECOMMENDATION*
LOWE, Magistrate J.
**\*1** This action has been referred to me for Report
and Recommendation by the Honorable Frederick J.
Scullin, United States District Judge, pursuant to Lo-
cal Rule 72.3(c) and 28 U.S.C. § 636(b).

On August 1, 2002, plaintiff, Jeffery Jeffers
("plaintiff"), filed an amended complaint in this ac-
tion, alleging claims pursuant to 42 U.S.C. § 1983
against the following seven individuals: (1) Michael
LaDue, a sergeant at Watertown Corrections Facility;
(2) Clint Loren, a corrections officer (apparently at
Watertown Corrections Facility); (3) Randy Hanson, a
corrections officer (apparently at Watertown Correc-
tions Facility); (4) Anne Eckert, the nurse administra-
tor at the Ulster Correctional Facility; (5) Marge

Barnes, the nurse administrator at the Downstate
Correctional Facility; (6) John Doe, a sergeant at the
Watertown Correctional Facility; and (7) John Doe, a
corrections officer at the Watertown Correctional
Facility. (Dkt. No. 50.) All seven of these defendants
are the subject of this Report-Recommendation.

Defendants LaDue, Loren and Hanson each filed
a motion to dismiss pursuant to FED. R. CIV. P.
12(b)(6), or in the alternative a motion for summary
judgment pursuant to FED. R. CIV. P. 56.
(Dkt.Nos.72-77.) [FN1] Defendants Eckert and Byrnes
each filed their own motion to dismiss pursuant to
FED. R. CIV. P. 12(b)(6).[FN2] (Dkt.Nos.79, 81.) The
two John Doe defendants have not yet been identified
by plaintiff; consequently, they have not been served.
Plaintiff has opposed all motions made by the five
named defendants over whom jurisdiction was ob-
tained.

> FN1. Although defendants' motion is labeled
> as a motion for summary judgment only, it
> clearly contains a request that the complaint
> be dismissed for failure to state a claim pur-
> suant to Rule 12(b)(6). (Dkt. No. 75 at 7-10.)
> Therefore, it shall be construed as such. *See
> infra* page 4.

> FN2. Defendant Byrne's motion relies also
> on Rule 12(b)(3) as a basis for dismissal,
> arguing that the Northern District is not the
> proper venue for an alleged act which oc-
> curred in the Southern District of New York.
> Footnote "11" addresses this issue.

For the reasons that follow, I recommend that the
Court *sua sponte* dismiss with prejudice the claims
against the two John Does. I also recommend that
Defendants LaDue, Loren, and Hanson's motions for
summary judgment be granted in part and denied in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

part. Further, I recommend that Defendants Byrne and Eckert's motions to dismiss be granted. Finally, I recommend that a converted motion to dismiss for Defendants LaDue, Loren, and Hanson be granted.

### BACKGROUND

Generally, plaintiff alleges the following facts in his Amended Complaint. Between August 31, 1998, and September 1, 1998, he was transported by bus from Riverview Correctional Facility to Elmira Correctional Facility. (Dkt. No. 50, ¶ 1.) His transfer route made a number of stops at various Correctional Facilities ("C.F."), on the way to Elmira C.F. (*Id.* at ¶ 2.) Defendants LaDue, Loren, and Hanson accompanied plaintiff from Watertown C.F., the second stop on the transfer, to Oneida C.F., the third stop. (*Id.* at ¶¶ 2, 4.) Plaintiff alleges that, during this particular leg of the transfer, Defendants LaDue, Loren, and Hansen handcuffed him too tightly, causing swelling, abrasions, and bleeding. (*Id.* at ¶¶ 2-3.) Plaintiff alleges that he requested that the handcuff tension be loosened to ease the pain during the Watertown C.F. to Oneida C.F. leg of the transfer. (Dkt. No. 50, ¶ 3.) He alleges that Defendants LaDue, Loren and Hanson refused his requests during the trip and while at Oneida C.F. (*Id.* at ¶¶ 3-4.) [FN3] Plaintiff further alleges that during stopovers at Ulster C.F., where Defendant Eckert was the nurse administrator, and Downstate C.F., where Defendant Byrnes was the nurse administrator, his requests for medical care were denied. (Dkt. No. 50 at ¶¶ 14, 16 .) [FN4]

> FN3. Defendants deny that plaintiff requested loosening. (Dkt. No. 77, Aff.¶ 9, Exs.1-2.)

> FN4. Paragraph 14 of plaintiff's Amended Complaint alleges that, "[h]aving had the handcuffs removed by the unknown officer referred to in paragraph 8 above, he was denied his request for medical attention by Sargent [sic] LaDue and or all Defendants." (Dkt. No. 50, ¶ 14.) However, paragraph eight contains no such allegation of removal of handcuffs or denial of medical attention; it is merely a statement that the plaintiff suffered damages. (*Id.* at ¶ 8.) I have construed plaintiff to mean paragraph six where it is alleged that the handcuffs were removed. (*Id.* at ¶ 6.)

**\*2** Plaintiff alleges the following causes of action: (1) a negligence cause of action against Defendants LaDue, Loren, and Hanson for handcuffing his wrists too tightly, causing injury (Dkt. No. 50); (2) two negligence causes of action against the same three defendants for their alleged refusal to ease the handcuff tension (*id.* at ¶¶ 3, 10); and (3) an Eighth Amendment cause of action against all defendants for their refusal to provide him with prompt medical care for his injuries (*id.* at ¶ 14). Plaintiff seeks monetary relief in the form of compensatory and punitive damages against Defendants LaDue, Loren, and Hanson. (Dkt. No. 50, *ad damnum* clause.) Plaintiff has failed to request any specific relief from the other four defendants.

On August 25, 2003, all five defendants over whom plaintiff was able to obtain jurisdiction filed various motions for summary judgment or dismissal. Defendants Byrnes and Eckert's motion to dismiss assert that plaintiff fails to state a cause of action. Defendants LaDue, Loren, and Hanson's summary judgment motion argues that (1) plaintiff failed to exhaust the required administrative remedies, (2) the Eleventh Amendment bars suits against state actors while acting in their official capacities, and (3) plaintiff failed to state a cause of action in his amended complaint. (Dkt. No. 75, at 4, 6, 7.)

Defendants' third argument is better characterized and treated as two separate arguments. (Dkt. No. 75 at 7-10.) First, defendants argue that summary judgment is appropriate for the Eighth Amendment medical indifference claim, because there is no genuine question of material fact regarding the alleged medical indifference. (*Id.*) Second, defendants argue that the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

negligence claims should be dismissed, since it is not a claim for which relief may be granted. Because judgment, summary or otherwise, cannot be rendered where no claim has been stated, the negligence claims' argument is more properly a motion to dismiss, and shall be construed as such. (*Id.*)

After denying plaintiff's counsel's motion to withdraw on May 5, 2004, I ordered counsel to respond to defendants' motions by June 18, 2004. (Dkt. No. 94.) Plaintiff's attorney received an extension and order to respond to the motions by August 2, 2004. (Dkt. No. 97.) On August 20, 2004, after having failed to respond as ordered, plaintiff's attorney received another extension ordering a response by September 16, 2004. (Dkt. No. 98.) Plaintiff's attorney finally complied with the court's order and responded to the motions on September 21, 2004. (Dkt.Nos.99-101.) Plaintiff's attorney failed, however, to comply with Local Rule 7.1(a)(3) and did not submit a response to defendants' Statement of Material Facts. Further, plaintiff's counsel did not submit a signed, notarized affidavit from plaintiff. Plaintiff's attorney submitted an attorney's affirmation that the alleged facts set forth in plaintiff's unsigned affidavit were true in so far as they reflected the information contained in the attorney's file. (Dkt. No. 101.)

## DISCUSSION

### I. FAILURE TO PROSECUTE WITH RESPECT TO THE JOHN DOE DEFENDANTS

#### A. Legal Standard

**\*3** Rule 41(b) of the Federal Rules of Civil Procedure provides that a defendant may move for dismissal of an action for a plaintiff's failure to prosecute or comply with a court order. FED. R. CIV. P. 41(b); *see also* N.D.N.Y. L.R. 41.2(a). However, a court does not have to wait for defendants' motion, but instead may act *sua sponte. Link v. Wabash R.R. Co.,* 370 U.S. 626, 629 (1967); N.D.N.Y. L.R. 41.2(a). A dismissal

is "justified for [plaintiff's] failure to prosecute at all." *Chira v. Lockheed,* 634 F.2d 664, 667 (2d Cir.1980). "This [C]ourt is vested with broad discretion in determining whether to dismiss an action ... for failure to prosecute." *S.E.C. v. Everest Mgmt. Corp.,* 466 F.Supp. 167, 171 (S.D.N.Y.1979); *Ali v. A & G Co.,* 542 F.2d 595, 596 (2d Cir.1976); *Joseph Muller Corp. Zurich v. Societe Anonyme De Gerance Et D'Armement,* 508 F.2d 814, 815 (2d Cir.1974).

#### B. The John Doe Defendants

Plaintiff originally filed his verified *pro se* complaint on November 30, 1998. (Dkt. No. 1.) On August 1, 2002, plaintiff's attorney filed an amended unverified complaint including the unidentified John Doe defendants. (Dkt. No. 50.) On March 31, 2004, I ordered plaintiff to "take reasonable and expeditious steps to ascertain [the identity of the John Doe defendants] and then request the Court's permission to file a motion to amend seeking leave of the Court to bring the named individuals into this action." (Dkt. No. 93 at 3.) It has been six years since the filing of the original complaint (Dkt. No. 1 [filed on 03/05/99] ) and plaintiff has made no progress or apparent efforts in identifying the John Does. Further, plaintiff's counsel has a history of non-prosecution of this case even with regard to the known defendants, as evidenced by his numerous extension requests. (Dkt.Nos.30, 41, 64, 97.) [FN5] Therefore, I recommend that the court *sua sponte* dismiss with prejudice the claims against the two John Doe defendants.

> FN5. Additionally, plaintiff's response to the motions currently under consideration was late, it cited New York State authority which is not binding on this Court, and it lacked a response to defendants' Statement of Material Facts, which is required under Local Rule 7.1.(a). Further, plaintiff's counsel seems to have spent greater effort in his failed attempt to secure his own removal from the case rather than he has in prosecuting it.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

II. MOTION TO DISMISS OR IN THE ALTER-
NATIVE A MOTION FOR SUMMARY JUDG-
MENT BY DEFENDANTS LADUE, LOREN, AND
HANSON

A. Legal Standard

In lieu of an answer, Defendants LaDue, Loren,
and Hanson have submitted a motion to dismiss or in
the alternative a motion for summary judgment. The
standard for a motion to dismiss is described below in
Part III of this Report-Recommendation. A motion for
summary judgment may be granted when the moving
party carries its burden of showing the absence of a
genuine issue of material fact. FED. R. CIV. P. 56;
*Thompson v. Gijvoje,* 896 F.2d 716, 720 (2d Cir.1990)
(citations omitted). "Ambiguities or inferences to be
drawn from the facts must be viewed in the light most
favorable to the party opposing the summary judg-
ment motion." *Id.* However, when the moving party
has met its burden, the non-moving party must do
more than "simply show that there is some meta-
physical doubt as to the material facts." *Matsushita
Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 477 U.S.
574, 585-86 (1986); *see also Anderson v. Liberty
Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "A dispute
regarding a material fact is genuine if the evidence is
such that a reasonable jury could return a verdict for
the nonmoving party." *Ross v. McGinnis,* 00 Civ.
0275E, 2004 WL 1125177, *8 (W.D.N.Y.2004) (in-
ternal quotations omitted). The nonmoving party must
show that there are specific factual issues that can only
be resolved by trial. *Colon v. Coughlin,* 58 F.3d 865,
872 (2d Cir.1995). A fact is material only if it would
have some effect on the outcome of the suit. *Ander-
son v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

**\*4** Defendants argue that the Eleventh Amend-
ment bars claims against state actors acting within
their official capacities; that plaintiff's failure to ex-
haust his administrative remedies requires judgment in
favor of defendants; and that the medical indifference
claim cannot survive since there is no genuine issue of
material fact.

B. The Eleventh Amendment

Defendants LaDue, Loren, and Hanson have
moved for summary judgment on the basis that the
Eleventh Amendment bars suits against state actors
acting in their official capacities. *See* U.S. Const.
amend. XI; *Will v. Michigan Dep't of State Police,* 491
U.S. 58, 71 (1989); *Severino v. Negron,* 996 F.2d
1439, 1441 (2d Cir.1993); *Farid v. Smith,* 850 F.2d
917, 921 (2d Cir.1988). "The immunity to which a
state's official may be entitled in a § 1983 action de-
pends initially on the capacity in which he is sued. To
the extent that a state official is sued for damages in
his official capacity, such a suit is deemed to be a suit
against the state, and the official is entitled to invoke
the Eleventh Amendment immunity belonging to the
state." *Ying Jing Gan v. City of New York,* 996 F.2d
522, at 529 (2d Cir.1993); *see, e.g., Kentucky v.
Graham,* 473 U.S. 159, 166-67 (1985). "As to a claim
brought against him in his individual capacity, how-
ever, the state official has no Eleventh Amendment
immunity." *Ying Jing Gan,* 996 F.2d at 529; *see also
Scheuer v. Rhodes,* 416 U.S. 232, 238 (1974) (Elev-
enth Amendment does not bar award of damages to be
paid not from the state treasury but from the official's
personal funds). I recommend that defendants' motion
for summary judgment be granted as to Defendants
LaDue, Loren, and Hanson in their official capacities.

C. Exhaustion of Administrative Remedies

Defendants LaDue, Loren, and Hansen request
relief in the form of summary judgment for plaintiff's
failure to exhaust the available administrative reme-
dies. (Dkt. No. 75.) The Second Circuit has recently
held that a three-part inquiry is appropriate where a
defendant contends that a prisoner has failed to ex-
haust his available administrative remedies, as re-
quired by the Prison Litigation Reform Act ("PLRA").
*See Hemphill v. State of New York,* 380 F.3d 680, 686,
691 (2d Cir.2004).

First, "the court must ask whether [the] adminis-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

trative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

**\*5** Here, plaintiff's Memorandum of Law asserts that he exhausted all remedies that were in fact available to him. (Dkt. No. 101 at 5.) The history of plaintiff's grievance is as follows.

On September 14, 1998, plaintiff filed an initial grievance, EL 19-034-98, at Elmira C.F. (Dkt. No. 76, Ex. D, at 3-4.) On October 1, 1998, IGRC representative John Gold wrote a memorandum to Elmira C.F. Superintendent Bennett informing him that Gold told plaintiff to forward his concerns to the Superintendent, since the subject of the grievance did not occur at Elmira C.F. and the IGRC lacked the ability to investigate the grievance. (*Id.* at 10.) By an undated form, plaintiff requested that his grievance be passed through to the Superintendent. (*Id.* at 11.) In a memorandum dated October 9, 1998, Elmira C.F. First Deputy Superintendent Dana M. Smith responded to plaintiff's undated request by reporting that his grievance would be closed and dismissed. (*Id.* at 13.) Plaintiff was also directed in that memorandum to file a grievance with the Watertown C.F. and/or the Downstate C.F.-depending on whose staff allegedly injured plaintiff. (*Id.*) On October 12, 1998, plaintiff

wrote a letter requesting a copy of his grievance. (*Id.* at 12.) On October 18, 1998, he received a copy of the grievance and response from IGRC stating that plaintiff's grievance is "[g]ranted to the extent that Grievant is directed to forward matter to relevant Watertown facility." (*Id.* at 2.)

Plaintiff filed suit on November 30, 1998, before his conditional release on December 11, 1998. The record reflects that October 19, 1998, was the last date of any activity regarding his grievance. The defendants argue that a grievant may appeal a superintendent's determination to the CORC. (Dkt. No. 75 at 5.) The defendants further argue that-because plaintiff did not appeal the Elmira C.F.'s IGRC decision to CORC-plaintiff failed to exhaust his administrative remedies. (Dkt. No. 75 at 6.)

In response, counsel for plaintiff argues, "In this case, plaintiff has exhausted all his administrative remedies but was released before sending it [sic] to the central office. It took him over three months sending the grievances back and forth to Watertown and Elmira. He was released before a CORC decision was made on his behalf therefore, [sic] his only recourse is to file suit in federal court." (Dkt. No. 101 at 6.)

There exists a serious question as to whether administrative remedies (whether by appealing to CORC or filing his grievance at Watertown C.F.) were "available" to plaintiff prior to his conditional release to parole. As stated above, administrative remedies are exhausted when a prisoner-plaintiff pursues all remedies *available* to him at the time. *See, e.g., Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004) (failure by prison to implement prior grievance rulings in plaintiff's favor rendered plaintiff's administrative remedies "unavailable"). For example, "a remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under [the Prison Litigation Reform Act]." *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) (cited with approval in *Abney,* 380 F.3d at 669).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

**\*6** Prison officials may "prevent" a prisoner from utilizing a remedy by incorrectly representing to the prisoner that his complaint is not grievable, or that it is grievable only through another avenue. *See Brown v. Croak,* 312 F.3d 109, 112-113 (3d Cir.2002) (assuming that plaintiff was incorrectly instructed by prison officials that he could not file a grievance, "the formal grievance proceeding required by [the prison grievance system] was never 'available' to [plaintiff] within the meaning of [the PLRA]") (cited in *Giano v. Goord,* 380 F.3d 670, 677 n.6 [2d Cir.2004] ); *O'Connor v. Featherston,* 01-CV-3251, 2002 WL 818085, \*2 (S.D.N.Y. Apr. 29, 2002) ("In light of [apparent former-defendant] McGinnis's suggestion that O'Connor follow-up his claims through the Inspector General's Office, rather than pointing him to the grievance procedures, the [other] defendants cannot be heard to argue that O'Connor's claims are nevertheless dismissed for failure to exhaust the grievance procedures.").

Such prison officials need not be defendants. *See Brown,* 312 F.3d at 112-113 (prison officials were not defendants but "officials in the security department of the prison"); *Hemphill,* 380 F.3d at 686 (citation omitted) (basing first prong of three-prong exhaustion analysis on whether "administrative remedies were in fact 'available' to the prisoner,' not on preclusive effect of defendants' conduct, which is basis of second prong).

Probably because the Second Circuit's five exhaustion cases are so recent (filed on August 18, 2004), there does not yet appear to be any cases from within the Second Circuit standing for the (rather basic) proposition that misleading representations by even non-parties could render a prisoner's administrative remedies "unavailable." However, cases from before August of 2004-which fit such representations into the most relevant exhaustion exception then available (estoppel)-recognize that representations by non-defendants could negatively affect defendants.[FN6]

At the very least, these cases suggest that a defendant may be estopped by a representation of someone other than himself.[FN7] The rest of the cases I have found are unclear about whether the representations came from non-defendants or defendants.[FN8]

FN6. *See Heath v. Saddlemire,* 2002 WL 31242204, \*4-5 (N.D.N.Y. Oct. 7, 2002) (denying motion for summary judgment in part because plaintiff was "excused" from failing to exhaust where the "State Commission of Correction"-which was not a named defendant-incorrectly advised plaintiff by letter that he was following the "correct procedure" for pursuing his grievance); *Davis v. Frazier,* 98 Civ. 2658, 1999 WL 395414, \*4 (S.D.N.Y. June 15, 1999) (denying motion for summary judgment in part because non-defendant prison officials at an orientation session upon admission routinely informed plaintiff that "a grievance cannot be brought against Officers or Staff").

FN7. *See O'Connor,* 2002 WL 818085 at \*2.

FN8. *See Darling v. Chautauqua County Jail,* 00-CV-0187, 2004 WL 1906870, \*1-2 (W.D.N.Y. Aug. 25, 2004) (denying motion for summary judgment in part because question of fact existed about whether "prison officials" had incorrectly informed plaintiff that certain of his claims were not grievable); *Kendall v. Kittles,* 00-CV-628, 2004 WL 1752818, \*4 (S.D.N.Y. Aug. 4, 2004) (denying motion for summary judgment in part because question of fact existed about whether various "corrections officials" had incorrectly informed plaintiff that his complaints were not grievable); *Feliciano v. Goord,* 97 Civ. 263, 1998 WL 436358, \*2 (S.D.N.Y. July 27, 1998) (denying motion to dismiss in part because "prison officials," among other things, informed plaintiff that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

his complaint of attacks by another prisoner was not a grievable matter but "a security matter," and they never informed plaintiff of when an alleged investigation of the matter was over).

Here, it appears that the Elmira C.F. I.G.R.C. and Superintendent misled plaintiff into believing that he could not pursue his grievance at Elmira C.F. New York State regulations clearly provide that "[a grievance] complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." 7 NYCRR § 701.7(a)(1). *See, e.g., Soto v. Belcher,* 339 F.Supp.2d 592, 595 (S.D.N.Y.2004) ("[T]he IGP would have been available [regarding plaintiff's claim pertaining to his former facility] immediately upon [plaintiff's] arrival at Fishkill [Correctional Facility]."). Watertown C.F. could easily have cited 7 NYCRR 701.7(a)(1) in refusing to entertain plaintiff's grievance, leaving plaintiff without a remedy. Apparently realizing this fact, defendants argue-not that plaintiff should have re-filed his grievance at Watertown C.F. (which he apparently never did)-but that he never appealed the Elmira C.F.'s IGRC decision to CORC.

**\*7** There are two problems with this argument. First, the Elmira C.F.'s IGRC decision indicated that plaintiff's grievance was "granted." As a result, plaintiff could have reasonably believed there was nothing to appeal. Second, it would not make sense to require a grievant who has reasonably relied to his detriment on false advice regarding his available administrative remedies to complain to CORC about that advice, since such a complaint would presume that the grievant knew the advice was false-in which case he would not have been relying to his detriment on that advice. Stated another way, if false advice renders a remedy unavailable, that remedy need not be exhausted at all (i.e., by appeal).

As a result, summary judgment or dismissal for failure to exhaust is inappropriate. Therefore, I rec-

ommend that the motions by Defendants LaDue, Loren, and Hansen for summary judgment on the basis of failure to exhaust be denied.

D. Eighth Amendment Claim

Plaintiff's Eighth Amendment claim alleges a denial of necessary medical care. To elevate the deprivation of medical care to the level of a constitutional violation, plaintiff must show deliberate indifference by each defendant to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). To establish a case of such indifference, plaintiff must set forth enough facts to satisfy a two-prong test. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). The Supreme Court established this well-settled objective-subjective test in *Farmer v. Brennan,* 511 U.S. 825 (1994).

Under the first prong, the deprivation, when objectively viewed, must be "sufficiently serious." *Farmer,* 511 U.S. at 834. A sufficiently serious deprivation is the result of a "denial of the minimal civilized measures of life's necessities." *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). "A plaintiff must allege that his access to physicians for *necessary* medical care was unreasonably delayed or denied, or that prescribed medical treatment was not administered." *Murphy v. Grabo,* No. 94-1684, 1998 WL 166840, \*4 (N.D.N.Y. Aug. 3, 1995) (citations omitted) (emphasis added). Incarceration is not an entitlement to more than the minimal civilized standards of life's necessities. "[T]he Government need not promise or guarantee equal resources so long as it appears reasonably probable ... that there will be adequate resources." *U .S. v. King,* 442 F.Supp. 1244, 1248-49 (S.D.N.Y.1978). "[T]hough it is plain that an inmate deserves *adequate* medical care, he cannot insist that his institutional host provide him with the most sophisticated care money can buy." *U.S. v. DeCologero,* 821 F.2d 39, 42 (1st Cir.1989).

The second prong, which is subjective, requires the prison official to have a sufficiently culpable state

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

of mind, defined as "deliberate indifference." *Farmer,* 511 U.S. at 834. "It is ... fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. Such recklessness encompasses a state of mind where the defendant knew and disregarded an excessive risk to the plaintiff's health or safety. *Id.* at 837.

**\*8** Here, plaintiff described his injuries in the amended complaint as bleeding and swollen hands, and the inability to eat lunch because his hands hurt. (Dkt. No. 50, ¶ 5.) The record reflects that plaintiff only needed bandages and ointment to treat his injuries. (Dkt. No. 76, Ex. D.) Moreover, the record reflects that he required no follow-up care for his injuries. (*Id.*) From the evidence available on the record, plaintiff's injuries appear to have been superficial in nature.[FN9]

> FN9. There are allegations within the record that photographs of plaintiff's injuries were taken upon his arrival at Elmira C.F. (Dkt. No. 50, ¶ 18.) However, plaintiff's attorney failed to submit such photographs, and without them the Court may only consider the verbal descriptions and medical documents contained within the record.

*Even if* plaintiff's injuries were serious, he must then have been deprived by defendants of the care *necessary* to treat the serious injury. According to his amended complaint, he first requested medical care at Ulster C.F.. (Dkt. No. 50, at ¶¶ 3, 4, 6, 14.) Defendants' uncontroverted Statement of Material Fact attests that Defendants LaDue, Loren, and Hanson accompanied plaintiff only on the leg of the trip from Watertown C.F. directly to Oneida C.F., and were not present during his requests for medical care, an assertion amply supported by the record. (*Compare* Dkt. No. 74 *with* Dkt. No. 77, Exs. 1, 2.)[FN10] Ulster C.F. is the next leg of the transfer. It obviously would have been impossible for Defendants LaDue, Loren, and

Hanson to deny plaintiff medical care at Ulster C.F. if they were not present during that alleged deprivation. While there are additional allegations throughout the amended complaint of a denial of medical care from the Ulster C.F. leg of his transportation to the final destination of Elmira C.F., plaintiff never indicates who denied him this care. (Dkt. No. 50 at ¶¶ 15-19.)

> FN10. *See* Local Rule 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* ); *Mehlenbacher v. Slafrad, et al.,* No. 9:99-CV-2127, 2003 U.S. Dist. LEXIS 9248, \*4 (N.D.N.Y. June 4, 2003); *Adirondack Cycle & Marine, Inc. v. American Honda Motor Co., Inc.,* No. 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, \*2-3 (N.D.N.Y. Mar. 18, 2002); *Allen,* 140 F.Supp.2d at 232.

Simply stated, Defendants LaDue, Loren, and Hanson did not deny the claimed medical care since they were not present when it was allegedly requested. In addition, plaintiff's injuries based on the record were superficial in nature. Plaintiff is unable to meet either prong of the conjunctive *Farmer* test. There remains no question of material fact and I, therefore, recommend granting the motion of Defendants LaDue, Loren, and Hansen for summary judgment with regard to the Eighth Amendment claim.

### III. MOTIONS TO DISMISS

### A. Legal Standard

In ruling on a motion to dismiss, the court must accept the material facts as alleged in plaintiff's complaint as true and must draw all reasonable inferences in favor of the non-movant. *Patel v.. Searles,* 305 F.3d 130, 134-35 (2d. Cir.2002) (citing *D'Alessio v. N.Y. Stock Exch., Inc.,* 258 F.3d 93, 99 [2d Cir.2001] ). A court may properly dismiss a complaint if "it appears

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). A complaint may be dismissed when it constitutes no more than general and conclusory allegations that defendants denied plaintiff's constitutional rights. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987). Rule 8(a)'s standard of a plain and simple statement does require some basics: who violated the plaintiff's rights, when, by what means, and how the violation harmed him. *Phelps v. Kapnolas,* 308 F.3d 180, 187 n.6 (2d. Cir2002).

**B. Defendants Byrnes and Eckert**

**\*9** I recommend that the action against Defendants Byrnes and Eckert be dismissed with prejudice. While this Court must accept the material facts as alleged in plaintiff's complaint as true, a prerequisite to that acceptance is that allegations first must be made against a defendant. Simply listing defendant's name upon the caption and obtaining service of process over her are not enough.

In plaintiff's amended complaint, he fails to allege any material facts regarding Defendants Byrnes and Eckert which can be construed as a cause of action. In paragraph 14, he makes a vague reference to "and or all Defendants," but he fails to plead when and by what means his rights were violated by either Defendant Byrnes or Eckert. (Dkt. No. 50.) This artlessly drafted pleading makes no actual factual allegations upon which the Court may draw any inferences at all, favorable or otherwise, for the non-moving plaintiff. The denial of necessary medical care by all defendants as a violation of the plaintiff's Eighth Amendment rights is conclusory at best.

Plaintiff's abstruse response to defendants' motion fails to assert that he even spoke with or had any other contact with either Defendant Byrnes or Defendant Eckert that resulted in an unwarranted denial of medical care.

Specifically, with regard to Defendant Byrnes, plaintiff implicitly acknowledges that Byrnes lacked any knowledge of plaintiff's medical condition or needs. In the amended complaint, he asserts that "the defendants" refused to notify the correctional staff at Downstate C.F. of his need for medical care. (Dkt. No. 50, ¶ 16.) Byrnes was a member of that uninformed staff. Plaintiff's unsigned, unsworn affidavit alleges that Byrnes "is and was the nurse administrator at Downstate Correctional Facility. When I arrived there I requested medical attention for my injuries and was denied." (Dkt. No. 99, Unsworn Affid. at ¶ 8.) However, plaintiff never alleges, in either his amended complaint or unsworn affidavit, that Byrnes was present, let alone that she actually denied him medical care. Plaintiff argues in his Memorandum of Law that the complaint asserted a cause of action against Byrnes for her supervisory role. There is no such claim plead in the amended complaint. (*Compare* Dkt. No. 99, Mem. of Law at 2 *with* Dkt. No. 50.)

Plaintiff's unsigned, unsworn affidavit alleges that Defendant Eckert "is and was the nurse administrator at Downstate C.F. At Ulster after the handcuffs were removed ... I requested medical attention and was denied. My request for bandages to cover my wounds was also denied." (Dkt. No. 100, Unsworn Affid. at ¶ 7.) Assuming that the allegation of Eckert as a Downstate C.F. employee is a typographical error, plaintiff still fails to assert whom he asked for aid. *See Phelps,* 308 F.3d at 187 n.6. As with Defendant Byrnes, I am unable to tell if Eckert was even present based upon plaintiff's pleading and response to this motion. Again, contrary to plaintiff's Memorandum of Law which asserts a claim based on Eckert's supervisory role of the medical staff, there is no such claim pled in the amended complaint. Like Defendant Byrnes, the amended complaint does not make any allegations against Defendant Eckert, either on an individual basis or on a supervisory basis. (*Compare* Dkt. No. 100, Mem. of Law at 2 *with* Dkt. No. 50.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)
**(Cite as: 2005 WL 928628 (N.D.N.Y.))**

**\*10** Accordingly, I recommend that the Court grant Defendants Byrnes and Eckert's motion to dismiss with prejudice.[FN11]

> **FN11.** Defendant Byrne makes an additional argument for dismissal on the basis of improper venue. FED. R. CIV. P 12(b)(3). However, the case was transferred from the Southern District of New York to this jurisdiction because this is the proper venue for the majority of defendants. Since the conduct of all defendants, except Byrnes, occurred in the Northern District, this is the proper venue for her as well, pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C.A. § 1367(a).

**C. Defendants LaDue, Loren, and Hanson**

Defendants LaDue, Loren, and Hanson have also moved for dismissal arguing that plaintiff has failed to state causes of action against them upon which relief may be granted.

Plaintiff's amended complaint alleges two causes of action based in negligence. (Dkt. No. 50.) Negligence is not a cognizable cause of action in prisoner litigation suits. The Supreme Court has flatly denied that negligence is a basis for a cause of action and recovery in § 1983 cases. *See Daniel v. Williams,* 474 U.S. 327, 328, 330-31 (1986). "Where a government official's act causing injury to his life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required." *Id.* at 333 [emphasis in the original]. Because plaintiff is not entitled to relief for a negligence claim as against state actors under 42 U.S.C. § 1983, both the first and second causes of action cannot not survive a motion to dismiss. I therefore recommend that plaintiff's negligence claims be dismissed with prejudice.

ACCORDINGLY, it is

RECOMMENDED that the Court *sua sponte* DISMISS with prejudice the claims against the two John Doe defendants for failure to prosecute; and it is further

RECOMMENDED that Defendants LaDue, Loren and Hanson's motion for summary judgment granting them immunity under the Eleventh Amendment for actions in their official capacities (Dkt.Nos.72-77) be GRANTED; that their motion for summary judgment and motion to dismiss for failure to exhaust administrative remedies (Dkt.Nos.72-77) be DENIED; that their motion for summary judgment with respect to the medical indifference claim (Dkt.Nos.72-77) be GRANTED; and that their motion to dismiss with respect to plaintiff's negligence claims (Dkt. No. 72-77) be GRANTED; and it is further

RECOMMENDED that Defendants Byrnes and Eckert's motion to dismiss for failure to state a cause of action (Dkt. No. 81 ad 79) be GRANTED with respect to all claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 982 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); FED. R. CIV. P.6(a), 6(e), 72.

N.D.N.Y.,2005.
Jeffers v. Goord
Not Reported in F.Supp.2d, 2005 WL 928628 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2412258 (S.D.N.Y.)
**(Cite as: 2007 WL 2412258 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
John L. LEWIS and Jimmy D. Smith, Plaintiffs,
v.
Raymond CUNNINGHAM, et al., Defendants.

No. 05 Civ. 9243(GBD).
Aug. 23, 2007.

*MEMORANDUM DECISION AND ORDER*
GEORGE B. DANIELS, District Judge.

**\*1** Pro se plaintiffs John L. Lewis and Jimmy D. Smith, prisoners incarcerated at Woodbourne Correctional Facility,[FN1] brought this civil rights action, pursuant to 42 U.S.C. § 1983, against defendants Raymond Cunningham, Steven Lowry, Peter Chiavaro, Dr. Frank Lancelotti, Dr. Mervat R. Makram, Denise Boyd, George Pataki, Glen Goord, Dr. Lester Wright, and the New York State Department of Correctional Services ("DOCS") (collectively "Defendants"). Lewis also alleges that he was retaliated against for filing grievances and otherwise complaining about prison conditions. Finally, plaintiffs seek to certify a class, pursuant to Fed.R.Civ.P. 23, for all similarly situated prisoners.

> FN1. After this lawsuit was filed and while the motion to dismiss was pending, plaintiff Lewis was released from custody.

Defendants moved to dismiss for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). The motion was referred by this Court to Magistrate Judge Ronald L. Ellis for a Report and Recommendation ("Report"). Magistrate Judge Ellis recommended that Defendants'

motion to dismiss be granted as to all claims except for Lewis's deliberate indifference claims against defendants Cunningham, Lowry, Dr. Wright, and Chiavaro, in their individual capacities. Magistrate Judge Ellis also recommended that class certification be denied. No objections were filed and the time to do so has passed.

The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report. 28 U.S.C. § 636(b)(1). When there are objections to the Report, the Court must make a *de novo* determination of those portions of the Report to which objections are made. *Id.; Rivera v. Barnhart,* 432 F.Supp.2d 271, 273 (S.D.N.Y.2006). When no objections to a Report are made, the Court may adopt the Report if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato,* 388 F.Supp.2d 250, 253 (S.D.N.Y.2005) (citation omitted). The Court has reviewed the Report and finds that the Magistrate Judge's findings are not clearly erroneous. Therefore, the Report is adopted in full.

John L. Lewis is a now former inmate at Woodbourne who suffers from-and, while he was incarcerated suffered from-systolic heart failure. Jimmy D. Smith was and remains an inmate at Woodbourne, and he also suffers from systolic heart failure. Both plaintiffs were prescribed various medications, moderate exercise, and ordered to avoid heat, humidity, mental stress, and overexertion by prison physicians. Plaintiffs were also provided certain housing flats permits.[FN2] Plaintiffs now allege that prison officials failed to abide by the doctors' orders and were deliberately indifferent to their medical needs.

> FN2. A "flats" permit is a permit intended to secure for an inmate a housing assignment with minimal need for stair climbing. Second Amended Complaint ¶¶ 47-48.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2412258 (S.D.N.Y.)
**(Cite as: 2007 WL 2412258 (S.D.N.Y.))**

To the extent plaintiffs have sued Defendants in their official capacities, those claims are barred by the Eleventh Amendment and must be dismissed. *See, e.g., Benjamin v. Schwartz,* 299 F.Supp.2d 196, 199 (S.D.N.Y.2004) (stating that the Eleventh Amendment bars recovery for an inmate's deliberate indifference claim brought against prison officials acting in their official capacity); U.S. Const. amend. XI. In addition, because Lewis has been released from custody, his claims for injunctive relief are moot.

**\*2** Next, with respect to Smith's claims, Magistrate Judge Ellis recommended that all his claims be dismissed because Smith failed to exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Porter v. Nussle,* 534 U.S. 516, 525 (2002). This finding is not clearly erroneous. DOCS has in place a three-step review process, known as the Inmate Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701. Smith neither filed a grievance in accordance with DOCS's grievance procedures nor pursued other methods of complaint about his treatment by prison officials. Therefore, Smith's claims are dismissed without prejudice to re-file a complaint after complying with the appropriate administrative procedures. *See Neal v. Goord,* 267 F.3d 116, 123 (2d Cir.2001).

Lewis, on the other hand, properly exhausted his administrative remedies. The allegations in the complaint indicate that Lewis's grievance complaint sufficiently raised many of the same concerns now at issue in this lawsuit. In addition, Magistrate Judge Ellis found that Lewis's failure to exhaust his deliberate indifference claim based on the medical trip and transfer procedures was justifiably excused. This finding is not clearly erroneous. Lewis alleges that both Cunningham and a supervisor at IGRC told him

that filing a grievance was not the proper method to address Lewis's concerns. Rather, Lewis alleges, he was told to address his complaints in a letter to Dr. Wright, the Chief Medical Officer at the Department of Health's Office of Professional Medical Conduct. Lewis alleges that he did just that. These allegations, taken as true for the purpose of this motion, constitute special circumstances justifying Lewis's failure to exhaust his claim of deliberate indifference. *See Ciano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004) (" 'Special circumstances' may exist that amount to a 'justification' for not complying with administrative procedural requirements").

The Report also found that Lewis adequately stated a deliberate indifference claim against defendants Dr. Lancelottti, Dr. Makram, Nurse Boyd, Cunningham, Lowry, Chiavaro and Dr. Wright, but not as to defendants Pataki and Goord. To state a claim for deliberate indifference to serious medical needs, a plaintiff must sufficiently allege both (a) that deprivation was "sufficiently serious," and (b) that the defendant acted with a "sufficiently culpable state of mind." *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). "A defendant official acts with a culpable state of mind if the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) (citations omitted).

**\*3** Here, Lewis alleges that defendants denied and delayed appropriate housing placement in violation of his flats permits, subjected him to medical trips and transfers that induced a high amount of physical and mental stress, and denied or delayed permits that would have allowed him to avoid the heat. According to Lewis, Defendants' conduct caused painful physical symptoms, such as swelling of the hands and feet to the point where he could not use them, and physical incapacitation from illness. Thus, Magistrate Judge

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2412258 (S.D.N.Y.)
**(Cite as: 2007 WL 2412258 (S.D.N.Y.))**

Ellis's finding that the depravation was sufficiently serious is not clearly erroneous. In addition, Lewis alleges that he verbally told Dr. Lancellotti, Dr. Makram, and Nurse Boyd about these conditions and the effect it had on his health, but that all three failed to take adequate action with prison officials. Lewis also alleges that defendant Cunningham, Lowry, and Chiavaro were each personally involved in the complaints filed by Lewis and aware of Lewis's inadequate housing situation. Finally, Lewis alleges that Dr. Wright, with whom Lewis first addressed his initial deliberate indifference claim, disregarded Lewis's medical condition by failing to secure proper facilities for Lewis. With respect to defendants Pataki and Goord, however, Lewis does not allege that they personally disregarded any risk to his safety or health. Accordingly, Magistrate Ellis's finding that Lewis adequately stated a deliberate indifference claims against all defendants except Pataki and Goord is not clearly erroneous.

All Defendants assert a qualified immunity defense. A government actor performing a discretionary task is entitled to qualified immunity if either (a) his or her conduct did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his or her conduct did not violate such law. *Almonte v. City of Long Beach,* 478 F.3d 100, 108-9 (2d Cir.2007).

First there are allegations supporting a claim of deliberate indifference to a serious medical need. *Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994). In addition, Magistrate Judge Ellis found that it was not "objectively reasonable" for defendants Cunningham, Chiavaro, Lowry, and Dr. Wright to believe that their alleged conduct was lawful. That finding is not clearly erroneous. Thus, these defendants are not entitled to qualified immunity at this stage of the proceedings. In contrast, Lewis acknowledges that neither defendants Dr. Lancellotti, Dr. Makram, and Boyd lacked the power to enforce the permits issued to Lewis. Therefore, as Magistrate Judge Ellis found, it

was reasonable for these defendants to think that they were not taking any action which violated Lewis's Eighth Amendment rights and are entitled to qualified immunity.

The Report also recommended that Lewis's retaliation claims be dismissed. To establish a claim of retaliation, the plaintiff must show that he engaged in speech or conduct that is protected, that the defendant took adverse action against the plaintiff, and that there is a causal connection between the protected speech or conduct and the adverse action. *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003). An adverse action is "retaliatory conduct that would deter a similarly situated individual or ordinary firmness from exercising his or her constitutional rights." *Id.* at 353 (quotations omitted). Here, Lewis fails to allege that any particular defendant was personally involved in any retaliatory actions against him. Lewis's claims of allegedly adverse actions, many of which do not appear to be exhausted, involve other Woodbourne staff who are not defendants in the instant case. Therefore, Magistrate Judge Ellis correctly found that the retaliation claims should be dismissed.

**\*4** Finally, Magistrate Ellis recommended that Plaintiffs's motion to certify a class be denied. Because Smith's claims have been dismissed, Lewis remains the sole plaintiff in this case. But Lewis has been released from custody, and he thus cannot fairly and adequately represent a class of currently incarcerated prisoners with chronic heart conditions, even if the record were to indicate that such a class existed. Accordingly, Lewis does not meet the requirements of Fed.R.Civ.P. 23(a).

The Court adopts Magistrate Judge Ellis's Report and Recommendation.

Defendants' motion to dismiss is GRANTED as to (1) all claims for damages against defendants in their official capacity; (2) all claims by plaintiff Smith;

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2412258 (S.D.N.Y.)
**(Cite as: 2007 WL 2412258 (S.D.N.Y.))**

(3) all retaliation claims (4) Lewis's claims for in-
junctive relief; and (5) all claims for monetary relief
against defendants Pataki, Goord, Dr. Lancellotti, Dr.
Makram, and Nurse Boyd.

Defendants' motion to dismiss is DENIED as to
Lewis' deliberate indifference claim against Cun-
ningham, Lowry, Wright, and Chiavaro, in their indi-
vidual capacity. Plaintiff's motion for class certifica-
tion is DENIED.

SO ORDERED.

S.D.N.Y.,2007.
Lewis v. Cunningham
Not Reported in F.Supp.2d, 2007 WL 2412258
(S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Christopher McCLOUD, Plaintiff,
v.
C. TUREGLIO, Correctional Officer, Greene Correctional Facility, Defendant.

No. 9:07-CV-0650.
April 15, 2008.

Christopher McCloud, Wallkill, NY, Pro Se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Charles J. Quackenbush, Esq. Assistant Attorney General, of Counsel, New York, NY, for Defendant.

*ORDER*

NORMAN A. MORDUE, Chief Judge.

*1 The above matter comes to me following a Report-Recommendation by Magistrate Judge George H. Lowe, duly filed on the 17th day of March 2008. Following ten days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's Report-Recommendation, and no objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby adopted in its entirety.

2. The Defendant's motion to dismiss for failure to state a claim (Dkt. No. 11) [FN1] is granted.

> FN1. The Magistrate Judge's Report-Recommendation inadvertently refers to Defendant's motion to dismiss as Dkt. No. 42 on page 35. The correct Dkt. No. is 11 as referred to throughout the Report-Recommendation.

3. The Court certifies that any appeal of this order would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

4. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

IT IS SO ORDERED.

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. In his Complaint, Christopher McCloud ("Plaintiff") alleges that, on May 31, 2007, at Green Correctional Facility ("Green C.F."), Correctional Officer C. Turriglio ("Defendant") physically assaulted and threatened Plaintiff in violation of his constitutional rights. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) Currently before the Court is Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.) For the reasons

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

set forth below, I recommend that the Court grant Defendants' motion to dismiss.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

On June 20, 2007, Plaintiff filed his Complaint in this action. (Dkt. No. 1 [Plf.'s Compl.].) The factual allegations giving rise to Plaintiff's (unspecified) constitutional claim against Defendant Turriglio are as follows:

On May 31, [20]07 I came to my program late[.] [My program] ... is Mess [H]all [during the] P.M. and late eve[ning shift]. [F]or coming in late I was placed in the pot room[.] [M]y regular job title is 2 ser[v]er on the C-side line[.][W]hile I was in the pot room I was making noise and Officer Tureglio [sic] came into the pot room and started banging pots and curs[ ]ing at me [,] telling me to shut up[.] [A]fter that he told me to stop eye balling him or he'll pull my eyes from my skull[.][A]t 2:30 P.M. [it] is count time and all inmates must report to the din[ ]ing are[a] for count[.] [A]fter count he called me to his office and took me to the back of the Mess [H]all out of plain view and placed me o[n] the wall and started to slap me [o]n the back of the head[.] [A]fter his as[sa]ult he placed his pocket knife to his face and told me he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing around].

**\*2** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) As a result of this alleged misconduct, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no [ ] retaliation from coworkers or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality"; and (3) "$1,000,000 for mental anguish and dis-

tress." (*Id.* at ¶¶ 7, 9.)

It is important to note that, in his form Complaint, Plaintiff provided some information regarding his efforts to exhaust his available administrative remedies before filing this action. Specifically, in response to a question reading "Is there a prisoner grievance procedure at this facility?" Plaintiff checked the box reading "Yes." (*Id.* at ¶ 4[a].) In response to a question reading "If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?" Plaintiff checked the box reading "No." (*Id.* at ¶ 4[b].) In response to a question reading "If your answer to 4(b) is NO: Why did you choose to not present the facts relating to your complaint in the prison's grievance program?" Plaintiff stated, "Because I fear retaliation from officers and the officer [I]'m fil[ ]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent." (*Id.*) Finally, in elaboration on this last assertion, Plaintiff stated later on in the Complaint that "[t]he officer [I]'m fil[ ]ing [this action] against[ ] uncle [sic] is a Superintendent here at Green Corr." (*Id.* at ¶ 4[c].)

### B. Plaintiff's Abandoned Efforts to File an Amended Complaint and a Supplemental Complaint

On June 22, 2007, Plaintiff filed a letter to the Clerk of the Court. (Dkt. No. 6.) The stated purpose of the letter was to serve "as evidence in [Plaintiff's] case." (*Id.*) The letter requested that his Complaint be amended to reflect that the correct spelling of Defendant's name was "C. Turriglio," not "Tureglio." (*Id.*) (The Court subsequently directed that the docket be so amended.) In addition, the letter requested that a claim be "add [ed] to [Plaintiff's] complaint...." (*Id.*) The factual allegation giving rise to this claim was as follows:

On June 18, 2007 Officer Turriglio made intimidating comments [to] me [and] taunt[ed] me[,] saying [']McCloud knows I doesn't [sic] play[.] Let

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

them know ['.'] [By 'them' he was] talking about new Mess [H]all workers. I assumed he was back from vacation time or answering a grievance because he [was] brag[g]in' about laying on the beach when some inmates here at the facility filed a grievance against him.

(*Id.*)

On July 5, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to amend his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (one-page, single-spaced) letter serve as his amended pleading, such an amendment was prohibited by Local Rule 7.1(a), which required that amended pleadings be complete pleadings that superseded the original pleadings in all respects. (Dkt. No. 7.)

**\*3** However, Plaintiff did not subsequently file an Amended Complaint. Rather, on August 8, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 12.) The stated purpose of the letter was to again request "the court['s] permission to amend [Plaintiff's] complaint." (*Id.*) Although Plaintiff used the word "amend," it was clear that what he was intending was a "supplemental" complaint. *See* Fed.R.Civ.P. 15(d). This is because the factual allegations he asserted in the letter arose from incidents occurring *after* the filing of his Complaint on June 20, 2007. (Dkt. No. 12.) In pertinent part, Plaintiff alleged as follows:

On July 14, [20]07 the very next day [after speaking to a prison psychologist and Iman about the anxiety I was suffering due to my experience with Officer Turriglio] I was approached by [O]fficer Turriglio once I arrived ... [at my] program. Officer Turriglio told me [']I want to talk to you.['] After program

assi[  ]g[n]ments ... [were] completed [O]fficer Turriglio pulled me to the side away from other inmate[ ]mess hall workers on the B side in the din[ ]ing area; [O]fficer Turriglio['s] exact words ... [were] 'I spok[e] to the Imam [about] what['s] going on[.] [Y]ou can talk to me man to man. I must admit I was nervous when [O]fficer Turriglio approached me. I started studdering [sic] when I spoke and made up a lie.... After that [O]fficer Turriglio walked away.

(*Id.* at 1.) In addition, Plaintiff attempted to assert a claim against various (unidentified) nonparties. In pertinent part, Plaintiff alleged as follows:

On July 24, [20]07 I was called to the sergeant['s] office[ ] and forced to write a statement [about what had taken place between Plaintiff and Officer Turriglio] that is false.... When I arrived at the sergeant['s] office[,] three sergeants or lieutenants ... [were] there[.] [O]ne left and the other two stayed[.] [O]ne of them asked what happen[ed] between me and Turriglio. [The] [I]nspector [G]eneral's [O]ffice [had] informed them of what [had] happen[ed]. One of the sergeant['s] or lieutenants told me what to write. I tried to write what really took place between me and [O]fficer Turriglio. I was told ['T]hat ['s] not good enough.['] I informed the sergeant or lieutenants that I[had] filed a federal complaint against [O]fficer Turriglio. I was still told what to write[.][W]hen I refused that['s] when threats ... [were] made and I was called a nigger. I was told [I']m not leaving the sergeant['s] office intell [sic] I give them what th[e]y want [sic].... I repeat [that] my statement was false and forced and I took no oath[;] it was given out of fear for my safety.... I can [']t identify [the two sergeants or lieutenants] by name because th[e]y were not wearing badges or name tags.... I [would] like to add [as defendants in my action] Green Cor. Fac.[,] D.O.C. as a while[,] [and the] New Yo[r]k State employees here at Greene [Correctional Facility] ....

**\*4** (*Id.* at 2.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

On August 13, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to supplement his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (two-page, single-spaced) letter serve as his supplemental pleading, such a supplemental pleading was not in conformity with Fed.R.Civ.P. 10(b), Local Rule 10. 1, and Local Rule 7.1(a)(4) in that the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original pleading. (Dkt. No. 14.)

However, Plaintiff did not subsequently file a Supplemental Complaint. Rather, on August 29, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 15.) In the letter, Plaintiff requested "the court[']s permission to make a formal complaint, 'not to amend my complaint.' " (Id. at 1.) The claim that Plaintiff wished to assert arose from events occurring on August 21, 2007, at Greene C.F., involving the delayed arrival of a piece of his legal mail. (Id. at 1-2.) More specifically, Plaintiff alleged that (1) at approximately 3:30 p.m. in Plaintiff's housing unit, Correctional Officer Forbes handed Plaintiff a piece of legal mail (a time-sensitive court order issued by the U.S. District Court for the Southern District of New York on May 31, 2007) unaccompanied by the addressed envelope in which it had arrived at the prison, and (2) that same day, while signing for legal mail (from the New York State Court of Claims) in front of Officer Turriglio at the law library, Plaintiff was led to "fear [that] Officer Turriglio has tampered with my mail ... [because he was] the officer who had access to all inmate[']s legal mail." (Id.) As a form of relief, Plaintiff requested that the Court "issue a[n] order to have the Defendant Officer Turriglio removed from the law library intell [sic] this matter is resolved." (Id. at 2.)

On September 6, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for the exact two reasons given in my Order of August 13, 2007 (i.e., that Plaintiff need not request permission to file a Supplemental Complaint since he had the right to do so without permission under the circumstances, and that his two-page, single-spaced letter could not serve as his supplemental pleading since the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original pleading), as well as for the additional reason that Plaintiff had failed to indicate that he had served his submission on opposing counsel, as required by Local Rule 5.1(a). (Dkt. No. 16.)

However, again, Plaintiff did not subsequently file a Supplemental Complaint.

**C. Defendant's Motion to Dismiss and Plaintiff's Response**

**\*5** On August 2, 2007, Defendant filed a motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.) Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].)

In response to Defendant's first argument (i.e., regarding Plaintiff's failure to exhaust his available administrative remedies), Plaintiff argues that (1) Defendant's own actions inhibited Plaintiff's exhaustion of administrative remedies so as to estop Defendant from asserting Plaintiff's failure to exhaust as a defense, and/or (2) under the circumstances, special

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

circumstances existed justifying his failure to exhaust his administrative remedies. (Dkt. No. 18, Plf.'s Memo. of Law, "Point I.") In response to Defendant's second argument (i.e., regarding Plaintiff's failure to make a prior showing of physical injury), Plaintiff essentially argues that the "continuous injuries" inflicted on Plaintiff by Defendant constitute the showing of physical injury required by the PLRA. (Dkt. No. 18, Plf.'s Memo. of Law, "Point II.")

## II. RECENTLY CLARIFIED LEGAL STANDARD FOR MOTIONS TO DISMISS

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2); [FN1] or (2) a challenge to the legal cognizability of the claim. [FN2]

FN1. See 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN2. See *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12 [b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-02 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [FN3] The purpose of this rule is to "facilitate a proper decision on the merits." [FN4] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN5]

> FN3. *Dura Pharm., Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley,* 355 U.S. at 47).

> FN4. *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

> FN5. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [FN6] However, it is well established that even this liberal notice pleading standard "has its limits." [FN7] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard. [FN8]

> FN6. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (characterizing Fed.R.Civ.P. 8[a][2]'s pleading standard as "simplified").

> FN7. *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

> FN8. *See, e.g., Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharm.,* 125 S.Ct. at 1634-35, *Christopher v. Harbury,* 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-35 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-09 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521,

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

**\*6** Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968-69 (2007).[FN9] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.; see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ) [emphasis in original].

FN9. The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN10] Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[FN11] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality. Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN12] In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN13]

FN10. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN11. *Hernandez,* 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

FN12. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d

Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

FN13. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

However, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[FN14] Moreover, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[FN15]

FN14. *Stinson v. Sheriff's Dep't of Sullivan County,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M. J.); *Muniz,* 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Di-Projetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins,* 2007 WL 37404, at

*4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

FN15. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

*7 Finally, it should be remembered that Fed.R.Civ.P. 12(b)(6) motions to dismiss are limited to the facts alleged in the complaint and must be converted into a Fed.R.Civ.P. 56 motion for summary judgment if the court considers materials outside the pleadings.[FN16] However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider any documents provided by the plaintiff in opposition to defendants' motion to dismiss, *to the extent those documents are consistent with the allegations in the complaint.*[FN17]

FN16. *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

FN17. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord, 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997)* (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

## III. ANALYSIS

As stated above in Part I.C. of this Report-Recommendation, Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].) Because I conclude that Defendant's lack-of-physical-injury argument for dismissal is somewhat stronger than is his failure-to-exhaust argument, I address the lack-of-physical-injury argument first.

### A. Requirement of Physical Injury

The Prison Litigation Reform Act of 1995 ("PLRA") provides, in pertinent part, as follows: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.1997e(e).

Here, Plaintiff alleges that, on May 31, 2007, Defendant (1) "bang[ed] pots" in the prison's "pot room," (2) "curs[ed]" at Plaintiff, (3) told Plaintiff "to shut up," (4) told Plaintiff to stop "eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull, (5) "placed [Plaintiff] o[n] the wall and started to slap me [o]n the back of the head," and (6) "placed his pocket knife to his [own] face and told [Plaintiff] he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing around]." (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) As a result of this misconduct, Plaintiff alleges that he suffered "mental anguish and distress." (*Id.* at ¶¶ 7, 9.)

These factual allegations do not plausibly suggest that Plaintiff suffered any *physical injury* as a result of Defendant's alleged misconduct. Generally, some slaps on the back of the head do not constitute a cognizable *physical injury* under the PLRA. *See Jackson v. Johnson,* 04-CV-0110, 2005 U.S. Dist. LEXIS 21720, at *18-19, 32 (M.D. Ga. June 17, 2005) (no physical injury under PLRA occurred where corrections officer, *inter alia,* "slapp[ed] [prisoner] in the face immediately [after shouting derogatory remark to him]"). This is especially true where, as here, there is no allegation that the slaps resulted in any observable or diagnosable medical condition requiring treatment by a medical care professional. *See Jarriett v. Wilson,* 162 Fed. App'x 394, 400-01 (6th Cir.2005) (mild swelling of left toe with some pain but no need for medical treatment was not cognizable physical injury under PLRA); *Dixon v. Toole,* 225 Fed. App'x 797, 799 (11th Cir.2007) ("mere bruising from the application of restraints [resulting in welts]" was not cognizable physical injury under PLRA); *Silgar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir.1997) (prisoner's "sore, bruised ear lasting for three days" was not cognizable physical injury under PLRA); *cf. Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1998) (citing *Silgar v. Hightower* for the point of law that the physical

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

injury under the PLRA must be more than "de minimis"), *accord, Voorhees v. Goord,* 05-CV-1407, 2006 WL 1888638, at *10, n. 2 (S.D.N.Y. Feb. 24, 2006) (same), *Leon v. Johnson,* 96 F.Supp.2d 244, 248 (W.D.N.Y.2000) (same).[FN18]

> FN18. *See also Harris v. Garner,* 190 F.3d 1279, 1287 (11th Cir.1999) (prisoner's claim that corrections officers forced him to "dry shave" during prison "shakedown," causing him to experience bleeding, irritation, and pain, alleged only *de minimis* injury and not the kind of physical injury cognizable under the PLRA) [citation omitted], *opinion reinstated in part on rehearing,* 216 F.3d 970 (11th Cir .2000); *Russell v. Johnson,* 07-CV-0008, 2008 WL 480020, at *2 (M.D.Ga. Feb. 19, 2008) (detainee's claim that, during a traffic stop, his foot was caught in police officer's automotive transmission, which resulted only in pain, was not cognizable physical injury under PLRA).

**\*8** I note that *repeated punches* by correctional officials (while, of course, deplorable if unprovoked) have been specifically held by district courts in this Circuit to not constitute *physical injury* under the PLRA, where they resulted in only superficial and temporary irritations or abrasions. *See Espinal v. Goord,* 00-CV-2242, 2001 WL 476070, at *3-4, 12-13 (S.D.N.Y. May 7, 2001) ("red face" suffered by inmate after correctional officer "struck [him] a couple times," "punch[ing][him] in the head and face," did not constitute physical injury cognizable under PLRA); *Warren v. Westchester County Jail,* 106 F.Supp.2d 559, 563, 569 (S.D.N.Y.2000) (minor scratches suffered by jail inmate as a result of two to three punches by guard, including two scratches to inmate's face, and very small cut inside mouth, did not constitute physical injury cognizable under PLRA); *cf. Abreu v. Nicholls,* 04-CV-7778, 2007 WL 2111086, at *5 (S.D.N.Y. July 24, 2007) [collecting cases in which minor blows to inmates' faces and heads were not

actionable under the Eighth Amendment].[FN19]

> FN19. *See also Borroto v. McDonald,* 04-CV-0165, 2006 WL 2789152, at *1 (N.D.Fla. Sept. 26, 2006) (prisoner's claim that he was "repeatedly punched" by correctional officers, alone, did not allege the kind of *physical injury* that is cognizable under PLRA); *cf. Barker v. Lehrer,* 02-CV-0085, 2004 WL 292142, at *4-5 (N.D.Tex. Jan. 30, 2004) (fact that prisoner was "hit ... with a closed fist on the left side of his forehead," resulting in "a lump on his forehead after the assault," did not constitute *physical injury* under PLRA).

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that Plaintiff suffered any physical injury as a result of Defendant's alleged misconduct on May 31, 2007. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf .'s Opposition Papers].)

Plaintiff alleges, in his letter to the Court of June 22, 2007, that, on June 18, 2007, Officer Turriglio made "intimidating comments" to Plaintiff, and "taunt[ed]" him, by saying to other Mess Hall workers, "McCloud knows I doesn't [sic] play." (Dkt. No. 6.) He alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, during a conversation with Defendant, Plaintiff became "nervous" and "started studdering [sic] when [he] spoke" to Defendant. (Dkt. No. 12, at 1.) He alleges, in his letter to the Court of August 29, 2007, that, on August 21, 2007, he "fear[ed] [that] Officer Turriglio ha[d] tampered with [his] mail ... [because Officer Turriglio

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

was] the officer who had access to all inmate['s] legal mail." (Dkt. No. 15, at 1-2.) None of these three documents contains any allegation that Plaintiff suffered any physical injury at all. Furthermore, none of the three documents sufficiently connects any of the emotional distress described therein to the incident on May 31, 2007; rather, the documents all allege facts plausibly suggesting that the cause of the emotional distress described in the documents was contact between Plaintiff and Defendant occurring more than two weeks after May 31, 2007.

**\*9** The closest Plaintiff comes to alleging facts plausibly suggesting that he suffered a "physical injury" as a result of the incident on May 31, 2007, is when he alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, a prison psychologist diagnosed Plaintiff with "anxiety." (Dkt. No. 12, at 1.) However, this allegation of "anxiety" is insufficient for two reasons. First, Plaintiff does not allege that the diagnosis of "anxiety" on July 14, 2007, was caused by the incident on May 31, 2007-as opposed to being caused by the incident on June 18, 2007 (which is not at issue in this action), or some sort of pre-existing emotional disorder. Second, and much more importantly, numerous courts have held-correctly, I believe-that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not "physical injuries" for purposes of the PLRA.[FN20] This is especially true where, as here, the plaintiff does not allege an extensive list of physical manifestations but only one, i.e., "anxiety."

> FN20. *See, e.g., Davis v. District of Columbia,* 158 F.3d 1342, 1349 (D.C.Cir.1998) (weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA); *Cooksey v. Hennessey,* 07-CV-3829, 2007 WL 2790365, at \*1 (N.D.Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct

from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; *Johnson v. Georgia,* 06-CV-0049, 2007 WL 2684985, at \*3 (M.D.Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA); *Brown v. Porter,* 01-CV-20957, 2006 WL 2092032, at \*2 (N.D.Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.,* 05-CV-1142, 2006 WL 3408176, at \*4 (M.D.Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v. Williams,* 03-CV-0192, 2005 WL 5993338, at \*4 (N.D.Fla. Oct. 14, 2005) (thirty-minute episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder,* 245 F.Supp.2d 200, 203, 205 (D.Me.2003) ("permanent traumatization" not "physical injury" for purposes of PLRA); *Todd v. Graves,* 217 F.Supp.2d 958, 960 (S.D.Iowa 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); *Ashann-Ra v. Virginia,* 112 F.Supp.2d 559, 566 (W.D.Va.2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); *McGrath v. Johnson,* 67 F.Supp.2d 499, 508 (E.D.Pa.1999) (inflamation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v. Virgina,* 982 F.Supp. 1132, 1135 & n. 3 (E.D.Va.1997) (depression and painful headaches caused by emotional distress not

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

"physical injury" for purposes of PLRA); *Pinkston-Bey v. DeTella,* 96-CV-4823, 1997 WL 158343, at *3 (N.D.Ill. March 31, 1997) (severe headaches caused by emotional distress not "physical injury" for purposes of PLRA).

Finally, for reasons similar to those articulated above, I find that the affidavit submitted by Plaintiff in opposition to Defendant's motion alleges no facts plausibly suggesting that he suffered a *physical injury* as a result of the incident on May 31, 2007 (or even any physical injury as a result of subsequent incidents). (Dkt. No. 18, Plf.'s Affid., ¶¶ 4, 5[A]-[H].)

For all of these reasons, I recommend that the Court dismiss Plaintiff's Complaint for failing to allege facts plausibly suggesting that he experienced any *physical injury* as a result of Defendant's alleged misconduct.

**B. Exhaustion of Available Administrative Remedies**

In addition, the PLRA requires, in pertinent part, that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." FN21 "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." FN22 The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.FN23

FN21. 42 U.S.C. § 1997e.

FN22. *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

FN23. 7 N.Y.C.R.R. § 701.7.

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure.FN24 *First,* an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence. A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within seven (7) working days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within four (4) working days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within ten (10) working days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within four (4) working days of receipt of the superintendent's written decision. CORC is to render a written decision within twenty (20) working days of receipt of the appeal.

FN24. 7 N.Y.C.R.R. § 701.7; *see also White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

**\*10** It is important to emphasize that any failure by the IGRC or the superintendent to adequately respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.FN25 It is also important to emphasize that DOCS provides for an expedited procedure for the review of grievances alleging employee harassment.FN26 While this procedure provides for review of the grievance directly by the facility superintendent, it still requires the filing of a grievance by the inmate.FN27 Furthermore, the super-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

intendent's decision must be appealed to CORC in order for the inmate to complete the grievance process.[FN28]

> FN25. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g .,* *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003)* (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

> FN26. 7 N.Y.C.R.R. § 701.2.

> FN27. *Id.*

> FN28. *Id.*

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [FN29]

However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[FN30] *First,* "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." [FN31] *Second,* if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." [FN32] *Third,* if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." [FN33]

> FN29. *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

> FN30. See *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

> FN31. *Hemphill,* 380 F.3d at 686 (citation omitted).

> FN32. *Id.* [citations omitted].

> FN33. *Id.* [citations and internal quotations omitted].

Before I proceed to an analysis of the above-referenced three-part inquiry established by the Second Circuit, I should briefly discuss the appropriateness (or inappropriateness) of a failure-to-exhaust

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

argument during a motion to dismiss for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed.R.Civ.P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12[b][1] ) established by the PLRA. *See, e.g., Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v. Melindez,* 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

**\*11** Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block,* 127 S.Ct. 910, 914-915, 918-923 (2007). A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *Block,* 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 921. If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administra-

tive remedies, then his Complaint may be dismissed for failure to state a claim. *Id.* at 920-21. Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes. This is what has happened here, according to Defendants.

**1. Availability of Administrative Remedies**

With regard to the first inquiry (i.e., whether the administrative remedies not pursued by Plaintiff were in fact available to Plaintiff), I answer this question in the affirmative, based on even the most liberal of constructions of Plaintiff's Complaint. More specifically, I find that Plaintiff has not alleged any facts plausibly suggesting that administrative remedies were not available to prisoners at Greene C.F. during the time in question (i .e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Indeed, Plaintiff quite expressly alleges that there was a prisoner grievance procedure at Greene C.F. (Dkt. No. 1, ¶ 4[a] [Plf.'s Compl.].)

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that administrative remedies were not available to prisoners (and Plaintiff in particular) at Greene C.F. during the time in question. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf .'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
(Cite as: 2008 WL 1772305 (N.D.N.Y.))

**2. Estoppel**

With regard to the second inquiry (i.e., whether Defendant's own actions inhibited Plaintiff's exhaustion of remedies so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense), I answer this question in the negative, based on even the most liberal of constructions of Plaintiff's Complaint. In his Complaint, Plaintiff alleges no facts plausibly suggesting that Defendant took any actions whatsoever that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Rather, Plaintiff alleges that he chose to not present the facts relating to his Complaint in the prison's grievance program "[b]ecause I fear retaliation from officers and the officer [I]'m fil [ ]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent [at Greene C.F.]." (*Id.*) Plaintiff's feeling of fear of "retaliation from [unidentified] officers" is completely unexplained and wholly conclusory. Furthermore, Defendant's action of "brag[ing] about the grievance system not working" and claiming that his uncle was a superintendent at Greene C.F. in no way constitutes an *action* by Defendant that inhibited Plaintiff from filing a grievance at Greene C.F. about the events giving rise to his claims in this action. At best, these statements by Defendant constituted an indication that Plaintiff might be *unsuccessful* in the grievance process before any appeal reached to the final level of review, by DOCS' Central Office Review Committee ("CORC"). Notifying an inmate of the *prospect* of *initial* failure (due to alleged antipathy for inmates or even sympathy for correctional officers, held by various *other* officials, participating in the grievance process) is hardly the sort of adverse *action* that is required to estop a correctional officer from asserting the legal defense of non-exhaustion.

**\*12** Nor do the other factual allegations of Plaintiff's Complaint plausibly suggest that Defendant took any actions that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense. Plaintiff alleges, on May 31, 2007, Defendant (1) told Plaintiff to "stop eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull," (2) "slap[ped] [Plaintiff] on the side of his head," and (3) placed a pocket knife to *his own face* and threatened to cut *his own face* and blame it on Plaintiff in order to let the other inmates know he was not "play[ing]" around. (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].) The problem with these allegations (at least from Plaintiff's perspective) is that they have absolutely nothing to do with the filing of any grievance, or even the making of any verbal complaint, by Plaintiff. Simply stated, while the alleged conduct is (of course) deplorable, it did not (as alleged) have either the design or effect of preventing Plaintiff from exhausting his administrative remedies.

Morever, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

In particular, Plaintiff's letter to the Court of June 22, 2007, alleges that, on June 18, 2007, Defendant "intimidat[ed]" and "taunt[ed]" Plaintiff by saying to other inmates, "McCloud knows I [don't] play" around. (Dkt. No. 6.) This allegation fails for the same reason as the allegation about Defendant's earlier comments to Plaintiff fails: it had absolutely nothing to do with the filing of any grievance, or the making of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

any complaint, by Plaintiff. Moreover, Defendant's utterance of these words occurred on June 22, 2007, more than a *week* after Plaintiff had decided not to exhaust his available administrative remedies. (The deadline by which Plaintiff had to file a grievance regarding the incident on May 31, 2007, expired on or about June 14, 2007.) [FN34] Thus, it could not have possibly inhibited Plaintiff from exhausting his available administrative remedies.

> FN34. As described above, an inmate must file a complaint with the facility's IGP clerk within 14 calendar days of the alleged occurrence.

Plaintiff's letter to the Court of August 8, 2007, alleges that, on July 14, 2007, Defendant said to Plaintiff, "I spok[e] to the Imam [about] what[']s going on[.] [Y]ou can talk to me man to man." (Dkt. No. 12.) An attempt to informally resolve a dispute (which is encouraged in DOCS' grievance process) is not an act inhibiting an inmate from exhausting his available administrative remedies. Plaintiff's letter of August 8, 2007, further alleges that on July 24, 2007, persons *other than Defendant* coerced Plaintiff into making a false statement about what had taken place between Plaintiff and Defendant. (*Id.*) Plaintiff alleges no action by *Defendant* on July 24, 2007. Nor does Plaintiff explain how the false statement on *July* 14, 2007-whatever that false statement may have been-in any way caused his decision by *June* 14, 2007, not to exhaust his available administrative remedies.

**\*13** Plaintiff's letter to the Court of August 29, 2007, alleges that Plaintiff obtained reason to "fear" that Defendant was responsible for the delayed arrival of a piece of his legal mail on August 21, 2007. (Dkt. No. 15.) However, the sole reason for this fear was the (alleged) fact that Defendant "had access to all inmate[']s legal mail." (Dkt. No. 15.) Moreover, this fear occurred on August 21, 2007, which was more than *two months* after Plaintiff had decided to not exhaust his available administrative remedies by June 14,

2007.

In an affidavit submitted in opposition to Defendant's motion, Plaintiff swears that, before the incident on May 31, 2007, a fellow inmate, Saheithe Pigford, filed both a federal court action and a grievance against Officer Turriglio and was "beaten on several occasions, threaten[ed] and had his personal area searched during late evening or at predawn hours." (Dkt. No. 18, Plf.'s Affid., ¶ 4.) Plaintiff also swears that, on May 31, 2007, "Plaintiff was aware of what had happened to ... [Inmate] Shakeith Pigford as a result of filing his grievance [against Officer Turriglio]" since the "Pigford ... incident[ ] occurred prior to that of the plaintiffs' [sic]." (*Id.* at ¶ 5[A].)

For the sake of argument, I will assume that Plaintiff is swearing that Mr. Pigford was beaten *by Officer Turriglio* (since actions *by third-persons* can hardly estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense). The problem with Plaintiff's sworn assertion is that it is so patently false as to be implausible (if not sanctionable). I take judicial notice of the fact that Inmate Pigford did not file the action to which Plaintiff is referring (which is the only federal court action that has been filed by Shakeith Pigford, according to the Federal Judiciary's PACER service) until nearly *a month after* the incident giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio,* 07-CV-0687, Complaint (N.D.N.Y. filed June 29, 2007, and dated June 25, 2007). Furthermore, I take judicial notice of the fact that the event giving rise to Inmate Pigford's action against Officer Turriglio did not occur until *three days after* the event giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio,* 07-CV-0687, Complaint, ¶ 6 (N.D.N.Y.). No mention is made in Inmate Pigford's Complaint as to when he filed his grievance and was assaulted. *Id.* at ¶¶ 4(b), 6. However, given the clear factual inaccuracies of Plaintiff's other sworn statements regarding Inmate Pigford's experience, I find that Plaintiff's allegation that Inmate Pigford's experience dissuaded Plaintiff

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

from filing a grievance in this action (from May 31, 2007, to June 14, 2007) to be wholly *implausible.*

Furthermore, because I find that the absence of this factual allegation (regarding Inmate Pigford's having been assaulted for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance) to be conspicuous, I find that this late-blossoming factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

**\*14** In his affidavit, Plaintiff also swears that, before the incident on May 31, 2007, a fellow inmate, Mohammed Montalvo, filed a grievance against Officer Turriglio for "brandish[ing] a knife" and was "threaten[ed] thereafter with bodily harm until he agreed to sign-off [sic] on the grievance...." (Dkt. No. 18, Plf.'s Affid., ¶ 4.) For the sake of brevity, I will set aside the fact that Plaintiff does not assert precisely *when* Inmate Montalvo was so threatened. I will also set aside incredulity with which I view this late-blossoming, self-serving sworn statement, given Plaintiff's other misrepresentations to the Court-discussed above, and below. (*See, infra,* Part III.C. of this Report-Recommendation.) The more important fact is that Plaintiff does not allege that it was *Officer Turriglio* who threatened Inmate Montalvo with bodily harm. Again, actions *by third-persons* cannot estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense. Moreover, because of the conspicuous absence of this factual allegation (regarding Inmate Montalvo's having been threatened for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance), I find that this factual allegation to be *inconsistent* with the factual

allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

Finally, in his affidavit, Plaintiff swears that he experienced several other adverse actions following the incident in question on May 31, 2007. As an initial matter, the vast majority of this asserted misconduct was committed by correctional officers at Greene C.F. other than Defendant. More importantly, all of this misconduct occurred between July 24, 2007, and October 9, 2007-*well after* the expiration of the June 14, 2007, deadline by which he had to file a grievance regarding the incident giving rise to this action. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[D]-[H].) Thus, it is impossible for this misconduct to have been the reason that Plaintiff chose not to file a grievance against Defendant between May 31, 2007, and June 14, 2007.

### 3. "Special Circumstances" Justifying Failure to Exhaust

With regard to the third inquiry (i.e., whether Plaintiff has plausibly alleged *special circumstances* justifying his failure to comply with the administrative procedural requirements), I answer this question in the negative, also based on even the most liberal of constructions of Plaintiff's Complaint. Plaintiff has not alleged that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to complain. Indeed, he has not even alleged, in his Complaint, that he *attempted* to complain, for example, by sending a letter of complaint directly to CORC, the DOCS' Commissioner, or a Deputy Commissioner (which prisoners occasionally do in analogous circumstances).

**\*15** Morever, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting the existence of any special circumstances justifying Plaintiff's failure to pursue (and exhaust) his administrative remedies during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf .'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].) I note that Plaintiff swears that, between June 3, 2007, and June 5, 2007, he wrote letters of complaint to both the New York State Inspector General's Office, and the Superintendent of Greene C.F., regarding the incident on May 31, 2007. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[B]-[C].) However, Plaintiff does not explain why the "letter of complaint" that he sent to the superintendent was not in the form of a grievance filed with the Greene C.F. IGRC, as required by 7 N.Y.C.R.R. § 701.2. Nor does Plaintiff explain why he failed to write to CORC, following whatever action the superintendent did or did not take with respect to the "letter of complaint." Nor does Plaintiff allege that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to file a formal grievance with the Greene C.F. IGRC, or at least write a letter of complaint to CORC.

For all of these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint for alleging facts plausibly suggesting that he failed to exhaust his available administrative remedies following the incident on May 31, 2007.

## C. Second Alternative Ground for Dismissal: Misrepresentations to Court

As stated above in this Report-Recommendation, Plaintiff has, in a sworn statement, falsely stated to the Court that, when the incident in question occurred on May 31, 2007, Plaintiff was aware that a fellow inmate (Shakeith Pigford) had been retaliated against for having filed a grievance against Officer Turriglio-a temporal impossibility since the event giving rise to Inmate Pigford's grievance had not even yet occurred as of May 31, 2007. (*See, supra,* Part III.B.2. of this Report-Recommendation.) This is not the only misrepresentation that Plaintiff has made to the Court.

As of the date he filed this action on June 16, 2007, Plaintiff had acquired two "strikes" for purposes of 28 U.S.C. § 1915's so-called "three strikes rule." *See McCloud v. D.O. C.,* 06-CV-14278 (S.D.N.Y.) (prisoner civil rights case filed by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06); *McCloud v. D.O.C.,* 06-CV-14279 (S.D.N.Y.) (prisoner civil rights case by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06).

**\*16** Plaintiff failed to disclose these two cases in Paragraph 5 of his sworn Complaint, where he checked the box labeled "Yes" next to the question "Have you ever filed any other lawsuits in any state or federal court relating to his imprisonment?" but then listed only one such lawsuit (i.e., *McCloud v. Buckhalter,* 07-CV-4576 [S.D.N.Y.] ) in response to the form complaint's directive: "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page." (Dkt. No. 1, ¶ 5 [Plf.'s Compl.].)

While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a form complaint calling for such information, and *swore* to the truthfulness of his answer. There is simply no excuse for making such a sworn misrepre-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

sentation to the Court. District Judges from this Court have indicated a willingness to sanction *pro se* litigants for making such misrepresentations. *See, e.g., Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at \*13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at \*6 & n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases]. I have considered less drastic sanctions and have found them to be inadequate to curb this particular intentional and egregious litigation abuse.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte,* under Fed.R.Civ.P. 11, as a sanction for making multiple sworn misrepresentations to the Court.

## D. Third Alternative Ground for Dismissal: Unavailability of Relief Requested

As stated above in Part I.A. of this Report-Recommendation, as a result of the misconduct alleged in this action, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality"; and (3) "$1,000,000 for mental anguish and distress." (Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

I find that the first two forms of relief are able to be, and should be, denied on the alternative ground that Plaintiff has alleged no facts plausibly suggesting

his entitlement to either form of relief. The first form of relief, which is essentially an injunction or temporary restraining order, must be supported by documents showing cause for the granting of the requested relief-which Plaintiff's Complaint does not do. *See* Fed.R.Civ.P. 65; N.D.N.Y. L.R. 65.1, 65.2, 7.1(f), 7.1(b)(2), 7.1(e). The second form of relief is merely a vehicle by which Plaintiff may embark on a fishing expedition to obtain facts that would enable him to assert an actionable legal claim against Defendant. Rule 8 of the Federal Rules of Civil Procedure-which requires that a plaintiff must assert enough facts in his complaint (and thus be in possession of such basic facts *before* he files the complaint) to give a defendant *fair notice* of the claim against him-does not permit such a "bootstrap" pleading. [FN35] Nor does Plaintiff even provide cause in support of what is essentially a request for discovery.

> FN35. *See Balliett v. Heydt,* 95-CV-5184, 1997 U.S. Dist. LEXIS 14913, at \*3-9, 29 (E.D.Pa. Sept. 25, 1997) (referring to a similar attempt to state a claim-based on information generated in 1997, several years after the filing of the complaint in 1995-as a "means of circular pleading and bootstrapping"); *Hill v. Austin,* 89-CV-7790, 1997 U.S. Dist. LEXIS 11737, at \*10 (N.D.Ill. Sept. 6, 1990) ("Hill cannot bootstrap his [untimely and therefore non-actionable] complaints dealing with the years 1976 through 1982 through his timely filing of the complaint on the 1985 involuntary detail."); *cf. City of New York v. Permanent Mission of India to the U.N.,* 446 F.3d 365, 377 (2d Cir.2006) (referring to an analogous attempt to state a claim as a "use [of] creative pleading to 'bootstrap' claims" that were otherwise unavailable to the plaintiff); *Scott v. Johnson,* 95-CV-0403, 1995 U.S. Dist. LEXIS 22445, at \*6 (W.D.Mich. July 28, 1995) ("A prison inmate cannot bootstrap his complaints with conclusory allegations of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)
**(Cite as: 2008 WL 1772305 (N.D.N.Y.))**

retaliation ....") [citation omitted].

**\*17** For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte,* under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b),[FN36] to the extent that the Complaint requests, as relief for the constitutional violation(s) alleged, (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff," and (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality." (Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

> FN36. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis]* at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted [,] ... or ... seeks monetary relief against a defendant who is immune from such relief"); 28 U.S.C. § 1915A(b) ("On review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted....").

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 42) be **GRANTED;** and it is further

**RECOMMENDED** that, when dismissing Plaintiff's Complaint (Dkt. No. 1), the Court state that the dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g); and it is further

**RECOMMENDED** that the Court certify in

writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec 'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.
McCloud v. Tureglio
Not Reported in F.Supp.2d, 2008 WL 1772305 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.
James MURRAY, Plaintiff,
v.
R. PALMER; S. Griffin; M. Terry; F. Englese; Sergeant Edwards; K. Bump; and K.H. Smith, Defendants.

No. 9:03-CV-1010 (GTS/GHL).
March 31, 2010.

James Murray, Malone, NY, pro se.

Bosman Law Office, AJ Bosman, Esq., of Counsel, Rome, NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Timothy Mulvey, Esq., James Seaman, Esq., Assistant Attorneys General, of Counsel, Albany, NY, for Defendants.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** The trial in this prisoner civil rights action, filed *pro se* by James Murray ("Plaintiff") pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on March 1, 2010, regarding the affirmative defense of seven employees of the New York State Department of Correctional Services-R. Palmer, S. Griffin, M. Terry, F. Englese, Sergeant Edwards, K. Bump, and K.H. Smith ("Defendants")-that Plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act, before filing this action on August 14, 2003. At the hearing, documentary evidence was admitted, and testimony was taken of Plaintiff as well as Defendants' witnesses (Darin Williams, Sally Reams, and Jeffery Hale), whom Plaintiff was able to cross-examine through *pro bono* trial counsel. At the conclusion of the hearing, the undersigned indicated that a written decision would follow. This is that written decision. For the reasons stated below, Plaintiff's Second Amended Complaint is dismissed because of his failure to exhaust his available administrative remedies.

### I. RELEVANT LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages disregard of the agency's procedures." *Woodford v. Ngo,* 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford,* 548 U .S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Correctional Services ("DOCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.FN1 *First,* an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.FN2 If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

> FN1. *See also White v. The State of New York,* 00-CV-3434, 2002 U . S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

> FN2. The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

**\*2** Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

It is important to note that these procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied.FN3 Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respec-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

tively, can-and must-be appealed to the next level, including CORC, to complete the grievance process.[FN4] There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number.[FN5] After carefully reviewing this case law, the Court finds that the weight of authority appears to answer this question in the affirmative.[FN6] The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), it would appear that there is something for the superintendent to review.

> FN3. *Groves v. Knight,* 05-CV-0183, Decision and Order at 3 (N.D.N.Y. filed Aug. 4, 2009) (Suddaby, J.).

> FN4. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g .,* DOCS Directive 4040 dated 8/22/03, ¶ VI.G. ("Absent [a time limit extension granted by the grievant], matters not decided within the time limits may be appealed to the next step.); *Pacheco v. Drown,* 06-CV-0020, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan.11, 2010) (Suddaby, J.) ("It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process."), *accord, Torres v. Caron,* 08-CV-0416, 2009 WL 5216956, at *5 & n. 28 (N.D.N.Y. Dec.30, 2009) (Mordue, C.J.), *Benitez v. Hamm,* 04-CV-1159, 2009 WL 3486379, at *13 & n. 34 (N.D.N.Y. Oct.21, 2009) (Mordue, C.J.), *Ross v. Wood,*

05-CV-1112, 2009 WL 3199539, at *11 & n. 34 (N.D.N.Y. Sept.30, 2009) (Scullin, J.), *Sheils v. Brannen,* 05-CV-0135, 2008 WL 4371776, at *6 & n. 24 (N.D.N.Y. Sept.18, 2008) (Kahn, J.), *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *15 & n. 46 (N.D.N.Y. June 20, 2008) (Hurd, J.), *McCloud v. Tureglio,* 07-CV-0650, 2008 WL 17772305, at *10 & n. 25 (N.D.N.Y. Apr. 15, 2008) (Mordue, C.J.), *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *14 & n. 114 (N.D.N.Y. Nov.5, 2007) (McAvoy, J.); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.); *Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *11 & n. 66 (N.D.N.Y. June 22, 2006) (McAvoy, J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance."); *Walters v. Carpenter,* 02-CV-0664, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004) ("[M]atters not decided within the prescribed time limits must be appealed to the next level of review."); *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

FN5. *Compare Johnson v. Tedford,* 04-CV-0632, 616 F.Supp.2d 321, 326 (N.D.N.Y.2007) (Sharpe, J.) ("[W]hen a prisoner asserts a grievance to which there is no response, *and it is not recorded or assigned a grievance number,* administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review.") [emphasis in original, and citations omitted] *with Waters v. Schneider,* 01-CV-5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr.23, 2002) (finding that, in order to exhaust his available administrative remedies, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to his grievance, of which no record existed).

FN6. *See, e.g., Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *16, 18 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (finding that, in order to exhaust his available administrative remedies with regard to his grievance of August 30, 2000, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to that grievance, which included a failure to acknowledge the receipt of the grievance and assign it a number); *Midalgo v. Bass,* 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept.26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned

a grievance number); *Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available to him where his grievance of March 20, 2004, was not assigned a grievance number); *Veloz v. New York,* 339 F.Supp.2d 505, 515-16 (S.D.N.Y.2004) (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because, *inter alia,* "there was no evidence whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *cf. Hernandez v. Coffey,* 582 F.3d 303, 305, 309, n. 3 (2d Cir.2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

It is also important to note that DOCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

§ 253.8; and

C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

**\*3** "An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Porter,* 534 U.S. at 524). However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004), *accord, Ruggiero,* 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available

and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

With regard to this third inquiry, the Court notes that, *under certain circumstances,* an inmate may exhaust his administrative remedies by raising his claim during a related *disciplinary proceeding. Giano v. Goord,* 380 F.3d 670, 678-79 (2d Cir.2004); *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004).[FN7] However, in essence, the circumstances in question include instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing,[FN8] *and* (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim.[FN9] Some district courts have found the first requirement not present where (a) there was nothing objectively confusing about the DOCS regulations governing the grievability of his claim, [FN10] (b) the inmate was specifically informed that the claim in question was grievable,[FN11] (c) the inmate separately pursued the proper grievance process by filing a grievance with the IGRC,[FN12] (d) by initially alleging that he did appeal his claim to CORC (albeit without proof), the inmate has indicated that, during the time in question, he understood the correct procedure for exhaustion,[FN13] and/or (e) before and after the incident in question, the inmate pursued similar claims through filing a grievance with the IGRC.[FN14] Other district courts have found the second requirement not present where (a) the inmate's mention of his claim during the disciplinary hearing was so insubstantial that prison officials did not subsequently investigate that claim,[FN15] and/or (b) the inmate did not appeal his disciplinary hearing conviction.[FN16]

FN7. The Court recognizes that the Supreme

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), may have changed the law regarding possible exceptions to the exhaustion requirement (and thus the possibility that exhaustion might occur through the disciplinary process). Specifically, in *Woodford,* the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Woodford,* 548 U.S. at 93. "Proper" exhaustion means that the inmate must complete the administrative review process *in accordance with the applicable procedural rules,* as a prerequisite to bringing suit in federal court. *Id.* at 88-103 (emphasis added). It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. Out of special solicitude to Plaintiff, the Court will assume that *Woodford* has not overruled the Second Circuit's *Giano-Testman* line of cases.

FN8. *Giano,* 380 F.3d at 678 ("[W]hile Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse."); *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia,* whether prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing).

FN9. *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia,* whether prisoner's submissions in the disciplinary appeals process exhausted his remedies "in a substantive sense" by "afford[ing] corrections officials time and opportunity to address complaints internal-

ly"); *Chavis v. Goord,* 00-CV-1418, 2007 WL 2903950, at *9 (N.D.N.Y. Oct.1, 2007) (Kahn, J.) ("[T]o be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and, if appropriate, remediation.") [citation omitted]. The Court joins the above-described two requirements in the conjunctive because the Second Circuit has recognized that mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *See Macias v. Zenk,* No. 04-6131, 495 F.3d 37, at *43-44 (2d Cir.2007) (recognizing that *Woodford v. Ngo,* 548 U.S. 81 [2006], overruled *Braham v. Casey,* 425 F.3d 177 [2d Cir.2005], to the extent that *Braham* held that "informal complaints" would suffice to exhaust a claim).

FN10. *See, e.g., Reynoso v. Swezey,* 423 F.Supp.2d 73, 75 (W.D.N.Y.2006), *aff'd,* 238 F. App'x 660 (2d Cir.2007) (unpublished order), *cert. denied,* 552 U.S. 1207, 128 S.Ct. 1278, 170 L.Ed.2d 109 (2008); *Holland v. James,* 05-CV-5346, 2009 WL 691946, at *3 (S.D.N.Y. March 6, 2009); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008); *cf. Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *5 & n. 23 (N.D.N.Y. July 11, 2007) (McAvoy, J.) (reciting this point of law in context of failure to appeal grievance determination to CORC).

FN11. *See, e.g., Johnson v. Barney,* 04-CV-10204, 2007 WL 2597666, at *2 (S.D.N.Y. Aug.30, 2007); *Reynoso,* 423

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

F.Supp.2d at 75-76.

FN12. *See, e.g., Reynoso,* 423 F.Supp.2d at 75 ("There is no evidence that plaintiff was confused or misled about the proper method for raising his claims. In fact, the record shows exactly the opposite: plaintiff did file a grievance about the incident. He simply failed to appeal the denial of that grievance to CORC."); *Tapp v. Kitchen,* 02-CV-6658, 2004 WL 2403827, at *9 (W.D.N.Y. Oct.26, 2004) ("In the instant case, however, plaintiff does not and cannot claim to have believed that his only available remedy was to raise his complaint as part of his disciplinary hearing, since he also filed a grievance with the Inspector General, and also claims to have filed both an inmate grievance and a separate complaint with the facility superintendent."); *cf. Muniz,* 2007 WL 2027912, at *5 & n. 23 ("Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC?").

FN13. *See, e.g., Petrusch v. Oliloushi,* 03-CV-6369, 2005 WL 2420352, at *5 (W.D.N.Y. Sept.30, 2005) ("[A]s to his grievance, which is the subject of this lawsuit, plaintiff does not appear to be contending that he believed the Superintendent's denial constituted exhaustion, since by initially claiming that he did appeal to CORC, albeit without proof, he has demonstrated his knowledge of the correct procedure for exhaustion.").

FN14. *See, e.g., Benjamin v. Comm'r N.Y.*

*State DOCS,* 02-CV-1703, 2007 WL 2319126, at *14 (S.D.N.Y. Aug.10, 2007) ("Benjamin cannot claim that he believed that appealing his disciplinary proceeding was the only available remedy at his disposal in light of the numerous grievances he has filed during his incarceration at Green Haven [both before and after the incident in question]."), *vacated in part on other grounds,* No. 07-3845, 293 F. App'x 69 (2d Cir.2008).

FN15. *See, e.g., Chavis,* 2007 WL 2903950, at *9 ("The focus of a disciplinary hearing is upon the conduct of the inmate, and not that of prison officials.... While the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement [under the circumstances due to his] ... mere utterance of his claims during the course of a disciplinary hearing .... [T]here is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights or alleged retaliation for having voiced his concerns were in any way investigated by prison officials.") [citations omitted].

FN16. *See, e.g., Colon v. Furlani,* 07-CV-6022, 2008 WL 5000521, at *2 (W.D.N.Y. Nov.19, 2008) ("Colon was found guilty of harassment based on a letter that he wrote to defendant Bordinaro, concerning some of the events giving rise to his failure-to-protect claim, but it does not appear that he appealed that disposition.... While under some circumstances an inmate may be able to satisfy the exhaustion requirement by appealing from a disciplinary hearing decision ..., plaintiff did not do so

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

here, and this claim is therefore barred under the PLRA.") [citations omitted]; *Cassano v. Powers,* 02-CV-6639, 2005 WL 1926013, at *5 (W.D.N.Y. Aug.10, 2005) ("[E]ven assuming plaintiff believed that his proper recourse was to raise [his] complaint at his disciplinary hearing, rather than using the Inmate Grievance Program, he did not exhaust that process. That is, plaintiff has not provided any evidence that he appealed his Tier III hearing conviction. Since plaintiff did not pursue the disciplinary appeal process, he can not have made submissions in the disciplinary process that were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a).") [internal quotation marks and citation omitted].

**\*4** Finally, two points bear mentioning regarding exhaustion. First, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies. *See, e.g., Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, \*4 (S.D.N.Y. July 25, 2008). However, once a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then "counter" Defendants' assertion by showing exhaustion, unavailability, estoppel, or "special circumstances." [FN17]

FN17. *See Hemphill,* 380 F.3d at 686 (describing the three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to "counter" defendants' contention that the prisoner failed to exhaust his available administrative remedies under the PLRA); *Verley v. Wright,* 02-CV-1182, 2007 WL 2822199, at *8 (S.D.N.Y. Sept.27, 2007) ("[P]laintiff has failed to demonstrate that the administrative remedies were not, in fact, 'actually available to him.' "); *Winston v.*

*Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (finding that the plaintiff "failed to meet his burden under *Hemphill* of demonstrating 'special circumstances' "); *see also Ramirez v. Martinez,* 04-CV-1034, 2009 WL 2496647, at *4 (M.D.Pa. Aug.14, 2009) ("In order to effectively oppose defendants' exhaustion argument, the plaintiff has to make a showing in regard to each of his claims."); *Washington v. Proffit,* 04-CV-0671, 2005 WL 1176587, at *1 (W.D.Va. May 17, 2005) ("[I]t is plaintiff's duty, at an evidentiary hearing, "to establish by a preponderance of the evidence that he had exhausted his administrative remedies or that any defendant had hindered or prevented him from doing so within the period fixed by the Jail's procedures for filing a grievance.").

Second, the Court recognizes that there is case law from within the Second Circuit supporting the view that the exhaustion issue is one of fact, which should be determined by a jury, rather than by the Court.[FN18] However, there is also case law from within the Second Circuit supporting the view that the exhaustion issue is one of law, which should be determined by the Court, rather than by a jury.[FN19] After carefully reviewing the case law, the Court finds that the latter case law-which includes cases from the Second Circuit and this District-outweighs the former case law.[FN20] (The Court notes that the latter case law includes cases from the Second Circuit and this District.) [FN21] More importantly, the Court finds that the latter cases are better reasoned than are the former cases. In particular, the Court relies on the reasons articulated by the Second Circuit in 1999: "Where administrative remedies are created by statute or regulation affecting the governance of prisons, ... the answer depends on the meaning of the relevant statute or regulation." *Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999). The Court relies also on the several reasons articulated by Judge Richard A. Pos-

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

ner in a recent Seventh Circuit decision: most notably, the fact that the exhaustion-of-administrative-remedies inquiry does not address the merits of, or deadlines governing, the plaintiff's claim but an issue of "judicial traffic control" (i.e., what forum a dispute is to be resolved in), which is never an issue for a jury but always an issue for a judge. *See Pavey v. Conley,* 544 F.3d 739, 740-42 (7th Cir.2008) (en banc), *cert. denied, --- U.S. ----,* 129 S.Ct. 1620, 173 L.Ed.2d 995 (2009). The Court notes that the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits appear to agree with the ultimate conclusion of the Second and Seventh Circuits that the exhaustion issue is properly decided by a judge, not a jury.[FN22]

FN18. *See, e.g., Lunney v. Brureton,* 04-CV-2438, 2007 WL 1544629, at *10 n. 4 (S.D.N.Y. May 29, 2007) ("There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury. As the Supreme Court has recently affirmed, however, exhaustion is an 'affirmative defense,' much like a statute of limitations defense. Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that 'issues of fact as to the application of that defense must be submitted to a jury.' Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court."); *Finch v. Servello,* 06-CV-1448, 2008 WL 4527758, at *8 n. 5 (N.D.N.Y. Sept.29, 2008) (McAvoy, J.) (citing *Lunney* and noting that "it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court").

FN19. *See, e.g., Harrison v. Goord,* 07-CV-1806, 2009 WL 1605770, at *7 n. 7 (S.D.N.Y. June 9, 2009) (recognizing that

"[t]here is authority ... for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide ...."); *Amador v. Superintend. of Dept. of Corr. Servs.,* 03-CV-0650, 2007 WL 4326741, at *5 n. 7 (S.D.N.Y. Dec.4, 2007) ("It is unclear whether factual disputes regarding the exhaustion defense should ultimately be decided by the court or by a jury.... [T]here is ... case law ... supporting the view that exhaustion should be determined by the court and not a jury."), *appeal pending,* No. 08-2079-pr (2d Cir. argued July 15, 2009).

FN20. *See, e.g., Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438 (E.D.N.Y.2009) (noting that the magistrate judge held an evidentiary hearing "on the issue of exhaustion"); *Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *3 n. 2 (S.D.N.Y. July 25, 2008) (finding that "the better approach is for the judge, and not the jury, to decide any contested issues of fact relating to the defense of failure to exhaust administrative remedies."); *Amador,* 2007 WL 4326741, at *5 n. 7 ("[T]here is ... case law, which in my view is more persuasive and on point, supporting the view that exhaustion should be determined by the court and not a jury. I find it proper that this issue be decided by the court."); *Enigwe v. Zenk,* 03-CV-0854, 2006 WL 2654985, at *4 (E.D.N.Y. Sept.15, 2006) (finding that, at the summary judgment "stage of the proceedings, a genuine question of fact exists with respect to whether [plaintiff] should be excused from exhausting his administrative remedies with regard to claims relating to his confinement at MDC Brooklyn," and therefore "direct[ing] that a hearing be held" before a judge, to resolve this issue); *Dukes v. S.H.U. C.O. John Doe # 1,* 03-CV-4639,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering an "evidentiary hearing [before a judge] on the issue of whether prison officials failed to assign grievance numbers to [plaintiff]'s grievances and, if so, whether that rendered further administrative remedies unavailable, estopped the Defendants from asserting non-exhaustion, or justified [plaintiff]'s failure to appeal to the CORC"); Mingues v. Nelson, 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) ("The Court could have sua sponte dismiss[ed] this action as the record is unmistakeably clear that an appropriate administrative procedure was available to him, that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA.... In this case, plaintiff has been afforded notice and given an opportunity to respond to the exhaustion issue and his failure remains clear."); Roland v. Murphy, 289 F.Supp.2d 321, 323 (E.D.N.Y.2003) "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.") [internal quotation marks and citation omitted]; Evans v. Jonathan, 253 F.Supp.2d 505, 509 (W.D.N.Y.2003) ( "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.").

FN21. See, e.g., Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir.1999) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law. Where administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of the ad-

ministrative remedy is purely a question of law. The answer depends on the meaning of the relevant statute or regulation."), accord, Mojias v. Johnson, 351 F.3d 606, 608-11 (2d Cir.2003) (citing relevant language from Snider v. Melindez, and later stating that a district court could sua sponte dismiss a prisoner's civil rights complaint for failure to exhaust his available administrative remedies if it gave him notice and an opportunity to be heard); DeBlasio v. Moriarty, 05-CV-1143, Minute Entry (N.D.N.Y. filed Dec. 9, 2008) (McCurn, J.) (indicating that judge held pre-trial evidentiary hearing on whether plaintiff had exhausted administrative remedies before filing action); Pierre v. County of Broome, 05-CV-0332, 2007 WL 625978, at *1 n. 1 (N.D.N.Y. Feb.23, 2007) (McAvoy, J.) (noting that "[t]he court held an evidentiary hearing on October 25, 2006 concerning the issue of whether Plaintiff had exhausted administrative remedies"); Hill v. Chanalor, 419 F.Supp.2d 255, 257-59 (N.D.N.Y. March 8, 2006) (Kahn, J.) (sua sponte dismissing a prisoner's civil rights complaint, pretrial, for failure to exhaust his available administrative remedies after it gave him notice and an opportunity to be heard); Raines v. Pickman, 103 F.Supp.2d 552, 555 (N.D.N.Y.2000) (Mordue, J.) ("[I]n order for the Court to dismiss for failing to exhaust administrative remedies, the Court must be shown that such a remedy exists for an inmate beating in the grievance context. This is an issue of law for the Court to determine.").

FN22. See Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir.2002); Hill v. Smith, 186 F. App'x 271, 273-74 (3d Cir.2006); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir.2003); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 682-83 (4th Cir.2005); Dillon v. Rogers, No. 08-30419, 2010 WL 378306, at

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

*7 (5th Cir. Feb.4, 2010); *Taylor v. U.S.,* 161 F. App'x 483, 486 (6th Cir.2005); *Larkins v. Wilkinson,* 172 F.3d 48, at *1 (6th Cir.1998); *Husley v. Belken,* 57 F. App'x 281, 281 (8th Cir.2003); *Ponder v. Wackenhut Corr. Corp.,* 23 F. App'x 631, 631-32 (8th Cir.2002); *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.2003), *cert. denied,* 540 U.S. 810 (2003); *Freeman v. Watkins,* 479 F.3d 1257, 1260 (10th Cir.2007); *Alloway v. Ward,* 188 F. App'x 663, 666 (6th Cir.2006); *Bryant v. Rich,* 530 F.3d 1368, 1373-76 (11th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 733, 172 L.Ed.2d 734 (2008).

## II. ANALYSIS

As an initial matter, Plaintiff argues that he exhausted his administrative remedies regarding the claims at issue in this action, by filing a grievance regarding those claims, and then appealing the non-response to that grievance all the way to CORC. Because the Court rejects this argument based on the evidence adduced at the hearing, the Court proceeds to an analysis of the three-step exhaustion inquiry established by the Second Circuit.

### A. Availability of Administrative Remedies

*5 New York prison inmates are subject to an Inmate Grievance Program established by DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003), and *Snider v. Melindez,* 199 F.3d 108, 112-13 [2d Cir.1999] ). There are different circumstances under which the grievance procedure is deemed not to have been available to an inmate plaintiff. *Hemphill,* 380 F.3d at 687-88. For example, courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove v. Riley,* 04-CV-4587, 2007 WL 389003, at *8 (E.D.N.Y. Jan.31, 2007)

(internal citations omitted). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Hemphill,* 380 F.3d at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

Here, after carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that administrative remedies were "available" to Plaintiff during the time in question. The Court makes this finding for the following four reasons.

First, in his sworn Complaint (which has the force and effect of an affidavit), Plaintiff stated, "Yes," in response to the question, "Is there a prisoner grievance procedure at this facility ." (Dkt. No. 1, ¶ 4.a.) [FN23] Second, both Darin Williams (the corrections officer in charge of the special housing unit during the relevant time period) and Sally Reams (the Inmate grievance program supervisor during the relevant time period) testified credibly, at the exhaustion hearing, that there was a working grievance program at Great Meadow Correctional Facility during the time in question. (Hearing Tr. at 10, 12, 14-21, 40-54.) Third, Plaintiff testified, at the exhaustion hearing that, during this approximate time period (the August to November of 2000), he filed at least three other grievances Great Meadow Correctional Facility, to which he received responses from the inmate grievance clerk, the Superintendent, and CORC. (*Id.* at 154, 157-58, 169-70; *see also* Hearing Exs. D-4, D-5, P-8, P-13, P-14.) [FN24] Fourth, the Court finds the relevant portions of Plaintiff's hearing testimony regarding the grievance at issue in this action to be incredible due to various omissions and inconsistencies in that testimony, and his demeanor during the hearing. (*Id.* at 127-34.) [FN25]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

FN23. The Court notes that, in his Complaint, Plaintiff also swore that his "grievance was denied." (Dkt. No. 1, ¶ 4.b.ii.) However, during the exhaustion hearing, Plaintiff testified that he never received a response to his grievance from any member of DOCS.

FN24. In addition, the documentary evidence adduced at the hearing establishes that, in actuality, Plaintiff filed ten other grievances during this time period (and several appeals from the denials of those grievances). The first of these grievances (Grievance Number GM-30651-00), filed on August 25, 2000, regarded Plaintiff's request for medications. (Hearing Exs. D-4, D-5.) The second of these grievances (Grievance Number GM-30691-00), filed on September 1, 2000, regarded Plaintiff's request for copies. (Hearing Ex. D-4.) The third of these grievances (Grievance Number GM-30729-00), filed on September 11, 2000, regarded the use of full restrains against Plaintiff. (*Id.; see also* Hearing Ex. P-14.) The fourth of these grievances, filed on October 19, 2000 (Grievance Number GM-30901-00), regarded Plaintiff's request for the repair of his cell sink. (Hearing Exs. D-4, D-5.) The fifth of these grievances (Grievance Number GM-30901-00), also filed on October 19, 2000, regarded Plaintiff's request for the clean up of his cell. (Hearing Ex. D-4.) The sixth of these grievances (Grievance Number GM-31040-00), filed on November 17, 2000, regarded the review of records. (*Id.*) The seventh of these grievances (Grievance Number GM-31041-00), also filed on November 17, 2000, regarded Plaintiff's request for medical attention. (*Id.;* see also Hearing Ex. P-13) The eighth of these grievances (Grievance Number GM-31048-00), filed on November 20, 2000, regarded the rotation of books. (Hearing Ex. D-14) The ninth of these grievances (Grievance Number GM-31040-00), filed on November 27, 2000, regarded the review of records (and was consolidated with his earlier grievance on the same subject). (*Id.*) The tenth of these grievances (Grievance Number GM-31070-00), filed on November 27, 2000, regarded Plaintiff's eyeglasses. (*Id.*)

FN25. For example, Plaintiff was unable to identify the corrections officers to whom he handed his grievance and appeals for mailing. (*Id.* at 127-34.) Moreover, Plaintiff did not convincingly explain why the grievance and appeals at issue in this action did not make it through the mailing process, while his numerous other grievances and appeals did make it through the mailing process. (*Id.* at 154-171.) In addition, Plaintiff acknowledged that it was his belief, during this time period, that an inmate was not required to exhaust his administrative remedies in matters involving the use of excessive force; yet, according to Plaintiff, he decided to exhaust his administrative remedies on his excessive force claim anyway. (*Id.* at 148-49.)

**B. Estoppel**

After carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or by taking actions that inhibited Plaintiff's exhaustion of remedies. For example, Defendants' Answer timely asserted this affirmative defense. (Dkt. No. 35, ¶ 17.) Moreover, Plaintiff failed to offer any credible evidence at the hearing that *Defendant* s in any way interfered with Plaintiff's ability to file grievances during the time in question. (Hearing Tr. at 127-34, 157-58, 169-70.) Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administra-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

tive remedies based on the actions (or inactions) of other individuals.[FN26]

> FN26. *See Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (holding that defendants were not estopped from asserting the affirmative defense of non-exhaustion where the conduct plaintiff alleged kept him from filing a grievance-that he was not given the manual on how to grieve-was not attributable to the defendants and plaintiff "point[ed] to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies"); *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.") [emphasis in original]; *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (McAvoy, J. adopting Report-Recommendation of Lowe, M.J.) (finding defendants not estopped from raising Plaintiff's non-exhaustion as a defense based on plaintiff's allegation "that [he] was inhibited (through non-responsiveness) by [ ] unnamed officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee), and Coxsackie C.F. Deputy Superintendent of Security Graham" because plaintiff's complaint and "opposition papers ... fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters"); *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Hurd, J. adopting Report-Recommendation of Lowe, M.J.) (finding that defendants are not estopped from relying on the defense of non-exhaustion because "no evidence (or even an argument) exists that any Defendant ... inhibit[ed] Plaintiff's exhaustion of remedies; Plaintiff merely argues that a non-party to this action (the IGRC Supervisor) advised him that his allegedly defective bunk bed was not a grievable matter."); *cf. Warren v. Purcell,* 03-CV-8736, 2004 WL 1970642, at *6 (S.D.N.Y. Sept.3, 2004) (finding that conflicting statements [offered by a non-party]-that the prisoner needed to refile [his grievance] and that the prisoner should await the results of DOCS's investigation-estopped the defendants from relying on the defense on non-exhaustion, or "[a]lternatively, ... provided ... a 'special circumstance' under which the plaintiff's failure to pursue the appellate procedures specified in the IGP was amply justified."); *Brown v. Koenigsmann,* 01-CV-10013, 2005 WL 1925649, at *1-2 (S.D.N.Y. Aug.10, 2005) ("Plaintiff does not assert that Dr. Koeingsmann personally was responsible for [the failure of anyone from the Inmate Grievance Program to address plaintiff's appeal]. [However,] *Ziemba [v. Wezner,* 366 F.3d 161 (2d Cir.2004) ] does not require a showing that Dr. Koenigsmann is personally responsible for plaintiff's failure to complete exhaustion [in order for Dr. Koenigsmann to be estopped from asserting the affirmative defense of failure to exhaust administrative remedies], as long as someone employed by DOCS is. If that reading of Ziemba is incorrect, however, ... then the circumstances here must be regarded as special, and as justifying the incompleteness of exhaustion, since a decision by CORC is hardly something plaintiff could have accomplished on his

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

own.").

## C. Special Circumstances

**\*6** There are a variety of special circumstances that may excuse a prisoner's failure to exhaust his available administrative remedies, including (but not limited to) the following:

(1) The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance appeal process unavailable to him." *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendants are estopped from relying on the exhaustion defense, as well as "special circumstances" excusing plaintiff's failure to exhaust");

(2) Other individuals' "threats [to the plaintiff] of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process." *Clarke v. Thornton,* 515 F.Supp.2d 435, 439 (S.D.N.Y.2007) (noting also that "[a] correctional facility's failure to make forms or administrative opinions "available" to the prisoner does not relieve the inmate from this burden."); and

(3) When plaintiff tries "to exhaust prison grievance procedures[, and] although each of his efforts, alone, may not have fully complied, together his efforts sufficiently informed prison officials of his grievance and led to a thorough investigation of the grievance." *Hairston v. LaMarche,* 05-CV-6642, 2006 WL 2309592, at \*8 (S.D.N.Y. Aug.10, 2006).

After carefully considering the issue, the Court finds that there exists, in this action, no "special circumstances" justifying Plaintiff's failure to comply with the administrative procedural requirements. Construed with the utmost of special leniency, Plaintiff's hearing testimony, and his counsel's

cross-examination of Defendants' witnesses, raise the specter of two excuses for not having exhausted his available administrative remedies before he (allegedly) mailed his Complaint in this action on August 14, 2003:(1) that exhaustion was not possible because of the administrative procedures that DOCS has implemented regarding inmate grievances; and/or (2) that an unspecified number of unidentified corrections officers (who are not Defendants in this action) somehow interfered with the delivery of his grievance and appeals. For example, Plaintiff testified at the exhaustion hearing that he handed his grievance and appeals to various corrections officers making rounds where he was being housed, and that, if his grievance and/or appeals were never received, it must have been because his letters were not properly delivered. (Hearing Tr. at 126-36.)

With regard to these excuses, the Court finds that, while these excuses could constitute special circumstances justifying an inmate's failure to exhaust his available administrative remedies in certain situations,[FN27] these excuses are not available to Plaintiff in the current action because, as stated in Part II.A. of this Decision and Order, the credible testimony before the Court indicates that Plaintiff did not hand his grievance and appeals to various corrections officers with regard to the claims in question. *See, supra,* Part II.A. of this Decision and Order.[FN28]

FN27. *See, e.g., Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "refusal to accept or forward plaintiff's appeals ... effectively render[s] the grievance appeal process unavailable to him").

FN28. The Court notes that, even if Plaintiff did (as he testified) hand to a corrections officer for mailing a letter to the Superintendent on September 13, 2000, appealing from the IGRC's failure to decide his grievance of August 22, 2000, within nine working days (i.e., by September 5, 2000), it appears that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

> such an appeal would have been filed two
> days too late under DOCS Directive 4040,
> which requires that appeal to be filed within
> four working days of the IGRC's failure to
> decide his grievance (i.e., by September 11,
> 2000). (*See* Hearing Tr. 127-34; Hearing Ex.
> P-1, at 5-7 [attaching ¶¶ V.A, V.B. of DOCS
> Directive 4040, dated 6/8/98].)

**\*7** For all these reasons, the Court finds that Plaintiff's proffered excuse does not constitute a special circumstance justifying his failure to exhaust his available administrative remedies before filing this action.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 10) is ***DISMISSED* in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

N.D.N.Y.,2010.
Murray v. Palmer
Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Cedric PARTEE, Plaintiff,
v.
Glenn GROOD, Commissioner of the New York State
Department of Correctional Service, Lester N. Wright,
Dental Director of New York State Department of
Correctional Serv., William J. Connoll, Superinten-
dent of Fishkill Correctional Facility, L. Zwillinger,
Regional Health Administrator at Fishkill Correc-
tional Facility, and Mary D'Silva, Dentist at Fishkill
Correctional Facility, Defendants.

No. 06 Civ. 15528(SAS).
July 25, 2007.

Cedric Partee, Fishkill Correctional Facility, Beacon,
New York, Plaintiff pro se.

Benjamin Lee, Assistant Attorney General, New
York, NY, for Defendants.

*OPINION AND ORDER*
SCHEINDLIN, J.
I. INTRODUCTION
**\*1** Cedric Partee, an inmate of the New York
State Department of Correctional Services ("DOCS"),
proceeding pro se, brings suit under section 1983 of
Title 42 of the United States Code against Glenn
Goord,[FN1] Lester N. Wright, William J. Connolly,[FN2]
and Lawrence Zwillinger, all of whom are present or
former DOCS employees, and Mary D'Silva, a dentist
at Fishkill Correctional Facility (collectively, "De-
fendants"). Partee alleges that all of the defendants
acted with deliberate disregard for his medical needs

in violation of his rights under the Eighth and Four-
teenth Amendments.[FN3] He seeks an award of
$100,000 against each defendant.[FN4]

> FN1. Former Commissioner Goord is sued
> incorrectly herein as "Glenn Grood."

> FN2. Superintendent Connolly is sued in-
> correctly herein as "William J. Connoll."

> FN3. *See* Complaint ("Compl.") ¶¶ II(D), V.

> FN4. *See id.* ¶ V.

Defendants now move to dismiss the lawsuit
based on Partee's failure to exhaust administrative
remedies.[FN5] Defendants additionally move to dismiss
the claims against Goord, Zwillinger, Connolly and
Wright, claiming qualified immunity and lack of
personal involvement, and, with regard to Goord and
Zwillinger, for failure to state a claim.[FN6] For the
reasons below, defendants' motion is granted and this
case is dismissed.

> FN5. *See* 42 U.S.C.1997e(a).

> FN6. *See* Fed.R.Civ.P. 12(b)(6).

II. FACTS [FN7]

> FN7. The following factual allegations, taken
> from the Complaint, are accepted as true for
> purposes of this motion.

In April of 2003, while Partee was being housed
as a prisoner in Clinton Correctional Facility, his
dentures were damaged as a result of "self adjust-
ment." [FN8] Dr. Afzal, an employee of the Clinton

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

Correctional Facility, submitted a request to the "Central Office Director of Dental Services" for Partee to receive new dentures, which was denied because Partee was "ineligible to receive new dentures until 4/12/06."[FN9] On April 17, 2003, Partee filed a grievance through the DOCS Inmate Grievance Program ("IGP"), requesting that his denture be repaired. After two unfavorable decisions, Partee was advised by the CORC that, as his own "self adjustment to [the] denture rendered it irreparable[,]" he would either have to pay for a replacement denture at his own expense, or wait until April 12, 2006, when he would be eligible for a new set of dentures at DOCS's expense.[FN10]

> **FN8.** 6/11/03 Central Office Review Committee Determination ("CORC Determination"), Ex. A to Compl. at p. 2.

> **FN9.** 7/3/06 Letter from Plaintiff to William J. Connolly ("Connolly Letter"), Ex. B. to Compl., at p. 1.

> **FN10.** CORC Determination at p. 2.

In September of 2003, Partee was transferred to Attica Correctional Facility.[FN11] While there, Partee underwent dental surgery on July 26, 2005, and some of his upper teeth were extracted "based on a dental diagnosis."[FN12] Three months later, in November of 2005, Partee was scheduled to have impressions of his remaining teeth taken in preparation for new dentures.[FN13] Before the impressions were taken, he was transferred to Gowanda Correctional Facility "because his classification had dropped."[FN14] At Gowanda, Partee was placed on a six-month waiting list to have the impressions taken, but before his turn came, he was again transferred, this time to Fishkill Correctional Facility.[FN15] On May 28, 2006, at Fishkill, Partee was seen by Dr. D'Silva, who advised Partee that there was "no bone to hold [his] teeth," and that no impression would be taken unless he allowed D'Silva to remove his remaining upper teeth.[FN16] Partee re-

fused to consent to the extraction of his teeth and remains without dentures.[FN17] As a result, Partee has suffered pain and an "inability to engage in normal activities, such as eat properly [sic]."[FN18]

> **FN11.** *See* Compl. ¶ II(D).

> **FN12.** *Id.*

> **FN13.** *See id.*

> **FN14.** Connolly Letter at 1.

> **FN15.** *See* Compl. ¶ II(D).

> **FN16.** Connolly Letter at 1.

> **FN17.** *See* 6/29/06 Grievance, Ex. A to Compl., at 1 (requesting that dental work be completed).

> **FN18.** Plaintiff's Traverse ¶ 6.

**\*2** On June 29, 2006, Partee filed grievance # 28014-06, through the IGP, against D'Silva, requesting that his "dential [sic] work be completed without the added opinion of Dr. D'Silda [sic]...."[FN19] After a hearing, the Inmate Grievance Review Committee ("IGRC") rendered a decision, denying Partee's grievance.[FN20] The IGRC concluded that Partee's "requested action [was] beyond the purview of the IGRC."[FN21] The cover sheet to the IGRC decision stated that if Partee wished to appeal the decision, he would have to do so by April 17, 2006-a date which had passed three months earlier.[FN22] Partee subsequently submitted typed letters to Lester N. Wright, Deputy Commissioner and Chief Medical Officer of DOCS,[FN23] and William J. Connolly, then-Superintendent at Fishkill Correctional Facility,[FN24] complaining about Dr. D'Silva's refusal to provide dentures unless Partee first agreed to allow the

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

extraction of his upper teeth. The letter to Wright requested that Dr. D'Silva be directed to complete Partee's impressions. [FN25] Partee's letter to Connolly accused Dr. D'Silva of racism and demanded that an investigation be conducted against her.[FN26] Partee did not formally appeal the IGRC decision on grievance # 28014-06.[FN27] Instead, he commenced the instant action on October 4, 2006.[FN28]

FN19. 6/29/06 Grievance at 1.

FN20. *See* 7/11/06 Memorandum, Ex. A to Compl., at 4.

FN21. *Id.*

FN22. *See id.* at 3

FN23. *See* 6/28/06 Letter from Plaintiff to Letter N. Wright ("Wright Letter"), Ex. C to Compl., at 1-2.

FN24. *See* Connolly Letter at 1-3.

FN25. Wright Letter at 2.

FN26. *See* Connolly Letter at 2.

FN27. *See* Compl. ¶ IV(F)(3).

FN28. *See id.* at 7.

## III. LEGAL STANDARDS

## A. Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary...." [FN29] When a complaint is attacked by a Rule 12(b)(6) motion to dismiss, the plaintiff need not provide "detailed factual allegations." [FN30] To survive a motion to dismiss, it is enough that the complaint "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." [FN31]

FN29. *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007).

FN30. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007).

FN31. *Id.*

When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff's complaint, which are accepted as true, as well as "documents relied on or incorporated by reference in the complaint." [FN32] To survive dismissal, the allegations in the complaint must meet the standard of "plausibility." [FN33] A complaint must "amplify a claim with some factual allegations ... to render the claim *plausible.*" [FN34] In other words, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " [FN35] Thus, while a court must take the plaintiff's allegations as true, "the claim may still fail as a matter of law if it appears ... that the plaintiff can prove no set of facts in support of its claim which would entitle [him] to relief, or if the claim is not legally feasible." [FN36]

FN32. *International Design Concepts, LLC v. Saks, Inc.,* 486 F.Supp.2d 229, 235-36 (S.D.N.Y.2007).

FN33. *Bell Atlantic,* 550 U.S. 544, 127 S.Ct. at 1970.

FN34. *Iqbal v. Hasty,* No. 05 Civ. 5768, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) (holding that the plaintiff's complaint ade-

quately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11).

FN35. *ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 2007 WL 1989336, at *5 (2d Cir. July 11, 2007) (quoting *Bell Atlantic,* 551 U.S. __, 127 S.Ct. at 1965).

FN36. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 457 F.Supp.2d 455, 459 (S.D.N.Y.2006) (citing *Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir.2006)).

B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions.[FN37] The PLRA's exhaustion requirement is mandatory.[FN38] Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all."* [FN39] Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time of the initial filing, given that "[s]ubsequent exhaustion after suit is filed ... is insufficient."[FN40] Moreover, the exhaustion of administrative remedies must be *proper*-that is, in compliance with a prison grievance program's deadlines and other critical procedural rules-in order to suffice.[FN41] The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[FN42]

FN37. *See* 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with

respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

FN38. *See Porter v. Nussle,* 534 U.S. 516, 516 (2002). *See also Booth v. Churner,* 532 U.S. 732, 739 (2001).

FN39. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) (quotation marks and citation omitted).

FN40. *Id.*

FN41. *See Woodford v. Ngo,* 126 S.Ct. 2378, 2386-87 (2006).

FN42. *Porter,* 534 U.S. at 532.

**\*3** Before bringing suit in federal court, an inmate must fully present his claim for internal resolution within the correctional facility and the DOCS. The DOCS grievance procedure is the IGP, which consists of three tiers. [FN43] *First,* the inmate files a grievance with the Grievance Clerk, and the grievance will be decided by the IGRC.[FN44] An adverse decision from the IGRC may be appealed to the Superintendent of the facility.[FN45] Finally, adverse decisions at the Superintendent level can be appealed to the CORC.[FN46] In order to survive a motion to dismiss, an inmate/plaintiff must have fully exhausted administrative remedies at all levels of appeal. [FN47] Thus, an inmate/plaintiff's claim is not exhausted until he appeals to the CORC and receives a final decision regarding his grievance.

FN43. *See Hemphill v. New York,* 380 F.3d 680, 682 (2d Cir.2004).

FN44. *See* 7 N.Y. Comp.Codes R. & Regs.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

§§ 701.5(a) & (b).

FN45. *See id.* § 701.5(c).

FN46. *See id.* § 701.5(d).

FN47. *See Mendez v. Artuz,* No. 01 Civ. 4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) ("[T]he exhaustion requirement is not satisfied until the administrative process has reached a final result.").

The Second Circuit has, however, recognized that in certain situations a prisoner who fails to fully exhaust administrative remedies may survive a motion to dismiss.[FN48] In *Hemphill v. New York,* the court announced a three-part inquiry "appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA."[FN49] Examining the complaint, the court must ask:

FN48. *See Hemphill,* 380 F.3d at 687-90.

FN49. *Id.* at 686.

[*First,*] whether administrative remedies were in fact 'available' to the prisoner. [*Second* ], ... whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. [*Third* ], [i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.[FN50]

FN50. *Id.*

"What constitutes justification in the PLRA context 'must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." '[FN51] If the court determines that the inmate plaintiff was indeed justified in failing to exhaust-and exhaustion can no longer be achieved because administrative remedies are no longer available-this shortcoming is excused, and the suit may proceed.[FN52]

FN51. *Brownell v. Krom,* 446 F.3d 305, 312 (2d Cir.2006) (quoting *Giano v. Goord,* 380 F.3d 670, 675-76 (2d Cir.2004)).

FN52. *See Giano,* 380 F.3d at 676.

C. Constitutional Standard: The Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. This prohibition has been interpreted to "[impose] a duty on prison officials to ensure that inmates receive adequate medical care."[FN53] To establish an Eighth Amendment violation arising out of the denial of medical care, a plaintiff must prove that defendants were deliberately indifferent to his serious medical needs.[FN54] The deliberate indifference standard contains both an objective and subjective prong.[FN55] Under the objective prong, an inmate must prove "that the deprivation alleged is 'objectively sufficiently serious' such that plaintiff was denied 'the minimal civilized measure of life's necessities." '[FN56] This includes " 'not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." '[FN57] The condition, however, must be "one of urgency that may produce death, degeneration, or extreme pain."[FN58] The subjective prong requires a showing that defendant "possessed a 'sufficiently culpable state of mind." '[FN59] The level of culpability must be something "more than negli-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

gence, but less than conduct undertaken for the very purpose of causing harm." [FN60] Thus, deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." [FN61]

FN53. *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006).

FN54. *See Trammell v. Keane,* 338 F.3d 155, 161-62 (2d Cir.2003).

FN55. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

FN56. *Trammell,* 338 F.3d at 162 (quoting *Farmer,* 511 U.S. at 834).

FN57. *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003) (quoting *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977)). *Accord Brady v. Griffith,* No. 95 Civ. 2364, 1998 WL 8146, at *3 (S.D.N.Y. Nov. 23, 1998).

FN58. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994).

FN59. *Trammell,* 338 F.3d at 162 (quoting *Farmer,* 511 U.S. at 837).

FN60. *Hathaway,* 37 F.3d at 66.

FN61. *Farmer,* 511 U.S. at 847.

## IV. DISCUSSION

**\*4** The instant motion presents two issues: (1) whether Partee's admitted failure to exhaust administrative remedies can be justified, such that his federal claims should be permitted to proceed, and (2) if Partee's failure to exhaust can be justified, whether the

allegations in the Complaint succeed in stating a viable claim.

## A. Special Circumstances and the Failure to Exhaust

Partee pursued his administrative grievance against Dr. D'Silva through the IGRC level, but did not appeal the adverse decision to the CORC. Such a failure to exhaust typically results in dismissal of the complaint. Partee, however, has alleged "special circumstances" which may serve to excuse this deficiency. [FN62] Specifically, Partee points out that the IGRC decision held that "[t]he grievant's requested action is beyond the purview of the IGRC." [FN63] Partee argues that he reasonably understood this decision to mean that his dispute with Dr. D'Silva was not grievable and that "if the grievance personnel say it's not grievable, then Plaintiff should be protected from having a court say later that the Plaintiff should have grievanced [sic] it." [FN64]

FN62. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.Opp.") at 3-4.

FN63. 7/11/06 Memorandum at 4.

FN64. Pl. Opp. at 3.

The circumstances surrounding Partee's failure to exhaust are similar to those found in *Giano v. Goord.* In that case, the Inmate/Plaintiff brought suit without first exhausting because he misread DOCS regulations and concluded that administrative redress was foreclosed as to one of his grievances when in fact it was not.[FN65] When the defendants in *Giano* asserted failure to exhaust as a ground for dismissal, the Second Circuit held that although Giano had "read DOCS regulations incorrectly, his interpretation was hardly unreasonable." [FN66] Noting that the standard by which a proffered justification should be evaluated is whether the circumstances "might understandably lead usually uncounselled prisoners to fail to grieve in the normally

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

required way[,]" the court found Giano's failure to exhaust to be justified.[FN67] Similarly, an uncounselled prisoner might understandably fail to properly appeal his grievance to the CORC level when the IGRC decision itself declares the grievance to be outside the "purview of the IGRC." [FN68] Therefore, Partee's failure to fully exhaust his claims in grievance # 28014-06 as required by the PLRA is justified.

> FN65. *See* 380 F.3d at 674.

> FN66. *Id.* at 679.

> FN67. *Id.*

> FN68. 7/16/06 Memorandum at 4.

The next question, then, is whether administrative remedies are still available to Partee (in which case dismissal without prejudice is proper) or whether administrative remedies are unavailable to him (in which case the suit should continue on to the merits).[FN69] The IGP rules mandate that "[i]f the grievant ... wishes to appeal to the superintendent, he or she must complete and sign the appeal section on the IGRC response form ... and submit it to the grievance clerk *within seven calendar days* after receipt of the IGRC's written response." [FN70] As any appeal by Partee is now time-barred, he no longer has administrative remedies available.

> FN69. *See Giano,* 380 F.3d at 679-80.

> FN70. 7 N.Y. Comp.Codes R. & Regs. § 701.5(c)(1).

B. Deliberate Indifference and Failure to State a Claim

1. Dr. D'Silva

> **\*5** In order to state a claim for deliberate indif-

ference, Partee must allege facts indicating that a substantial risk of serious harm would arise from the denial of the requested dental care-i.e. new dentures-and that the defendants perceived this risk and chose not to provide the requested treatment. Partee has satisfied the first requirement. As the Second Circuit held in *Chance v. Armstrong,* insufficient dental treatment may rise to the level of a Constitutional violation if it leads to extreme pain, deterioration of the teeth, and an inability to eat properly.[FN71] Partee has alleged "pain, loss of teeth, discomfort, ... infection and life threatening complications [ ]" as a result of Dr. D'Silva's refusal to provide dentures without first extracting Partee's teeth.[FN72] Taking these allegations to be true, the negative consequences alleged are "sufficiently serious" to satisfy the objective component of the deliberate indifference standard.

> FN71. 143 F.3d 698, 703 (2d Cir.1998).

> FN72. Compl. ¶ III.

On the other hand, Partee has not satisfied the subjective component of the deliberate indifference standard. Partee's allegations, in fact, show that D'Silva perceived Partee's need for dentures and offered to take the impressions necessary to provide them.[FN73] The allegation that D'Silva refused to provide the dentures unless she was allowed to extract Partee's upper teeth indicates not deliberate indifference to Partee's dental needs, but rather a medical determination that *additional* treatment was necessary.[FN74]

> FN73. *See* 6/29/06 Grievance at 1.

> FN74. *See id.*

Partee's allegations, at bottom, reflect his opinion that the course of treatment prescribed by Dr. D'Silva was incorrect, and that the impressions should have been taken without first extracting Partee's teeth. The

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
(Cite as: 2007 WL 2164529 (S.D.N.Y.))

Second Circuit has long held that " '[t]he prisoner's right is to medical care-not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under section 1983." ' [FN75] Moreover, Partee's assertion that the dentists who saw him at Clinton Correctional Facility and Gowanda Correctional Facility did not reach the same conclusion as D'Silva also fails to transform D'Silva's actions into a constitutional violation.[FN76] *First,* six months elapsed between the last time Partee was seen by a dentist and his visit to D'Silva, during which time Partee's dental condition could have changed.[FN77] *Second,* even if D'Silva's diagnosis was incorrect, Partee has only stated a claim for negligence or medical malpractice, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." [FN78] The proper venue for Partee's claim against D'Silva, therefore, is state court. Accordingly, the Complaint is dismissed as to defendant D'Silva.

FN75. *U.S. ex rel. Hyde v. McGinnis,* 429 F.2d 864, 868 (2d Cir.1970) (quoting *Coppinger v. Townsend,* 398 F.2d 392, 394 (10th Cir.1968)).

FN76. *See* Compl. ¶ II(D).

FN77. *See id.*

FN78. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

2. Defendants Zwillinger, Connolly, and Wright

The Complaint makes no allegations showing deliberate indifference by defendants Zwillinger, Connolly, and Wright. The only allegation made as to these defendants is that they were "informed [of Partee's situation] and took no action whatsoever." [FN79] In this Circuit, a "plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of *respondeat superior* does not apply to § 1983 actions." [FN80] Even if the allegations showed deliberate indifference on D'Silva's part, a prison official "cannot be held liable on the sole basis that he did not act in response to letters of protest...." [FN81] Moreover, as discussed above, Partee has failed to allege a constitutional violation. The Complaint is accordingly dismissed as to Defendants Zwillinger, Connolly, and Wright.

FN79. Compl. ¶ II(D).

FN80. *Watson v. McGinnis,* 964 F.Supp. 127 (S.D.N.Y.1997) (compiling cases stating personal involvement requirement).

FN81. *Smart v. Goord,* 441 F.Supp.2d 631, 643 (S.D.N.Y.2006) (citing *Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995)).

3. Defendant Goord

**6** Partee alleges that, in addition to "[taking] no action" after being informed of Partee's situation, former Commissioner Goord further violated Partee's constitutional rights by being "responsible for the policy that resulted in Plaintiff being up-rooted from one facility and transferred to another while undergoing medical procedures and each time being placed at the end of a new list for at least six months or more...." [FN82] *First,* Partee's deliberate indifference claim against Goord is dismissed for lack of personal involvement and the failure to allege a constitutional violation. *Second,* Partee's claim that the DOCS transfer policy violates his constitutional rights has not been fully grieved through the IGP. The "special circumstances" which served to justify Partee's failure to exhaust his deliberate indifference claim do not apply to this transfer claim, as no mention of unconstitutional transfer procedures was made in IGP Grievance # 28014-06. Therefore, the Complaint must be dis-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

missed as to defendant Goord for failure to exhaust administrative remedies before bringing suit as required by the PLRA.[FN83]

> FN82. Plaintiff's Traverse ¶ 6.

> FN83. Plaintiff's Fourteenth Amendment claim, which consists entirely of an assertion of a right "to expect equal protection of the law to in include [sic] due process in prison administrative proceeding," must also be dismissed for failure to exhaust. Compl. ¶ V.

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted and this case is dismissed. The Clerk of the Court is directed to close this motion [Docket # 10] and this case.

SO ORDERED:

S.D.N.Y.,2007.
Partee v. Grood
Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201
**(Cite as: 2013 WL 4455412 (W.D.N.Y.))**

H

United States District Court,
W.D. New York.
Marc SEPANSKI, Plaintiff,
v.
JANI–KING, INC., and Jani–King of Buffalo, Inc.,
Defendants.

No. 10–CV–518S.
Aug. 16, 2013.

Harvey P. Sanders, Sanders & Sanders, Cheektowaga, NY, for Plaintiff.

Cheryl Smith Fisher, Magavern, Magavern & Grimm, Buffalo, NY, Michael P. Royal, Fisher & Phillips LLP, Dallas, TX, for Defendants.

**DECISION AND ORDER**
WILLIAM M. SKRETNY, Chief Judge.

**I. INTRODUCTION**

**\*1** Plaintiff, Marc Sepanski, alleges that his former employer, Jani–King, Inc. and JaniKing of Buffalo, Inc., discriminated against him on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.* and New York State Human Rights Law ("NYSHRL") Section 296. Currently before this Court is Defendants' motion for summary judgment and Defendants' separate motion to strike several aspects of Plaintiff's response to that motion. For the following reasons, Defendants' motion to strike is granted in part and denied in part; and their motion for summary judgment is granted.

**II. BACKGROUND**
**A. Facts**[FN1]

> FN1. This Court has accepted facts in each party's statement of undisputed facts (re-

ferred to as "Pl.'s Stm nt." and "Defs.' Stm nt." respectively) to the extent that they have not been controverted by the opposing party. *See* Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

In February of 2005 Marc Sepanski, a male, was hired as the assistant operations manager for Jani–King of Buffalo, a wholly owned subsidiary of Jani–King, Inc., located in Amherst New, York. (Defs.' Stmnt., ¶ 7; Docket No. 27–3; Patrick Aff., ¶ 3; Docket No. 8–2; Speanksi Aff., ¶ 4; Docket No. 35–1.) It offers commercial cleaning and janitorial services to local businesses. (Defs.' Stmnt., ¶ 5.) Diane Honeck, a woman who was hired in July 2005 as the Operations Manager, supervised Sepanski. (*Id.,* ¶ 15.) It appears that the two got along until late December of 2005, when Honeck allegedly made the following remarks to Sepanski: "Why don't you grow some balls" and "how did you and the wife ever have kids if you don't have any balls." (*Id.,* ¶ 19.) At least from that point on, Sepanski and Honeck had a contentious relationship. In an affidavit submitted to this Court in opposition to the motion for summary judgment, Sepanski alleges that Honeck mocked men, and especially Sepanski, "essentially daily." (Sepanski Aff., ¶ 6; Docket No. 35–1.) But at his deposition, Sepanski recounted only three additional specific incidents of alleged harassment.

In February of 2006, during a morning meeting, Honeck called men "worthless" and blamed a mess in the break room on Sepanski because he was a man. "Typical men," she said, "make a mess." From that day on, according to Sepanski, she "stayed on [his] case about it." (Sepanski Dep., 18:5–13, 22; Docket No. 27–4.)

Shortly after that incident, Honeck called men and cats "the worst thing God created." (*Id.,* 19: 2–5.)

Last, on Wednesday, March 8, 2006, Sepanski

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201
**(Cite as: 2013 WL 4455412 (W.D.N.Y.))**

returned to the office at about 4:30 p.m. and before he was "even inside the door, [Honeck] started screaming at me about men." She said, "men can get away with anything, right, Marc." (*Id.,* 23:15–20.) At this point, Sepanski had "had enough," and voiced complaints about Honeck to Joseph Stein, the regional director and head of the Jani–King of Buffalo office. *Id.* This was the third time that Sepanski complained about Honeck. Previously, he twice complained to Kimberly Hout, the office manager, and, as a result of these conversations, Honeck had apparently been reprimanded. (Defs.' Stmnt., ¶ 27.)

From there, the course of events take a strange, and largely unexplained turn. After complaining about Honeck, Stein told Sepanski to take Thursday and Friday of that week off and that Sepanski should contact him on Monday. In the interim, Stein would handle the problem with Honeck. (Sepanski Dep., 31:12–15.) Sepanski did as he was instructed, but when he called on Monday, Stein did not answer the phone. It turns out that, in the course of just a couple of days, Stein had fired Honeck and shortly after that, Jimmy Petrick, the executive director for Jani–King International, Inc., the parent of Jani–King, Inc., flew in from Texas and fired Joe Stein for "lack of performance of growing revenue and selling franchises." (Petrick Dep., 27:11; Petrick Aff ., ¶ 2; Docket No. 8–2.)

***2** At some point around this time, Petrick instructed Hout, the office manager, and her daughter, Corine Consiglio, another Jani–King of Buffalo employee,[FN2] to locate Sepanski. According to Petrick, after placing several calls and visiting his house, they were unable to do so. (Petrick Dep., 17:11–18.) Thus, believing that Sepanski was absent from work without leave, Petrick fired Sepanski. (*Id.,* 16:16–20.) [FN3] Oddly, Sepanski learned of his firing through Hout, who told him that Petrick did not "want [him] back in the building." Sepanski took Hout at her word—he never inquired any further—and met her at a local McDonald's to give back his office keys and a com-

pany cell phone. (Sepanski Dep., 33:15–20.)

> FN2. It appears that these four—Hout, Consiglio, Honeck, and Stein—were only people who worked at the Amherst Office with Sepanski.

> FN3. Sepanski, however, testified that Hout told him that she told Petrick that Sepanski had been on vacation. But this Court has not been presented with any admissible testimony from Hout herself.

In an even stranger twist, Hout compiled the papers documenting Sepanski's removal from the company and, in the "Exit Report," marked the "type of separation" as "resignation." Petrick signed the form, but crossed out the box indicating "without reservation," which Hout had checked, and instead checked the box indicating "with some reservation" because "he had never met Mr. Sepanski." (Petrick Dep., 19:22.) Petrick goes on to explain, "If he would have just come in and talked, I would have filled out the form differently, probably." (*Id.,* 20:3–4.) Sepanski sharply disputes any characterization of his removal as a "resignation"; he believes he was fired.

Stranger still, Petrick then reinstated Honeck sometime during the next week (*id.,* 29:12–13), only to fire her several months later because of her "negative attitude towards several franchise owners," (*id.,* 29:23).

Sepanski never again worked for Jani–King. On January 3, 2007, he filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") against JaniKing, Inc. Subsequently, on March 23, 2010, the EEOC mailed Sepanski his "right-to-sue" letter, authorizing Sepanski to bring this suit in federal court.

**B. Procedural History**

Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201
**(Cite as: 2013 WL 4455412 (W.D.N.Y.))**

Sepanski filed a complaint with this Court on June 21, 2010. (Docket No. 1.) On November 22, 2010, Defendants moved to dismiss the case or transfer it to a district court in Texas. After full briefing, this Court denied that motion on September 30, 2011. (Docket No. 16.) Defendants then answered the complaint, the parties conducted discovery, and on December 12, 2012, Defendants' filed the motion for summary judgment. After Sepanski filed his responsive papers, Defendants moved to strike several aspects of those papers on February 20, 2013. Briefing on that motion concluded on March 21, 2013, at which time this Court took both motions under consideration.

### III. DISCUSSION
**A. Defendants' Motion to Strike**

One aspect of Defendants' motion to strike is intertwined with their motion for summary judgment, and, as such, it will be addressed in connection with that motion. But another component of the motion to strike requires immediate discussion.

In his response to Defendants' motion for summary judgment, Sepanski filed three letters authored by Kimberly Hout, Joseph Stein, and Corine Consiglio, all of whom worked with Sepanski during the relevant time period. According to Sepanski, these letters were drafted to support his application for unemployment benefits. They are, however, merely signed by a notary—they are neither sworn, nor are their contents stated to be true and correct, nor are they stated under penalty of perjury. For this reason, they do not constitute competent evidence. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 65–66 (2d Cir.1999) (noting that the Second Circuit has "held that a district court should disregard an unsworn letter in ruling on a summary judgment motion"); *Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir.1988); *Marino v. Jonke,* No. 11 CV 430 VB, 2012 WL 1871623, at \*4 (S.D.N.Y. Mar.30, 2012); *see also DeMars v. O'Flynn,* 287 F.Supp.2d 230, 242 (W.D.N.Y.2003) (quoting *Flowers v. Abex Corp.,* 580 F.Supp. 1230, 1233 n. 2

(N.D.Ill.1984)) ("Merely notarizing the signature does not transform a letter into an affidavit"). Sepanski urges this Court to accept the letters because lying to the New York State Unemployment Insurance Board "could constitute fraud." (Pl.'s Mem. in response to Motion to Strike, at 5; Docket No. 42.) But he provides no authority for the proposition that the body to which an unsworn letter is submitted can somehow transform it into competent evidence. Despite having notice of this deficiency through Defendants' motion to strike, Sepanski failed to cure the purported affidavits. Accordingly, Defendants' motion to strike these letters is granted, and this Court will not consider them in connection with the motion for summary judgment.

**B. Defendants' Motion for Summary Judgment**

**\*3** Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201
**(Cite as: 2013 WL 4455412 (W.D.N.Y.))**

party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

* * * *

Sepanski contends that his treatment at Jani–King of Buffalo, specifically at the hands of Honeck, created a hostile work environment and constituted sex discrimination in violation of Title VII and the New York State Human Rights Law. He further contends that he was retaliated against for complaining about this hostile environment. Defendants raise several arguments in response, contending that (1) Jani–King, Inc. (as opposed to JaniKing of Buffalo) is not Sepanski's employer as defined by either the NYSHRL or Title VII; (2) the NYSHRL claim is barred by the statute of limitations; generally (3) Sepanski has not submitted sufficient evidence to carry his burden on any of the claims; and (4) even if Sepanski could meet his burden, Jani–King of Buffalo cannot be held liable because it took steps to prevent and correct any harassing behavior.

For two related reasons, this Court will address only Defendants' third argument. First, even if this Court were to rule in Defendants' favor on the first two points, Sepanski's Title VII claim against Jani–King of Buffalo would remain viable. Second, this Court finds that Sepanski's Title VII claim, which is analyzed under the same standard as the NYSRHL claim, *see Schiano v. Quality Payroll Sys., Inc.,* 609 (2d Cir.2006), whether asserted against Jani–King of Buffalo or Jani–King, Inc., must be dismissed on the merits, rendering moot all other potential reasons for dismissal.

**1. Hostile Work Environment**

**\*4** Title VII makes it unlawful for an employer to "discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." *42 U.S.C. § 2000e–2(a)(1); Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003).

To maintain a hostile-work-environment claim under Title VII, a plaintiff must submit sufficient evidence demonstrating that (1) the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that (2) a specific basis exists for imputing the objectionable conduct to the employer. *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997) (internal citations and quotation marks omitted). For the first prong—the only one in contention at this point—"[t]he plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances," *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000), which include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Dawson v. County of Westchester,* 373 F.3d 265, 272–73 (2d Cir.2004).

* * * *

There is a pointed dispute over just how frequently Honeck made derogatory remarks towards Sepanski, a dispute that is engendered by Sepanski's

Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201
**(Cite as: 2013 WL 4455412 (W.D.N.Y.))**

often confusing and sometimes contradictory deposition.

To illustrate, Sepanski first testified that, from the time he was hired in February 2005, Honeck and he "got along" and that everything was going fine until the next year, February 2006. (Sepanski Dep., 12:24; 15:19–22.) But he then stated that "every morning" there was a meeting where Honeck would "just bash[ ] men," and "every time she bashed the men, my name was always brought up with it." (*Id.,* 16:5–9.) Sepanski was asked to provide an example of this treatment, and so he recounted an incident from December of 2005 when Honeck remarked: "Why don't you grow some balls? How did you and the wife ever have kids if you don't have any balls." (*Id.,* 16:11–17:1.) Yet, when asked if this was the *first incident* of harassment or discrimination, Sepanski responded, "I believe so." (*Id.,* 18:2.)

**\*5** Sepanski was then asked to recount the next incident of harassment. In response to that question he again referenced the morning meetings, and said that Honeck "always" said "men are worthless." (*Id.,* 18:5–6.) He also recounted a time in February 2006 when Honeck blamed a mess in the break room on him. The following exchange then occurred:

Q: Okay. And so it sounds like that's the second time then that she made some sort of derogatory statement towards you?

A: Yes.

Q: And was that—are there any other statements other than that or after that time period?

A: Umm, right after she made comments of the worst thing God created was cats and men.

Q: And where was this made?

A: In the office.

Q: And, again, what was the timing of this one?

A: I believe it was in February.

Q: February of 2006?

A: Mm-hmm.

(*Id.,* 18:23–19:11.) [FN4]

> [FN4.] Questions were asked by Defendants' attorney. The answers are Sepanski's.

Later in the deposition, Sepanski explained another instance of harassment. On March 8, 2006, Sepanski returned to the office at about 4:30 p.m. and before he was "even inside the door, [Honeck] started screaming at me about men." She said, "men can get away with anything, right, Marc." (*Id.,* 23:15–20.)

Shortly after recounting this experience, this exchange occurred:

Q: And then it was after that—all right. Other than the four incidents of alleged harassment that we've talked about, were there any other alleged incidents of harassment by Miss Honeck against you?

A: Not that I can recall.

**Q: And were there—other than the four incidents we've talked about today already, were there any other alleged incidents of discrimination by Miss Honeck against you?**

**A: Not that I can recall.**

(*Id.,* 30:5–14.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201
**(Cite as: 2013 WL 4455412 (W.D.N.Y.))**

But this limited picture of harassment—only four incidents—is not the picture Sepanski tries to paint in response to the summary judgment motion. In response, Sepanski filed an affidavit charging that Honeck made derogatory remarks directed to him on an "essentially daily" basis when they were both in the office. (Sepanski Aff. ¶ 5.) In his memorandum of law, he argues that "the record establishes a constant, unopposed, and relentless stream of sexually harassing remarks made by one woman." The memorandum goes on to argue that he "endured over 250 separate instances of harassment," and that there were "potentially hundreds of remarks by Ms. Honeck towards Mr. Sepanski that belittled him on the basis of sex[;] they were personal, intimate attacks, involving his family in a clearly demeaning context." (Pl.'s Mem. at 1, 9; Docket No. 36.) These numbers appear to derive from Sepanski's statement in his affidavit that he was subject to harassment every day; Sepanski's attorney has apparently added each day he worked at Jani–Kang to arrive at this number.

Defendants, however, move to strike Sepanski's affidavit as contradictory to his deposition testimony. Indeed, "factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts h[is] own prior deposition testimony." *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001); *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 455 (2d Cir.1999). Although this affidavit does partially appear to be an improper attempt to cure Sepanski's deposition testimony, it is arguably consistent with that portion of the deposition where Sepanski claims that Honeck made derogatory remarks at morning meetings. Granted, it is contradictory to Sepanski's representation that there were only four incidents of harassment; but then again, the deposition testimony itself is contradictory. On balance then, this Court finds that the affirmation adds little to the deposition testimony, and this Court will consider it only insofar as it claims that Honeck make derogatory remarks at morning meetings.

**\*6** So considered, and accounting for the totality of the circumstances, this Court cannot find that Sepanski's workplace was "severely permeated with discriminatory intimidation, ridicule, and insult" so as to create a hostile work environment. *Alfano,* 294 F.3d at 374.

Sepanski himself cannot recount the times he was subject to harassment on account of his sex. His own testimony, which is the only competent evidence before this Court supporting his claim, is vague and changeable. Though he makes passing reference to repeated harassment occurring at morning meetings, he provides only a handful of specific instances where Honeck referred to men in a derogatory fashion. More is required: "past cases underscore that mere generalized allegations that [discriminatory] remarks abound in the workplace will not provide a sufficient basis for proceeding to trial." *Kemp v. A & J Produce Corp.,* 164 F. App'x 12, 15 (2d Cir.2005) (summary order). And while possibly offensive, the comments that Sepanski does identify are not sufficiently severe or humiliating. In fact, two comments identified by Sepanski, those referring to men as able to "get away with anything" and as "messy," border on innocuous. A third comment, that "the worst thing God created was cats and men," is relatively mild. Further, Sepanski was never touched inappropriately, he not was he physically or verbally threatened, and he was not propositioned. As the Supreme Court has instructed, "properly applied," the standards for judging hostility, "will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998). The Court made it clear that "conduct must be extreme to amount to a change in the terms and conditions of employment" and thus be actionable under Title VII. *Id.* The conduct at issue here falls short of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201
**(Cite as: 2013 WL 4455412 (W.D.N.Y.))**

that standard.

It is an oft-repeated holding that Title VII is not a "general civility code." *See, e.g., Thomas v. City of New York,* —— F.Supp.2d. ——, No. 11 CIV. 5978 BMC, 2013 WL 3753557, at *6 (E.D.N.Y. July 12, 2013). If it were, Defendants may be liable. But under these facts, and considering the only evidence before this Court is Sepanski's own erratic testimony, which offers only four specific instances of harassment (three of which are relatively harmless), a reasonable jury could not find that Defendants created a hostile work environment as defined by Title VII.

**2. Sex Discrimination**

Sex discrimination claims under Title VII are distinct form hostile-work environment claims. Claims of this nature are analyzed under the Supreme Court's familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir.2004). Under that framework, a plaintiff must first establish a prima facie case by adducing sufficient evidence to permit a rational trier of fact to find that he: (1) is a member of a protected class; (2) was qualified for his position and performing his duties satisfactorily; (3) was subject to an adverse employment action (4) suffered under "circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft,* 336 F.3d 128, 137–38 (2d Cir.2003); *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). The Second Circuit has explained that an action must cause a "materially adverse change in the terms and conditions of employment," and not just "mere inconvenience," in order to qualify as "adverse." *Fairbrother v. Morrison,* 412 F.3d 39, 56 (2d Cir.2005) (internal quotation marks and citations omitted).

*7 Sepanski claims that he was discharged on account of his sex. Defendants argue that this claim borders on the frivolous; this Court must agree.

First, it must be noted that the evidence clearly demonstrates that James Petrick, not Honeck, fired Sepanski. Honeck—the only person in this case who has shown any predilection for sex-based animus—had in fact already been fired herself by the time Sepanski was released, and there is no evidence to suggest that Honeck had any input whatsoever in the decision to fire Sepanski.

Second, the evidence also establishes that Petrick did not even know who Sepanski was; he had never even met him before he signed the papers authorizing his removal. Sepanski speculates that Petrick knew about the harassment and knew that Sepanski had been given vacation time before releasing him. Thus, according to Sepanski, Petrick endorsed the alleged harassment. Sepanski's release, he argues, was simply an extension of Honeck's harassment. But even if Petrick was aware of the alleged harassment and the events of the preceding week, it remains pure speculation to assert that Petrick thus endorsed that harassment and fired Sepanski because he approved of Honeck's treatment of him. Indeed, Petrick testified that he changed the "Exit Form" document to reflect the fact the he had reservations about releasing Sepanski because he had never met him. Although Sepanski's release occurred in the context of an admittedly strange set of circumstances, no evidence suggests that Sepanski was fired because he is a male. Because Sepanski has failed to adduce sufficient evidence to support his prima facie case, this claim must be dismissed.

**3. Retaliation**

Like claims of sex-based discrimination, retaliation claims under Title VII are evaluated under the same three-step burden-shifting analysis outlined above. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998). To establish a prima facie retaliation case, an employee must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201
**(Cite as: 2013 WL 4455412 (W.D.N.Y.))**

employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester,* 241 F.3d 279, 282–83 (2d Cir.2001).

There is no dispute that Sepanski lodged complaints against Honeck to their supervisor, Joseph Stein. This constitutes protected activity under Title VII. *See Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990). To support his contention that he was retaliated against for making those complaints, Sepanski relies on the Second Circuit holding that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the [third] prong of the retaliation prima facie case." *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). But this Court has already found that the conduct identified by Sepanski was insufficiently severe. It cannot be said, then, that the continuation of that activity could constitute a materially adverse condition. Indeed, conduct that "causes a plaintiff 'embarrassment or anxiety' [is] insufficient to qualify as an adverse action because 'such intangible consequences are not materially adverse alterations of employment conditions.' " *Miksic v. TD Ameritrade Holding Corp.,* No. 12 CIV. 4446 AJN, 2013 WL 1803956, at *3 (S.D.N.Y. Mar.7, 2013) (quoting *Castro v. New York City Bd. of Educ. Pers.,* No. 96 CIV. 6314(MBM), 1998 WL 108004, at* 7 (S.D.N.Y. Mar. 12, 1998)).

**\*8** Further, there is no evidence that Sepanski's discharge was connected in any fashion to the complaints he lodged against Honeck. To the contrary, it appears Honeck was fired because of his complaints, and there is no evidence to suggest that Petrick, who eventually discharged Sepanski, did so because of complaints Sepanski made about Honeck. Any alleged connection, even one based on temporal proximity, is simply too tenuous and speculative to withstand

summary judgment. Therefore, the retaliation claim must be dismissed.

### IV. CONCLUSION

In an effort to defeat summary judgment, Plaintiff has submitted three unsworn letters. But those letters cannot be considered in connection with such a motion, and they must be disregarded. The remaining evidence is insufficient to support a claim that Sepanski's employer violated Title VII and the New York Human Rights Law. For those reasons, Defendants' motion to strike is granted in part, and its motion for summary judgment is granted in full.

### V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 27) is GRANTED.

FURTHER, Defendants' Motion to Strike (Docket No. 40) is GRANTED in part and DENIED in part.

FURTHER, the Clerk of Court shall close this case.

W.D.N.Y.,2013.
Sepanski v. Jani-King, Inc.
Slip Copy, 2013 WL 4455412 (W.D.N.Y.), 119 Fair Empl.Prac.Cas. (BNA) 1201

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.